UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HOWARD PERRY,

                                    Plaintiff,
                                                        9:10-CV-1033
v.                                                      (LEK/TWD)

CARL HUNT,

                                    Defendant.
_____

APPEARANCES:                              OF COUNSEL:

HOWARD PERRY
Plaintiff *pro se*
1760 Lexington Avenue #4H
New York, New York 10029

HON. ERIC T. SCHNEIDERMAN              DOUGLAS J. GOGLIA, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me by the Honorable Lawrence E. Kahn, Senior United States District Judge,

pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff Howard Perry claims that he

was denied medical care at Ogdensburg Correctional Facility for painful abdominal injuries and

was instead wrongfully transferred to a different facility for psychiatric evaluation.  Currently

pending before the Court are Plaintiff's motion to amend the complaint (Dkt. No. 22), Plaintiff's

motion to compel discovery (Dkt. No. 21), and Defendant's motion for summary judgment.

(Dkt. No. 17.)  For the reasons discussed below, Plaintiff's motion to amend is denied without prejudice and Plaintiff's motion to compel is granted.  I further recommend that Defendant's motion for summary judgment be denied without prejudice to renew after Defendant provides Plaintiff with the limited discovery discussed below.

## I.     FACTUAL AND PROCEDURAL SUMMARY

Plaintiff alleges that on or about July 10, 2008, he was having severe stomach pains and went to the medical unit at Ogdensburg Correctional Facility.  (Dkt. No. 1 at 4.[1])  Plaintiff "tried to" inform an unnamed doctor that he had undergone surgery to repair a ventral hernia but that his intestines had become entangled, causing severe pain and complications.  *Id*.  Plaintiff alleges that he "was delayed medical attention from not being able to see a specialist and this caused [his] condition to worsen."  *Id*.

Plaintiff alleges that rather than being treated for his pain, he was sent to the psychiatric ward at Clinton Correctional Facility by unnamed Ogdensburg Correctional Facility staff members.  *Id*.  These staff members believed that Plaintiff was imagining his pain.  *Id*.  Plaintiff was never seen by a psychiatrist.  *Id*.  Unnamed psychiatric staff at Clinton Correctional Facility sent Plaintiff back to Ogdensburg.  *Id*. at 5.

At Ogdensburg, Plaintiff "was unable to sleep through the night, nor get out of bed the next day" due to the "massive pain."  *Id*.  Plaintiff alleges that he "was left for hours without any type of medical treatment."  *Id*.  Plaintiff vomited several times and then blacked out from the pain.  *Id*.

---

[1]     Page numbers in citations to the complaint refer to the page numbers assigned by the Court's electronic filing system rather than to the page number in the original document.

When Plaintiff regained consciousness several days later he was at SUNY Upstate University Hospital in Syracuse under the care of Dr. Hassan. *Id.* Unnamed staff at the hospital told Plaintiff that he was transferred from "a few different hospitals" after having eight surgeries. *Id.* Plaintiff's mother also told him that he had undergone eight surgeries. *Id.* Plaintiff remained in the hospital for a month and a half. *Id.* Thereafter, he was released to Mohawk Correctional Facility with an ileostomy bag. *Id.*

Plaintiff was conditionally released from prison to the care of his mother on October 9, 2008. *Id.* While staying with his mother, Plaintiff experienced chest pains, shortness of breath, and severe pain. *Id.* Plaintiff was not able to get out of bed without assistance, could not keep food and drink down, became severely dehydrated, and developed painful rashes on his stomach in the area of his surgical scars. *Id.* at 5-6. He also suffered from fever, vomiting, sleep loss, severe weight loss, and excruciating pain. *Id.* at 6.

Plaintiff underwent surgery to reverse the ileostomy in Syracuse on December 12, 2008. *Id.* He was told that everything went well, that he was in good condition, and that he would heal properly in due time. *Id.* However, the wound from the surgery became excruciatingly painful, began to open, and discharged malodorous green and yellow puss. *Id.*

When Plaintiff became unable to move due to the pain, his mother called an ambulance to transport him to Lenox Hill Hospital. *Id.* Lenox Hill told Plaintiff that they would not be able to treat him and transferred him to New York-Presbyterian Hospital. *Id.*

Plaintiff's medical records were forwarded to New York-Presbyterian. *Id.* Plaintiff was examined. *Id.* The complaint alleges that:

> Once the records were obtained and I was completely examined I was
> informed that a <u>MESH</u> was left inside of me from the previous

3

> surgery and this was enabling the wound to heal properly, and by being on Percocets (pain medication) and this medication was su[p]pressing the fevers, and pain most of the time during my time at home.  Unfortunately I was reincarcerated, however, before being reincarcerated the hospitals that I sought out to help me did not get the chance to do so before my reincarceration occurred.  It was fortunate for me that the D.O.C.S. took me to Bellvue when they did, because the medical staff at Bellvue told me that I would have to have the whole MESH removed and a New MESH put into me urgently.

