UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HOWARD PERRY,

                              Plaintiff,

v.                                                    9:10-CV-1033
                                                         (LEK/TWD)

AMANDA RUPERT; MARY CORYER; LAWRENCE
SEARS,

                              Defendants.
_____

APPEARANCES:                                               OF COUNSEL:

HOWARD PERRY
Plaintiff pro se
1760 Lexington Avenue #4H
New York, NY 10029

HON. ERIC T. SCHNEIDERMAN                      DOUGLAS J. GOGLIA, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION

      This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Howard Perry alleges that he was repeatedly denied medical care at Ogdensburg Correctional Facility for painful abdominal injuries and was instead wrongfully transferred to a different facility for psychiatric evaluation, preventing him from properly grieving the incident.

(Dkt. No. 32.)  Currently pending before the Court is Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (Dkt. No. 44.)  For the reasons that follow, I recommend that Defendants' motion be denied.

## I.     BACKGROUND

The following facts are derived from the face of the operative complaint and are accepted as true for the purposes of deciding the pending motion for judgment on the pleadings.  *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999) (citing *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994)).  Plaintiff alleges that in June 2007 he underwent a ventral hernia reconstructive surgery.  (Dkt. No. 32 at 8.[1])  After this surgery, the surgical mesh used to close the hernia apparently became infected.  *Id.* at 3.  On or about July 10, 2008, Plaintiff experienced severe stomach pains, vomiting, and fatigue and was escorted to the infirmary by two inmates.  *Id.*[2]  Plaintiff alleges he was refused care by the nursing staff three times, and on his fourth visit he was involuntarily transferred to the psychiatric ward, where he was "stripped naked and locked in a cold cell for hours until the psych physician saw [he] did not have a mental condition but a physical one."  (Dkt. No. 32 at 8-9.)  On July 11, 2008, Plaintiff was transferred by ambulance to

---

[1]  Page numbers in citations to the amended complaint refer to the page numbers assigned by the Court's electronic filing system rather than to page numbers in the original document.

[2]  Plaintiff consistently refers to July 10, 2008, as the date of the onset of symptoms.  Accordingly the Court will use that date.  However there is discrepancy as to the date of the initial onset of symptoms.  Plaintiff refers to July 8, 2008, later in the complaint. (Dkt. No. 32 at 10.)  A notarized statement by another inmate attached as an exhibit to the amended complaint states the date was July 9, 2008.  *Id.* at 11.  Medical records attached to the amended complaint indicate July 9, 2008.  *Id.* at 19.

Claxton Hepburn Medical Center for emergency consultation. (No. 46 at 54.[3]) Plaintiff claims that he was transferred to "multiple other hospitals and finally to Syracuse Hospital for life saving surgery." (Dkt. No. 32 at 4.) Plaintiff asserts he underwent eight surgeries. (Dkt. No. 46 at 3.) Plaintiff further asserts he was "hospitalized for two months, released and then returned for another four months." *Id.* at 4. Plaintiff asserts that fifteen months later he underwent another surgery to remove the infected mesh at Bellevue Hospital. *Id.*

Plaintiff maintains that he attempted to file a grievance with a Sergeant upon being refused care at the infirmary on or about July 10, 2008, but was denied. (Dkt. No. 32 at 9.) Plaintiff asserts this denied him "the opportunity to further grieve the matter." *Id.* Plaintiff admits that he did not file a grievance at any correctional facility regarding the alleged incidents. *Id.* at 4. He claims he did not file a grievance due to "refusal, movement and speedy ailment" and his time in the psychiatric ward. *Id.* His only attempt to grieve this event was speaking to doctors and nurses at the facility where he was transferred. *Id.*