*Id*. at 6-7.  Plaintiff underwent surgery to replace the mesh on March 26, 2010.  *Id*. at 7.

Plaintiff alleges that:

> [T]his medical mal practice foul-up would have and could have been avoided if Dr. Hassan and his medical staff would have realized that they left an infected MESH inside of me.  Ogdensburg medical have to take their part of the blame for th[eir] lack of professionalism for the delay of emergency medical attention, The head of he facility that have to approve movement from one facility to the next, whereas they transported me to a Phyciatric (sic) ward without ever seeing a phyciatrist (sic), or having any history of mental illness disability.

*Id*.

Plaintiff filed his complaint in this action on August 26, 2010.  (Dkt. No. 1.)  He named Ogdensburg Correctional Facility, Superintendent Carl Hunt, Upstate Medical University, Dr. Hassan, and "Ogdensburg Correctional Medical Staff" as defendants.  *Id*. at 2.  Upon initial review, the Court dismissed Ogdensburg Correctional Facility and Upstate Medical University as immune under the Eleventh Amendment, dismissed "Ogdensburg Correctional Medical Staff" as not being a "person" for the purposes of 42 U.S.C. § 1983, and dismissed Dr. Hassan because the complaint alleged that he was medically negligent rather than deliberately indifferent to Plaintiff's serious medical condition.  (Dkt. No. 4.)

The case proceeded solely against Defendant Hunt.  (Dkt. Nos. 5, 9.)  Defendant Hunt answered the complaint on March 14, 2011.  (Dkt. No. 10.)  Defendant Hunt now moves for

4

summary judgment, arguing that he was not personally involved in any of the events alleged in the complaint because he ceased serving as Ogdensburg's superintendent in October 2005.  (Dkt. No. 17-7.)

Plaintiff has not filed any opposition to the motion for summary judgment.  Instead, he has moved to amend the complaint (Dkt. No. 22) and to compel Defendant to provide the names of the nursing staff involved in his care at Ogdensburg (Dkt. No. 21).  Defendant has opposed the motion to amend.  (Dkt. No. 23.)  Defendant has not opposed the motion to compel.

## II.    MOTION TO AMEND

Plaintiff moves to amend the complaint.  (Dkt. No. 22.)  The proposed amended complaint names five defendants: "Superintendent Donna Smith" of Ogdensburg Correctional Facility and four Jane Does, also of Ogdensburg Correctional Facility.  (Dkt. No. 22-1 at 2.)  The proposed amended complaint includes almost no factual allegations.  Plaintiff alleges that the events giving rise to his claim occurred in the Ogdensburg Correctional Facility infirmary on or about July 10, 2008.  *Id.*  Plaintiff alleges that he suffered the following injuries: an ileostomy, infected mesh, multiple hernia recurrences, and surgeries.  *Id*. at 4.  Plaintiff alleges that he did not file a grievance "because of movement and speedy ailment" and that he "spoke to doctors and nurses at the facility where I was transferred."  *Id*. at 3.  Plaintiff further states that he did not file a grievance because he "was shipped to a psychiatric ward and from there to multiple other hospitals and finally to Syracuse Hospital for life saving surgery."  *Id*.  Plaintiff alleges that he "informed nurses and doctors and they said I could have died if I did not go to the hospital sooner."  *Id*. at 5.  Plaintiff states that he is seeking "[monetary] and punitive damages for pain -

suffering, deliberate indifference, negligence[2], denial of adequate medical treatment, medical

malpractice, and I ask the courts to make for the records that the claimant is asking for these

rewards in the amount of ten million dollars.  Or any an all amounts the courts deem just and

proper." *Id*.  Other than these scant allegations, the proposed amended complaint provides no

details about Plaintiff's claims.