Plaintiff filed the original complaint on August 26, 2010. (Dkt. No. 1.) The original complaint named Ogdensburg Correctional Facility, Superintendent Carl Hunt, Upstate Medical University, Dr. Mustafa Hassan, and "Ogdensburg Correctional Medical Staff" as Defendants. *Id.* Upon initial review, the Court dismissed all Defendants except for Defendant Superintendent Hunt. (Dkt. No. 4.) On August 31, 2012, the Court ordered Defendant Hunt to provide Plaintiff with the names of the nursing staff who treated him at Ogdensburg. (Dkt. No. 17.) On September 10, 2012, the Court denied Defendant Hunt's motion for summary judgement made

---

[3] Page numbers in citations to Plaintiff's response in opposition to motion for judgment on the pleadings refer to the page numbers assigned by the Court's electronic filing system rather than to page numbers in the original document.

on the grounds of lack of personal involvement. (Dkt. No. 26.) The Court directed Defendant Hunt to provide Plaintiff with the names of the nursing staff and advised that he could move again to be dismissed for lack of personal involvement after providing the discovery. *Id.* On April 22, 2013, the Court granted Plaintiff's motion to amend the complaint. (Dkt. No. 31.) On April 22, 2013, Plaintiff filed the operative complaint. (Dkt. No. 32.) Currently pending before the Court is Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. No. 44.) Plaintiff has opposed the motion. (Dkt. No. 46.) For the reasons that follow, I recommend that Defendants' motion be denied.

## II. LEGAL STANDARD GOVERNING MOTIONS FOR JUDGMENT ON THE PLEADINGS

Any party may move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) after the pleadings are closed, but early enough not to delay trial. The Second Circuit has held that: "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Desiano v. Warner-Lambert & Co.,* 467 F.3d 85, 89 (2d Cir. 2006) *(*citing *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999)).

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

4

is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III.    ANALYSIS

Defendants argue that the complaint should be dismissed because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). (Dkt. No. 44-1 at 3-7.[4]) Plaintiff argues that Defendants are estopped from asserting this defense and that special circumstances excuse his failure to exhaust. (Dkt. No. 32 at 9.) For the reasons discussed below, I recommend that Defendants' motion be denied and that this matter be scheduled for an evidentiary hearing on the issue of exhaustion.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such

---

[4] Page numbers in citations to Defendants' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). In New York state prisons, the Department of Corrections and Community Supervision ("DOCCS") has a well-established three-step inmate grievance program. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013).

Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. *Id.* at § 701.5(a) (2010). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* at 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance (*Id*. at § 701.5(b)(2)), and issues a written decision within two working days of the conclusion of the hearing. *Id.* at § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id*. at 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the

grievant's appeal. *Id*. at § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. *Id.* at 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id*. at 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id*. at 701.5(d)(3)(ii).

An inmate may seek an extension of the time limits in writing at any of the steps, but such a request must be made within forty-five days of the incident being grieved or the decision being appealed. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g) (2013). If an inmate believes that an extension was wrongly denied, he may file a separate grievance protesting the denial. *Id*. If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford*, 548 U.S. at 93.

In the case before the Court, Plaintiff admits he did not file a grievance at any correctional facility for the events alleged in the complaint. (Dkt. No. 32 at 4.) Plaintiff maintains that he attempted to speak to a Sergeant regarding his grievance upon being refused care at the infirmary on or about July 10, 2008, but was denied. *Id.* at 9. Plaintiff further maintains that he spoke to doctors and nurses at the facility where he was transferred about the grievance. *Id.* However, these actions do not satisfy the exhaustion requirement under the PLRA. Plaintiff took no steps to grieve this event under the DOCCS well-established three-step inmate grievance program. Therefore, I find that Plaintiff failed to exhaust his administrative remedies.

A plaintiff's failure to exhaust, however, does not end the review. The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his

available administrative remedies. *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).[5] Failure to exhaust administrative remedies is an affirmative defense that must be raised by a defendant. Upon raising this defense, the burden of proof shifts to the plaintiff to show that his case falls under at least one of the exceptions accepted by the Second Circuit under the *Hemphill* test. A plaintiff's burden to survive a 12(c) motion only requires that the plaintiff "state a claim to relief that is *plausible* on its face.'" *Iqbal,* 556 U.S. at 678 (citation omitted and emphasis added).