Defendant opposes Plaintiff's motion to amend.  (Dkt. No. 23.)  Defendant argues that (1)

the proposed amended complaint does not comply with Local Rule 7.1(a)(4); and (2) even if the

proposed amended pleading complied with the local rule, the proposed amendment would be

futile.  (Dkt. No. 23.)

### A.    Legal Standard

Generally, motions for leave to amend are analyzed pursuant to Rule 15(a) of the Federal

Rules of Civil Procedure, which provides that "the court should freely give leave [to amend]

when justice so requires."  Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962);

*See also Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1993).  Elaborating on this standard,

the Supreme Court has explained:

> In the absence of any apparent or declared reason - such as undue delay,
> bad faith or dilatory motive on the part of the movant, repeated failure to
> cure deficiencies by amendments previously allowed, undue prejudice to

---

[2]    As the Court advised Plaintiff in its initial review of the original complaint, "an inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).  Moreover, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment." *Id.* at 106.  Stated another way, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.; See also Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.").

> the opposing party by virtue of allowance of the amendment, futility of
> amendment, etc. - the leave sought should . . . be 'freely given.'

*Foman*, 371 U.S. at 182, *accord*, *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir.

2001) ("[Leave to amend] should not be denied unless there is evidence of undue delay, bad

faith, undue prejudice to the non-movant, or futility.").

### B.    Local Rule

Under Local Rule 7.1(a)(4), a proposed amended complaint "must be a complete

pleading, which will supercede the original pleading in all respects.  A party shall not incorporate

any portion of its prior pleading into the proposed amended pleading by reference."  Defendant

argues that the proposed amended complaint does not comply with Local Rule 7.1(a)(4) because

it is not a "complete pleading" and "clearly anticipates that the Proposed Amended Complaint . .

. will incorporate the original Complaint by reference."  (Dkt. No. 23 at 3-4.)  Defendant is

correct.  The proposed amended pleading does not include any facts about what Plaintiff alleges

happened at Ogdensburg Correctional Facility on July 10, 2008.  Therefore, I deny Plaintiff's

motion to amend without prejudice to the filing of a future motion accompanied by a proposed

pleading that is full and complete.

### C.    Futility

Defendant argues that amending the complaint as proposed to name "Superintendent

Donna Smith" as a defendant would be futile.[3]  (Dkt. No. 23 at 5-8.)  Defendant is correct.

A court measures futility under the same standard as a motion to dismiss under Rule

12(b)(6) of the Federal Rules of Civil Procedure.  *Nettis v. Levitt*, 241 F.3d 186, 194 n.4 (2d Cir

---

[3]       Defendant does not address Plaintiff's claims against the Jane Does.

2001) (*abrogated on other grounds by Slayton v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006));

*Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).   A defendant may

move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that

the complaint fails to state a claim upon which relief can be granted.   In order to state a claim

upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).   The

requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint

"must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

*plausible* on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).   "Determining whether a complaint

states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and

common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the

pleader is entitled to relief."   *Id.* at 679 (internal citation and punctuation omitted).   "The issue to

consider is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to

offer evidence to support the claims.   Indeed, it is not the Court's function to weigh the evidence

that might be presented at trial; instead, the Court must merely determine whether the complaint

itself is legally sufficient."   *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F.

Supp. 2d 336, 338 (E.D.N.Y. 2002) (citing *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375,

378 (2d Cir.1995)).

     Under Second Circuit precedent, "'personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983.'"   *Wright v.*

*Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885

(2d Cir. 1991)).  In order to prevail on a § 1983 cause of action against an individual, a plaintiff

must show some tangible connection between the unlawful conduct and the defendant.  *Bass v.

Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  If the defendant is a supervisory official, a mere

linkage to the unlawful conduct through the prison chain of command (i.e., under the doctrine of

respondeat superior) is insufficient to show his or her personal involvement in that unlawful

conduct.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431,

435 (2d Cir. 2003) (per curiam); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210

(2d Cir. 1985).  In other words, supervisory officials may not be held liable merely because they

held a position of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  Rather,

supervisory personnel may be considered personally involved if they (1) directly participated in

the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3)

created, or allowed to continue, a policy or custom under which the violation occurred, (4) had

been grossly negligent in managing subordinates who caused the violation, or (5) exhibited

deliberate indifference to the rights of inmates by failing to act on information indicating that the

violation was occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[4]