First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Unavailability of administrative remedies is governed by an objective test — "that is, would a similarly situated individual of ordinary firmness have deemed [grievance procedures] available." *Hemphill*, 380 F.3d at 688 (internal quotation marks omitted). Here, as discussed above, remedies were available. There is no indication in this case that Ogdensburg Correctional Facility does not follow the DOCCS administrative remedies procedure, nor does Plaintiff assert such, and therefore, administrative remedies as proscribed under DOCCS were made available at Ogdensburg Correction Facility.[6]

Second, if those remedies were available, "the court should . . . inquire as to whether

---

[5] The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford*, 548 U.S. 81. *Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011).

[6] This finding is made for the purposes of this motion only. If the Court adopts this Report-Recommendation and schedules an evidentiary hearing on the subject of exhaustion of administrative remedies, Plaintiff will be permitted to submit evidence that an administrative remedy was not, in fact, available to him.

[some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Here, Defendants preserved the exhaustion defense by pleading it in their answer. (Dkt. No. 43 ¶ 10.) Regarding estoppel, a prison official's refusal to accept or forward a prisoner's grievance is conduct that hinders a plaintiff's ability to pursue administrative remedies, and therefore may estop defendants from raising non-exhaustion as a defense. *Sandlin v. Poole*, 575 F. Supp. 2d 484, 488 (W.D.N.Y. 2008); *see also Ziemba v. Wezner*, 366 F.3d 161, 162-63 (2d Cir. 2004) (district court directed to consider whether defendants were estopped from asserting exhaustion defense where inmate alleged that he was beaten, threatened, denied grievance forms, and transferred to another prison). Plaintiff asserts he was physically prevented from grieving when he was denied access to a Sergeant by Defendant Nurses Amanda Rupert and Mary Coryer. He asserts that these actions by Defendants denied him "the opportunity to further grieve the matter." (Dkt. No. 32 at 9.) Construed liberally, Plaintiff's version of the events on or about July 10, 2008, with *Sandlin* and *Ziemba* guiding, suggest a plausible claim for estoppel. Therefore I recommend that the Court deny Defendants' motion for judgement on the pleadings and schedule this matter for an evidentiary hearing on the issue of exhaustion.

Third, if the remedies were available and the defendants' actions do not estop them from raising the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Hemphill,* 380 F.3d at 686 (citations and internal quotations omitted).

9

Justification for an inmate's failure to exhaust administrative remedies under this prong "must be determined by looking at the circumstances which might understandably lead . . . uncounselled prisoners to fail to grieve in the normally required way." *Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004).

Plaintiff claims he did not file a grievance because of "refusal, movement and speedy ailment" and wrongful transfer to the psychiatric ward. (Dkt. No. 32 at 4, 9.) Plaintiff's complaint asserts a time line that encompasses the onset of symptoms on or about July 10, 2008, repeated refusal of care, refusal of access to a Sergeant, wrongful transfer to the psychiatric ward, transfer by ambulance to Claxton Hepburn Medical Center for emergency consultation, transfer to multiple other hospitals for eight surgeries, hospitalization for a total of six months, release to a medical RNU, and finally a surgery to have the infected mesh removed fifteen months later. (Dkt. No. 32; Dkt. No. 46.) Examining Plaintiff's asserted facts under the *Disano* and *Harris* standards, it is plausible that the culmination of events surrounding Plaintiff's injuries amount to "special circumstances" under *Hemphilll* and *Giano*. Therefore I recommend that the Court deny Defendants' motion and schedule this matter for an evidentiary hearing on the issue of exhaustion of administrative remedies.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 44) be **<u>DENIED</u>**; and it is further **RECOMMENDED** that the Court schedule this matter for an evidentiary hearing on the issue of exhaustion of administrative remedies.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: October 16, 2013
      Syracuse, New York

*[signature]*
Thérèse Wiley Dancks
United States Magistrate Judge