 Here, as discussed above, the proposed amended complaint does not plead any facts at all

---

  [4] In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court ruled that where the
underlying constitutional claim is a claim of intentional discrimination, a supervisory official's
liability must be judged by the official's purpose rather than the official's knowledge of
subordinates' actions or policies.  The Second Circuit has not yet issued a decision discussing
*Iqbal*'s effect on the *Colon* categories.  Several district courts in the Second Circuit have
determined that *Iqbal* nullified some of the *Colon* categories.  *See Sash v. United States*, 674 F.
Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases).  I will assume for the purposes of this
motion that *Colon* remains good law.

about proposed defendant "Superintendent Donna Smith."  Thus, the proposed amended
complaint does not allege any facts plausibly suggesting that proposed defendant Smith was
personally involved in the alleged constitutional violation.  Even if the Court incorporated the
operative complaint's allegations regarding Defendant Hunt by reference against proposed
defendant Smith, there would not be a sufficient allegation of personal involvement because the
operative complaint alleges no facts at all about Defendant Hunt.  Therefore, the face of the
proposed pleading shows that amendment would be futile.

Although a court must look only to the face of the proposed pleading when considering
futility, the evidence here further illustrates the problems with Plaintiff's proposed amendment.
Plaintiff has admitted that he wants to sue Ogdensburg's superintendent under a theory of
respondeat superior.  At his deposition, Plaintiff testified that he sued Defendant because he was
the top of the chain of command.  Specifically, Plaintiff testified that he sued Defendant because:

> [c]hain of command is how they do things in Department of
> Corrections.  If you don't get a response from this person, this person,
> this person, you would take it to the top.  So watch commander, they
> responsible for moves, but everything has to go through somebody.
> As you know, the Superintendent is the supervisor.  That's the person
> that oversees the officers as well as the inmates . . . I'm suing him
> because . . . [he] may have had some dealings with sanctioning the
> move to Clinton in the psych ward in block F when I asked for
> medical attention[.]

 (Dkt. No. 17-4 at 15:18-16:12.)  As discussed above, such an allegation is insufficient to
plausibly suggest personal involvement.

Moreover, the Director of Human Resources for the New York State Department of
Corrections and Community Supervision ("DOCCS") declares that no person named Donna
Smith ever worked at Ogdensburg Correctional Facility, either as the superintendent or in any

other capacity.  (Dkt. No. 23-1 ¶ 3.)  A man named Dana Smith was the superintendent of

Ogdensburg Correctional Facility at one time, but he retired from DOCCS four years before the

incident of which Plaintiff complains.  *Id*. ¶ 4.  For all of these reasons, Plaintiff's proposed

amendment is futile as to proposed defendant Donna Smith.  I express no opinion about the

merits of any future proposed amendment as to the Jane Does that complies with Local Rule

7.1(a)(4).

## III.    MOTION TO COMPEL

Perhaps recognizing that he needs more information in order to file a proper pleading,

Plaintiff has filed a motion to compel.  (Dkt. No. 21.)  Plaintiff states that he "would like the

judge to order that the names and any contact information of the nursing staff be granted to me.  I

have requested through interrogator[ies] for this information.  It is needed because this is where

the incident derived."  *Id*. at 1.  Despite being directed to file a response to the motion to compel,

Defendant has not opposed the motion.  (Text Notice Mar. 1, 2012.)

Although it is not clear when he served it, Plaintiff sent Defendant a list of four

interrogatories.  Those interrogatories stated:

> 1.    Supply the names of each medical person[n]el that
>       was on duty during the dates of July 1st thru July 15th
>       2008[.]
> 2.    Who sanctioned the move for me to be placed in a
>       psychiatric ward, according to the records?
> 3.    If the move was sanctioned by you what medical
>       authorization did you follow?
> 4.    What facilities was I transfer[r]ed to before arriving at
>       Syracuse Medical Facility?

(Dkt. No. 21 at 4.)

Apparently in response, Defendant provided Plaintiff with his medical records from

Ogdensburg Correctional Facility.  (Dkt. Nos. 15-5 and 21-1.)  The cover letter accompanying

11

the records stated that "[r]egarding the names of your medical providers, you should be able to obtain the names of those who provided you with medical care from these records." (Dkt. No. 17-5.) The signatures of the medical providers are not entirely legible on the records. Moreover, Defendant did not answer Plaintiff's other interrogatories. Therefore, the medical records do not satisfy Plaintiff's discovery request.

Plaintiff does not appear to be moving to compel all of the information sought in the interrogatories. Rather, Plaintiff seeks only the names and contact information of the nursing staff. The information sought is relevant to Plaintiff's claims that he received constitutionally inadequate medical care at Ogdensburg Correctional Facility. Therefore, Plaintiff's motion to compel is granted. Defendant is directed to provide Plaintiff, within thirty days of this Order, with the names and contact information for the nursing staff who treated Plaintiff at Ogdensburg between July 1 and July 15, 2008.

## IV.    MOTION FOR SUMMARY JUDGMENT

Defendant Hunt moves for summary judgment, arguing that he was not personally involved in any alleged constitutional violation. (Dkt. No. 17.) Plaintiff has not opposed the motion. Instead, Plaintiff moved to amend the complaint and to compel discovery, as discussed above. For the reasons discussed below, I recommend that Defendant Hunt's motion be denied without prejudice to renew after Defendant complies with the Court's order regarding Plaintiff's motion to compel.

### A.    Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

12

to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The party moving for summary

judgment bears the initial burden of showing, through the production of admissible evidence, that

no genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir.

2006).   Only after the moving party has met this burden is the nonmoving party required to

produce evidence demonstrating that genuine issues of material fact exist.  *Id*. at 273.   The

nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's]

pleading" or "simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).   Rather, a dispute

regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).   In

determining whether a genuine issue of material[5] fact exists, the Court must resolve all

ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball

Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

    **B.**    **Analysis**

    Defendant argues that he was not personally involved in the alleged constitutional

violation.  (Dkt. No. 17-2 ¶ 26.)  Defendant is correct.

    The operative complaint does not allege any acts by Defendant Hunt.  Further, it is

undisputed that Defendant Hunt was not the superintendent of Ogdensburg at the time of the

incident of which Plaintiff complains.  (Dkt. No. 17-2 ¶ 25.)  It is further undisputed that

Defendant Hunt had no involvement with the provision of medical care to Plaintiff or the

---

    [5]    A fact is "material" only if it would have some effect on the outcome of the suit.
*Anderson*, 477 U.S. at 248.

decision to transfer Plaintiff from Ogdensburg to Clinton for psychiatric evaluation. *Id.* ¶ 26.
Therefore, Defendant Hunt was not personally involved in the alleged constitutional violation.

The failure to allege facts plausibly suggesting that a defendant was personally involved
will generally subject a complaint to dismissal.  However, this case falls within an exception to
the general rule.  When a prisoner does not know the identities of any of the individuals who
allegedly violated his constitutional rights, it is appropriate to maintain "supervisory personnel as
defendants . . . until the plaintiff has been afforded an opportunity through at least brief discovery
to identify the subordinate officials who have personal liability." *Davis v. Kelly*, 160 F.3d 917,
921 (2d Cir. 1998).  "After an opportunity for discovery, undisputed allegations that the
supervisor lacked personal involvement will ultimately suffice to dismiss that official from the
case, but such dismissal is premature where the opportunity to identify those involved has not yet
been accorded." *Id.* at 921-22 (citations omitted).  *See also Murphy v. Goord*, 445 F. Supp. 2d
261 (W.D.N.Y. 2006) (denying superintendent's motion for judgment on the pleadings on
personal involvement grounds and allowing plaintiff to proceed with discovery to identify the
Doe defendants).  Therefore, I recommend that the Court deny Defendant's motion without
prejudice to a later motion, filed after Defendant has complied with the discovery order discussed
above.

ACCORDINGLY, it is

ORDERED that Plaintiff's motion to amend (Dkt. No. 22) is **<u>DENIED</u>** without
prejudice; and it is further

ORDERED that Plaintiff's motion to compel (Dkt. No. 21) is **<u>GRANTED</u>**.  Defendant is
directed to, within thirty days of this Order, provide Plaintiff with the names of the nursing staff

14

who treated him at Ogdensburg Correctional Facility between July 1 and July 15, 2008, as well as their contact information; and it is further

**RECOMMENDED** that Defendant's motion for summary judgment (Dkt. No. 17) be **DENIED** without prejudice to renewal after Defendant complies with the Court's discovery order.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: August 31, 2012
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge