UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HOWARD PERRY,

                                    Plaintiff,

                                                        9:10-CV-01033
v.                                                      (LEK/TWD)

AMANDA RUPERT, MARY CORYER,
LAWRENCE SEARS,

                                    Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

HOWARD PERRY
Plaintiff *pro se*
1760 Lexington Avenue, #4H
New York, NY 10029

HON. ERIC T. SCHNEIDERMAN                        DOUGLAS GOGLIA, ESQ.
Attorney General for the State of New York       JOSHUA E. McMAHON, ESQ.
Counsel for Defendants                           Assistant Attorneys General
The Capitol
Albany, NY 12224


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT- RECOMMENDATION

## I.    INTRODUCTION

This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation on the issue of exhaustion of administrative

remedies by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to

28 U.S.C. § 636(b) and Local Rule 72.3(c).  (Dkt. No. 49.)  Plaintiff Howard Perry alleges that he

was repeatedly denied medical care at Ogdensburg Correctional Facility ("Ogdensburg") for

painful abdominal injuries and was instead wrongfully transferred to a different facility for psychiatric evaluation, preventing him from properly grieving the incident. (Dkt. No. 32.) He claims Defendants Amanda Rupert ("Rupert") and Mary Coryer ("Coryer") were deliberately indifferent to his medical needs, and Defendant Lawrence Sears ("Sears"), as superintendent of Ogdensburg, was responsible for the actions of his staff. (Dkt. No. 32 at 2-3, 10.)

An evidentiary hearing was held on August 12, 2014, before the undersigned. Specifically, the hearing addressed the affirmative defense of the three named Defendants that Plaintiff failed to exhaust his available administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), before filing this action on August 26, 2010. The Court determined in a prior motion for judgment on the pleadings based upon Plaintiff's failure to exhaust his administrative remedies that administrative remedies were available to Plaintiff, and he failed to exhaust those remedies. (Dkt. No. 48, adopted at Dkt. No. 49.) Therefore, the only issues to be determined through the hearing concern whether or not Defendants' actions prohibited Plaintiff from pursuing administrative remedies such that they are estopped from raising the affirmative defense, whether Plaintiff reasonably deemed administrative remedies unavailable to him, and/or whether special circumstances existed which justified Plaintiff's failure to exhaust those administrative remedies.

At the hearing, documentary evidence was admitted. In addition, testimony was taken from Plaintiff, as well as two defense witnesses including David Ashe, Inmate Grievance Supervisor at Mohawk Correctional Facility, which encompasses Walsh Regional Medical Unit (collectively "Walsh RMU"), and Michael Salvana, M.D., physician at Walsh RMU. Plaintiff represented himself at the hearing, having been previously assigned pro bono counsel (Dkt. No.

2

50), but then later refusing the assigned counsel. (Dkt. Nos. 60, 61, and 62.) At the hearing, the undersigned indicated that a written decision would follow. This is that written decision. For the reasons stated below, I recommend that Plaintiff be permitted to pursue the claims in his Amended Complaint (Dkt. No. 32) because Defendant Rupert is estopped from asserting the failure to exhaust defense, and special circumstances existed preventing Plaintiff from exhausting his administrative remedies.

## II.    BACKGROUND

In this prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, Plaintiff alleges that in June 2007 he underwent a ventral hernia reconstructive surgery. (Dkt. No. 32 at 8.[1]) After this surgery, the surgical mesh used to close the hernia apparently became infected. *Id.* at 3. In July of 2008, Plaintiff experienced severe stomach pains, vomiting, and fatigue and was escorted to the infirmary at Ogdensburg by two inmates. *Id.*[2] Plaintiff alleges he was refused care by the nursing staff three times, and on his fourth visit he was involuntarily transferred to a psychiatric ward, where he was "stripped naked and locked in a cold cell for hours until the psych physician saw [he] did not have a mental condition but a physical one." (Dkt. No. 32 at 8-9; *see also* Tr. at 32-33.[3])

---

[1]    Page numbers in citations to the amended complaint refer to the page numbers assigned by the Court's electronic filing system rather than to page numbers in the original document.

[2]    Plaintiff's complaint refers to July 10, 2008, as the date of the onset of symptoms. However there is discrepancy as to the date of the initial onset of symptoms. (Dkt. No. 32 at 10.) At the hearing, Plaintiff referred to medical records which indicate the date of July 9, 2008, as the onset of symptoms. (P. Ex. 3.)

[3]    The transcript of the August 12, 2014, hearing is located at Dkt. No. 67; it will be cited as "Tr." herein to the page numbers referenced in the original transcript, not the page

### A.        Plaintiff's Testimony

At the hearing, Plaintiff claimed he asked an unnamed corrections officer at the infirmary for a grievance form and the request was denied.  (Tr. at 40.)  He then asked the nurses on the second infirmary visit if he could speak to a sergeant before any physical exam was initiated, but then he abruptly left the infirmary.  (Tr. at 23, 24; P. Ex. 3.)  He specifically claimed Defendant Nurse Rupert denied him the request to speak to a sergeant because he was going to file a grievance.  (Tr. at 41.)  On return to the infirmary that day, he continued to be in pain and had to be transported there on a stretcher.  (Tr. at 24; P. Ex. 3.)

The medical records show he was kept in the infirmary for observation until he was transferred to Clinton Correctional Facility ("Clinton") where he was evaluated by psychiatric professionals.  (P. Ex. 3, Ex. 4.)  He claims he could not file a grievance about the behavior of the nurses at Ogdensburg and the delay in seeing a physician because he was in so much pain.  (Tr. at 27-28.)  He also claims he was prevented from filing a grievance because he was sent for psychiatric care.  (Tr. at 31-32.)  He alleges the nurses purposely transferred him for psychiatric treatment because he was asking for a sergeant and was going to file a grievance on them.  (Tr. at 31.)  While not alleged in the operative complaint, Plaintiff also claimed at the hearing that he was assaulted by unnamed officers at Clinton when getting to the psychiatric ward at that facility to teach him "how to behave in another facility" and he was thereafter too afraid to file a grievance about the nurses.  (Tr. at 32, 42-44.)  He testified that Defendant Rupert sent a "hit" by these unnamed officers which "was a lesson basically she was trying to teach me, if I thought I was gonna file a grievance on her, this is what I would get."  (Tr. at 44.)

---

numbers inserted by the Court's electronic filing system.

He was sent back to the clinic at Ogdensburg on July 10, 2008. (P. Ex. 4.) Thereafter, he was transferred to Claxton-Hepburn Medical Center and was ultimately hospitalized in Syracuse where he had surgery. (Tr. at 33-34.) He was then transferred to Walsh RMU but he did not file grievances regarding the nurses' behavior at any time because he was too weak, sick and frightened to file a grievance. (Tr. at 34.) When released from Walsh RMU, he required visiting nursing care while at his mother's house which also prevented him from filing a grievance. (Tr. at 36.) Plaintiff admits that he did not file a grievance at any correctional facility regarding the alleged behavior of the nurses. (Dkt. No. 32 at 4.) His only attempt to grieve this event was speaking to doctors and nurses at the facility where he was transferred, although it is not clear what facility he is referencing. *Id.*

The relevant medical records show Plaintiff went to the infirmary at Ogdensburg on July 9, 2008, and he was transferred to Clinton that same day for a psychiatric evaluation. (Tr. at 55-57; D. Ex. 4, 6.) He spent about 10 to 20 hours at Clinton and was transferred back to Ogdensburg on July 10, 2008. (Tr. at 57-58; P. Ex. 4; D. Ex. 4.) On July 11, 2008, he was transferred to Riverview Correctional Facility for approximately two hours before he was transferred to Claxton-Hepburn Medical Center. (Tr. at 62-63; D. Ex. 6, 7.) From there, he was transferred to Upstate University Hospital on July 15, 2008, and discharged to Walsh RMU on August 14, 2008. (Tr. at 69-71; D. Ex. 9.) Plaintiff was treated there by Dr. Salvana. (Tr. at 73.) He was not bed ridden, and the doctor suggested exercise. (Tr. at 71-72; D. Ex. 9.) Records show he received a copy of the inmate-patient orientation handbook at Walsh RMU. (Tr. at 76; D. Ex. 11.) The handbook provides instructions for filing grievances for inmate-patients at Walsh RMU. (Tr. at 77-78; D. Ex. 11.) Plaintiff knew there was a grievance program at Walsh

RMU.  (Tr. at 78.)  He was instructed on how to care for his ileostomy bag while at Walsh RMU, and he was released from there to his mother's house with visiting nursing care upon completion of his term.  (Tr. at 80-82; D. Ex. 12.)

### B.    Defendants' Witness - David Ashe

David Ashe was the inmate grievance supervisor at Walsh RMU, from 2006 to 2011. (Tr. at 95-96.)  He reviewed Directive 4040 and explained the grievance program.  (Tr. at 97.) When an inmate is too sick to write a grievance, the inmate can ask anyone at the facility to do it for him or ask for an extension of time to file a grievance.  (Tr. at 98-99.)  Ashe did regular rounds at Walsh RMU in his role as inmate grievance supervisor and would counsel inmates on the grievance process if they asked for assistance.  (Tr. at 105.)  Non-ambulatory inmate patients could get grievance forms from him, or they could ask anyone on the staff for the forms.  (Tr. at 104.)  If an inmate was paroled after the grievance was filed, the grievance was still processed. (Tr. at 107-08.)

### C.    Defendants' Witness - Michael Salvana, M.D.

Dr. Salvana worked at Walsh RMU as the primary internist from 2005 to 2011.  (Tr. at 112-13.)  He reviewed Plaintiff's treatment progress notes from August to October of 2008.  (Tr. at 120-121; D. Ex. 12.)  Nothing in the records about the care provided to Plaintiff during that time precluded Plaintiff from filing a grievance.  (Tr. at 121.)  Nurses taught him to care for his wound and ostomy bag and he then did his own wound dressing and ostomy care.  (Tr. at 121-123, 142.)  Plaintiff requested infectious disease testing and signed proper consents for the testing indicating Plaintiff was thinking and oriented, and making decisions about his own care and treatment.  (Tr. at 124-126.)  Nothing in the notes indicates he was afraid to file a grievance.

(Tr. at 127-28.) An open wound would not prevent him from filing a grievance. (Tr. at 151.)

Upon parole and release from Walsh RMU, Dr. Salvana wanted Plaintiff to have a visiting nurse

at home for ostomy monitoring and follow up to make sure the self care was proper. (Tr. at 132-

33.) Once Plaintiff was on parole, Dr. Salvana was no longer involved in Plaintiff's care. (Tr. at

154-55.)

## III.   APPLICABLE LEGAL STANDARDS

### A.   The Prison Litigation Reform Act of 1996

As succinctly outlined by my colleague, Magistrate Judge David E. Peebles:

> The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat.
> 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain
> federal civil rights actions, expressly requires that no action shall be brought with respect
> to prison conditions under section 1983 of this title, or any other Federal law, by a
> prisoner confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted. The PLRA's exhaustion
> requirement applies to all inmate suits about prison life, whether they involve general
> circumstances or particular episodes, and whether they allege excessive force or some
> other wrong. An inmate plaintiff's complaint is subject to dismissal if the evidence
> establishes that he or she failed to properly exhaust available remedies prior to
> commencing the action . . . . Proper exhaustion requires a plaintiff to procedurally
> exhaust his or her claims by complying with the system's critical procedural rules.
> Complete exhaustion has not occurred, for purposes of the PLRA, until all of the steps of
> that available process have been taken.

*Bailey v. Fortier*, 09-CV-0742 (GLS/DEP), 2012 WL 6935254, at *4, 2012 U.S. Dist. LEXIS

185178, at *11-13 (N.D.N.Y. Oct. 4, 2012) (citations and punctuation omitted).[4] "[T]he PLRA's

exhaustion requirement applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other

---

[4]      The Court will provide Plaintiff with copies of all unpublished decisions cited in
this Order in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76
(2d Cir. 2009) (*per curiam*).

wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution in which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford*, 548 U.S. at 93.

B.    *Hemphill v. State of New York*

Because failure to exhaust is an affirmative defense, defendants bear the burden of showing by a preponderance of the evidence that a plaintiff has failed to exhaust his available administrative remedies. *See Murray v. Palmer*, No. 9:03-CV-1010 (GTS/GHL), 2010 WL 1235591, at *4, 2010 U.S. Dist. LEXIS 32014, at *16 (N.D.N.Y. Mar. 31, 2010); *Bailey,* 2012 WL 6935254, at *6 (the party asserting failure to exhaust bears the burden of proving its elements by a preponderance of the evidence); *see also Andrews v. Whitman*, No. 06-2447-LAB (NLS), 2009 WL 857604, at *6, 2009 U.S. Dist. LEXIS 30017, at *16 (S.D. Cal. Mar. 27, 2009) (defendant must prove non-exhaustion of administrative remedies by a preponderance of the evidence).

If a defendant meets that burden, however, a plaintiff's failure to exhaust does not end the review. "[O]nce a defendant has adduced reliable evidence that administrative remedies were available to Plaintiff and that Plaintiff nevertheless failed to exhaust those administrative remedies, Plaintiff must then 'counter' Defendants' assertion by showing exhaustion unavailability, estoppel, or 'special circumstances' [under *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004)]." *Murray,* 2010 WL 1235591, at *4. *Hemphill* sets forth a three-

part inquiry for district courts. First, courts must determine if administrative remedies were in fact available to plaintiff. In *Hemphill*, the Second Circuit stated that "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *Hemphill*, 380 F.3d at 688. Courts have found administrative grievance procedures unavailable where an inmate was prevented from filing a grievance. *See, e.g., Sandlin v. Poole*, 575 F. Supp. 2d 484, 488 (W.D.N.Y. 2008) (The facility's "failure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals . . . effectively rendered the grievance appeal process unavailable to him.").

Second, courts must determine if the defendants are estopped from presenting non-exhaustion as an affirmative defense because they prevented the plaintiff inmate from exhausting his administrative remedies by "'beating him, threatening him, denying him grievance forms and writing implements, and transferring him to another correctional facility.'" *Hemphill*, 380 F.3d at 688 (citing *Ziemba v. Wezner*, 366 F.3d 161, 162 (2d Cir. 2004)). Generally, defendants cannot be estopped from asserting a non-exhaustion affirmative defense based upon the actions or inaction of other individuals. *Murray*, 2010 WL 1235591, at *5 & n.26 (collecting cases); *McCloud v. Tureglio*, No. 07-CV-0650, 2008 WL 1772305, at *12, 2008 U.S. Dist. LEXIS 124388, at *44 (N.D.N.Y. Apr. 15, 2008) (Lowe, M.J.) ("None of those documents allege facts plausibly suggesting that Defendant's own actions inhibited Plaintiff's exhaustion of remedies during the time in question.").

Third, the Second Circuit explained in *Hemphill* that there are certain "special circumstances" in which even though administrative remedies may have been available and the

defendants may not be estopped from asserting a non-exhaustion defense, the inmate's failure to exhaust may be justified.[5]  *Hemphill*, 380 F.3d at 686.  "Special circumstances" have been found to include an incorrect but reasonable interpretation of the applicable grievance process or failing to file a grievance in the precise manner prescribed by the process as a result of threats.  *See, e.g., Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (failure to exhaust was justified where plaintiff inmate's interpretation of regulations was reasonable and prison official threatened inmate).

## IV.    ANALYSIS

### A.    Defendants Established the Availability of the Grievance Program and Plaintiff's Failure to Exhaust Administrative Remedies

In the Court's decision on Defendants' motion for judgment on the pleadings, it was held that Defendants established that a grievance program was available to Plaintiff and that Plaintiff failed to grieve his claim that the nurses delayed his medical treatment and deliberately sent him to a psychiatric ward to teach him a lesson.  (Dkt. No. 48, adopted Dkt. No. 49.)

Thus, the Court found that Defendants met their burden of showing that administrative

---

[5]  Subsequent to *Hemphill*, the Supreme Court decided *Woodford v. Ngo*, 548 U.S. 81 (2006).  The question addressed in *Woodford* was whether "a prisoner can satisfy the [PLRA's] exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id*. at 83-84.  The Supreme Court resolved the question in the negative, explaining that the PLRA requires "proper exhaustion"  "using all steps that the agency holds out, and doing so properly (so that the agency addressed the issues on the merits)." *Id*. at 90 (citation omitted).  Although the Second Circuit has acknowledged that there is some question as to whether the estoppel and special circumstances inquiries in *Hemphill* survived *Woodford*, the Court has as yet found it unnecessary to decide the issue and appears to still be considering all three *Hemphill* inquiries in exhaustion cases*. See, e.g., Amador v. Andrews*, 655 F.3d 89, 102-03 (2d Cir. 2011) (finding it unnecessary to decide whether *Hemphill* is still good law because plaintiff had failed to establish that defendants were estopped from raising non-exhaustion as an affirmative defense).

remedies were available to Plaintiff, and that Plaintiff failed to exhaust those remedies. *Id.; see Woodford*, 548 U.S. at 90 (the PLRA requires "proper exhaustion" - "using all steps that the agency holds out, and doing so properly so that the agency addressed the issues on the merits."). The inquiry at the exhaustion hearing then centered on whether unavailability, estoppel or special circumstances existed to excuse Plaintiff's failure to exhaust his administrative remedies.

**B.      Plaintiff's Claims of Unavailability, Estoppel, and Special Circumstances**

Under the *Hemphill* analysis, the Court now turns to whether Plaintiff has shown that Defendants are estopped from asserting the exhaustion defense due to prohibiting Plaintiff from filing a grievance, or whether Plaintiff has shown that unavailability or special circumstances existed which prevented him from grieving in the required manner.

1.      Estoppel and Unavailability

After carefully considering the issue, I find that Defendant Rupert cannot raise the defense of estoppel because she took actions that inhibited Plaintiff's exhaustion of administrative remedies.  However, Defendants Coryer and Sears are not estopped from raising the defense.

A review of the testimony shows Plaintiff claimed that unnamed "nurses" purposely sent him from Ogdensburg on July 9, 2008, to a psychiatric ward at Clinton because he was asking for a sergeant.  (Tr. at 31.)  While not specifically alleged in the operative complaint (Dkt. No. 32), Plaintiff claimed at the hearing that once he arrived at Clinton, he was assaulted by unnamed officers to teach him "how to behave in another facility."  (Tr. at 32, 42-44.)  Upon further testimony, Plaintiff specifically testified that Defendant Rupert set up a "hit" by these unnamed officers which "was a lesson basically she was trying to teach me, if I thought I was gonna file a

grievance on her, this is what I would get." (Tr. at 44.) The assault "inhibited" him from grieving. (Tr. at 45.)

The medical records from the infirmary at Ogdensburg for July 9, 2008, show that Defendant Rupert made a notation at 11:40am that "when questioned about symptoms, [patient] demanded to see [sergeant;] advised if this was emergency he needed to be examined treatment would need to be rendered first - [patient] jumped up and left infirmary enroute to [sergeant's] office." (P. Ex. 3; D. Ex. 4.) At the hearing, Plaintiff did not agree with the information in this notation by Nurse Rupert. (Tr. at 51-52.) Another note in the infirmary records timed 12:50pm was written by Defendant Coryer. (P. Ex. 3; D. Ex. 4.) Plaintiff gave a history of vomiting and diarrhea. *Id*. There is no mention in that note of any request to see a sergeant; but it does reference that the Plaintiff requested pain medication and he was "reassured." *Id*. The note also reports that he was resting quietly at 1:10pm, and he did not demonstrate any signs or symptoms at 1:30pm. *Id*. He also took sips of water and did not vomit. *Id*.

There is another two part note which is not timed, written by Nurse Rupert on July 9, 2008. *Id*. It indicates that Plaintiff was screaming and "crying out 'sounds' no words." *Id*. He stated "I can't control my emotions," and he was refusing to answer the suicide screening questionnaire. *Id*. Rupert's notation shows she called Clinton and a bed was available. *Id*. Plaintiff was then transferred to Clinton to a "psych ward." (Tr. at 57.)

Based upon this testimony and record evidence, it appears Plaintiff's request for a sergeant was made to Defendant Rupert, and the transfer to Clinton for psychiatric treatment was initiated by her. Rupert did not testify at the exhaustion hearing. Construed with the utmost of special leniency, in reviewing Plaintiff's hearing testimony and the information in the

12

Ogdensburg infirmary medical record, I find that Plaintiff has adequately raised the issue of estoppel regarding Defendant Rupert's actions. "A prisoner may invoke the doctrine of estoppel when defendants took affirmative action to prevent him from availing himself of grievance procedures." *Amador v. Andrews*, 655 F.3d 89, 103 (2d Cir. 2011). However, Plaintiff offered no specific testimony or evidence that Defendant Nurse Coryer or Defendant Sears in any way interfered with his ability to file a grievance during the time in question. *Murray*, 2010 WL 1235591, at \*5 & n.26 (collecting cases); *McCloud*, 2008 WL 1772305, at \*12 ("None of those documents allege facts plausibly suggesting that Defendant's own actions inhibited Plaintiff's exhaustion of remedies during the time in question."). Therefore, it is recommended that only Defendant Rupert be estopped from raising the affirmative defense of non-exhaustion.

As for unavailability, I find Plaintiff has shown that grievance procedures were unavailable to him. While he could have conceivably late grieved his claim that he was not allowed to see a physician while in the Ogdensburg infirmary on July 9, 2008, when he arrived at Walsh RMU, Nurse Rupert's alleged failure to get a sergeant when Plaintiff requested to see a sergeant, and her transfer of him to another medical unit, effectively made the grievance process unavailable to him. *Sandlin*, 575 F. Supp. 2d at 488.

### 2. Special Circumstances

Plaintiff's hearing testimony and cross-examination of Defendants' witnesses raise the specter of two special circumstances for not properly exhausting his available administrative remedies before filing this action on August 26, 2010: (1) he was too sick to file a grievance; and (2) he was afraid to file a grievance. (Tr. at 32-34.)

With regard to Plaintiff's first excuse (i.e., that he was too sick to file a grievance), I find

this excuse does not suffice. Plaintiff testified that in the three days following the time when he asked Defendant Rupert if he could speak to a sergeant, he was transferred to other medical facilities and he was in pain, unconscious and not able to speak. (Tr. at 33.) He was then in the hospital for about two months and could not walk or speak. *Id.*

The medical records offered by Defendants do not support Plaintiff's claims regarding the extent of his illness in incapacitating him. The Plaintiff was admitted to Claxton-Hepburn Medical Center on July 11, 2008. (D. Ex. 7, 8.) He was transferred to Upstate Medical Center on July 15, 2008, where he underwent surgery for a small bowel obstruction and abdominal wall infection. (D. Ex. 9.) From there he was discharged to Walsh RMU in improved condition on August 14, 2008. (D. Ex. 9.) He was released from Walsh RMU on October 9, 2008, to his mother's house as his term of incarceration ended. (D. Ex. 13.)

Defendants offered the testimony of David Ashe, the inmate grievance supervisor at Walsh RMU, from 2006 to 2011. (Tr. at 95-96.) He reviewed Directive 4040 and explained the grievance program. (Tr. at 97.) If an inmate is too sick to write a grievance, the inmate can ask anyone at the facility to do it for him and/or ask for an extension of time to file a grievance. (Tr. at 98-99.) Ashe did regular rounds at Walsh RMU and would counsel inmates on the grievance process if they asked for assistance. (Tr. at 105.) Non-ambulatory inmate-patients could get grievance forms from him, or they could ask anyone on the staff for the forms. (Tr. at 104.) Plaintiff testified he signed an acknowledgment of receiving the inmate handbook when arriving at Walsh RMU, although he did not remember signing it. (Tr. at 75.) The handbook contained information about the grievance procedures. (D. Ex. 11.)

Defendants also offered the testimony of Dr. Salvana, the physician responsible for

patients at Walsh RMU during the relevant time period.  (Tr. at 112-13.)  In reviewing the

Plaintiff's admission, progress, and discharge notes from Walsh RMU which encompassed the

time frame from August to October of 2008 (D. Ex. 10, 12, 13), he testified that there was no

information in the records about the care provided to Plaintiff during that time which precluded

Plaintiff from filing a grievance.  (Tr. at 121.)  Nurses taught him to care for his wound and

ostomy bag and he was then doing his own wound dressing and ostomy care.  (Tr. at 121-123,

142.)  Plaintiff requested infectious disease testing and signed proper consents for the testing

indicating Plaintiff was thinking and oriented, and making decisions about his own care and

treatment.  (Tr. at 124-126.)  Upon parole and release from Walsh RMU, Dr. Salvana wanted

Plaintiff to have a visiting nurse for ostomy monitoring and follow up to make sure the self care

was proper.  (Tr. at 132-33.)  However, Plaintiff's wound at that time would not have prevented

him from filing a grievance.  (Tr. at 151.)

  In short, the hearing evidence shows Plaintiff was provided with information regarding

grievance procedures when he arrived at Walsh RMU.  The treatment notes and Dr. Salvana's

testimony show Plaintiff was physically able to file a grievance.  Inmate grievance supervisor

Ashe confirmed Plaintiff could have requested an extension of time to file it.  There is absolutely

no information in the record that Plaintiff made any effort to request a grievance form from Ashe

or anyone at Walsh RMU, or that Plaintiff made any effort to file a grievance while at Walsh

RMU.  The records and testimony show he was physically able to do so at least while at Walsh

RMU, and he was provided with information on how to file a grievance when he arrived there.

Therefore, I find Plaintiff's excuse that he was too sick to file a grievance regarding the delay in

treatment allegedly caused by the nurses at Clinton insufficient to be regarded as a special

circumstance excusing his failure to exhaust his administrative remedies.

However, with regard to Plaintiff's assertion that he was too frightened to file a grievance, I find that this is sufficient to show special circumstances excusing his failure to exhaust administrative remedies regarding his claim against Defendants. Plaintiff testified he was assaulted by six officers at Clinton when he arrived there. (Tr. at 41-43.) These officers are not parties to the action. (Tr. at 43.) He alleges he "was stripped naked and locked in a cold cell for hours until the psych physician saw that I did not have a mental condition but a physical one . . . ." (Dkt. No. 32 at 8-9; *see also* Tr. at 32-33.) He testified that after the assault, his fear overtook him because he was sick. (Tr. at 44.) He claims he asked for a doctor at Ogdensburg because he needed medical treatment, and instead of seeing the physician he was transferred and assaulted. (Tr. at 44.) He was then afraid to grieve because he would not get the medical treatment he felt he needed and he would have to suffer. *Id.* He testified the assault was a result of Defendant Rupert teaching him a lesson that he should not file a grievance on her. *Id.*

The only evidence the Defendants offered regarding Plaintiff's allegation that he was afraid to file a grievance was the testimony of Dr. Salvana who indicated there was nothing in the records at Walsh RMU or "even the notes from the hospital before you came to Walsh and then after you went back to the hospital for the problems that developed, anything that indicated there was a problem, that you were scared. I mean, there was no indication that, to me or to anyone else. If there was, they would have written it down, that there was a problem where you were afraid to report something because of repercussions." (Tr. at 127.) First, Dr. Salvana's testimony only referenced Plaintiff's time spent at Walsh RMU for treatment. Second, Dr. Salvana's testimony as to what other health care professionals would have noted in the records is

16

speculative and conclusory.  Further, even if Plaintiff had complained to other nurses and doctors, it would not negate his claim that he was too frightened to file a grievance.  "Threats or other intimidation by prison officials may well deter a prisoner of ordinary firmness from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority."  *Hemphill*, 380 F.3d at 688.

Therefore, I recommend the Court find that Plaintiff's fear that filing a grievance would result in him not obtaining medical care amounted to special circumstances excusing his failure to exhaust administrative remedies regarding his claim against Defendants.

## V.    CONCLUSION

Based upon the evidence presented at the hearing, the Court recommends that Plaintiff be permitted to pursue the claims in his Amended Complaint (Dkt. No. 32) because his failure to pursue his administrative remedies before filing this action is justified.  Plaintiff was prevented by the actions of Defendant Rupert from filing a grievance or from pursuing his administrative remedies against her such that she is estopped from asserting the failure to exhaust defense. With regard to all of the Defendants, including Rupert, Plaintiff has offered credible evidence of special circumstances which excuses his failure to exhaust administrative remedies.  However, the Court makes no determination or recommendation on whether the causes of action alleged in the Amended Complaint would survive a proper summary judgment motion.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Plaintiff be permitted to pursue the cause(s) of action alleged in his Amended Complaint (Dkt. No. 32); and it is further

**RECOMMENDED** that if this Report-Recommendation is adopted, the matter should be returned to the undersigned Magistrate Judge to reset pretrial deadlines; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


Dated: May 27, 2015
      Syracuse, NY



Thérèse Wiley Dancks
United States Magistrate Judge


Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

H

Only the Westlaw citation is currently available.

United States District Court,
S.D. California.
David Raymond ANDREWS, Plaintiff,
v.
M.C. WHITMAN; G.J. Janda; M.E. Bourland; T.
Ochoa; C. Butler; W.C. Roberts; F. Rutledge; Cali-
fornia Department of Corrections, Defendants.

No. 06–2447–LAB (NLS).
Dkt. Nos. 78, 94, 96.
March 27, 2009.

West KeySummary**Civil Rights 78** ⊂⟩**1420**

78 Civil Rights
    78III Federal Remedies in General
        78k1416 Weight and Sufficiency of Evidence
            78k1420 k. Criminal Law Enforcement;
Prisons. Most Cited Cases

    A state prisoner's objection to the dismissal of his
civil rights action on the grounds that defendants were
required to prove non-exhaustion by clear and con-
vincing evidence was overruled. The prisoner alleged
he was sexually assaulted, prison officials retaliated
against him, and he was prevented from fully ex-
hausting his claim. The prisoner failed to submit the
proper reports about the incident or any charges of
staff misconduct even though the forms were made
available, and that was sufficient to show the prisoner
failed to exhaust his administrative remedies by a
preponderance of the evidence, the correct legal
standard. 28 U.S.C.A. § 1915(a).

David Raymond Andrews, Crescent City, CA, pro se.

Stephen A. Aronis, Office of the Attorney General,
San Diego, CA, for Defendants.

**ORDER OVERRULING OBJECTIONS TO
REPORT AND RECOMMENDATIONS;
ORDER ADOPTING REPORT AND RECOM-
MENDATIONS;
ORDER DENYING MOTION FOR LEAVE TO
FILE SECOND AMENDED COMPLAINT; AND
ORDER OF DISMISSAL**
LARRY ALAN BURNS, District Judge.
**I. Procedural History**
    **\*1** Plaintiff, a prisoner proceeding *pro se* and *in
forma pauperis,* filed his original complaint in this
civil rights action on November 3, 2006. Defendants
moved to dismiss, and on March 28, 2008, the Court
issued an order (the "Dismissal Order") dismissing
certain claims with prejudice and others without
prejudice.

    The Dismissal Order dismissed with prejudice all
claims against the California Department of Correc-
tions and Rehabilitation ("CDCR") and Plaintiff's
Eighth Amendment claims that Defendants trans-
ferred him back into the general prison population in
2006. All other claims were dismissed without preju-
dice, and Plaintiff was permitted to file an amended
complaint. The Dismissal Order also cautioned Plain-
tiff that he was not to add unexhausted or otherwise
non-meritorious claims and that if he did so, they
would be subject to *sua sponte* dismissal under 28
U.S.C. § 1915(a).

    Plaintiff then filed his First Amended Complaint
("FAC"), and Defendants filed a motion to dismiss
(the "Motion to Dismiss"). The FAC is 63 pages long,
with an additional 62 pages of exhibits attached.
Pursuant to 28 U.S.C. § 636 and Civil Local Rule
72.1(d), the Motion to Dismiss was referred to Mag-
istrate Judge Nita L. Stormes for report and recom-

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

mendation. On October 8, 2008, Judge Stormes issued her report and recommendation (the "R & R") finding Plaintiff had failed to exhaust his administrative remedies and recommending Defendants' Motion to Dismiss be granted on that basis or, in the alternative, because the FAC fails to state a claim. The R & R recommended not charging Plaintiff with a strike under 28 U.S.C. § 1915(g).

Defendants filed objections, requesting that the FAC be dismissed for failure to state a claim and charged with a strike. Plaintiff then filed a series of motions, including a "Motion to Strike the Defendants' Affirmative Defense of Failure to Exhaust Administrative Remedies," (Dkt. no. 94), an "Ex Parte Request to File a Second Amended Complaint," (Dkt. no. 96), and a "Motion to Strike the Defendants' Objection to the Report and Recommendation." (Dkt. no. 104). Because the first two of these motions go to the substance of the R & R, the Court construes them as objections to the R & R. The Court ruled separately on the third motion (Dkt. no. 104), which was based on matters not directly related to the R & R or the substance of the Motion to Dismiss. Plaintiff filed his objections to the R & R on December 12, 2008, and on December 19, 2008, he filed a reply to Defendants' objections.

**II. Legal Standards**

A district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions" on a dispositive matter prepared by a magistrate judge proceeding without the consent of the parties for all purposes. Fed.R.Civ.P. 72(b); *see also* 28 U.S.C. § 636(b)(1). An objecting party may "serve and file specific written objections to the proposed findings and recommendations," and "a party may respond to another party's objections." Rule 72(b).

**\*2** In reviewing an R & R, "the court shall make a de novo determination of those portions of the report

or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (when objections are made, the court must make a de novo determination of the factual findings to which there are objections). "If neither party contests the magistrate's proposed findings of fact, the court may assume their correctness and decide the motion on the applicable law." *Orand v. United States,* 602 F.2d 207, 208 (9th Cir.1979). Objections must, however, be specific, not vague or generalized. *See* Fed.R.Civ.P. 72(b)(2) (requiring "specific" objections); *Palmisano v. Yates,* 2007 WL 2505565, slip op. at \*2 (S.D.Cal. Aug. 31, 2007).

The Court has reviewed de novo the legal standards set forth in the R & R, and finds them to be correct. The Court will therefore apply the standards set forth there without again citing them at length here.

**III. Screening**

Because Plaintiff is a prisoner and proceeding *in forma pauperis,* the Court is obligated pursuant to 28 U.S.C. §§ 1915(e) (2) and 1915A, and 42 U.S.C. § 1997e(c) to dismiss the FAC to the extent it is frivolous or malicious, seeks monetary relief against a Defendant who is immune, or fails to state a claim. As noted, the Dismissal Order dismissed with prejudice all claims against the CDCR. Without leave, Plaintiff has again named the CDCR as a Defendant. The Court therefore **REAFFIRMS** its previous dismissal of these claims and will not consider them further.

The FAC raises claims against Defendants in both their individual and official capacities (FAC at 4), and Defendants have raised Eleventh Amendment immunity. (Mem. in Supp. of Motion to Dismiss, 8:5–22.) The R & R recommends dismissing these claims to the extent Plaintiff seeks damages, and the Court agrees. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (holding that the Eleventh Amendment bars damages actions against state officials acting in their

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

official capacity).

**IV. Exhaustion of Administrative Remedies**

**A. Requirements and Legal Standards**

Exhaustion of available administrative remedies is a prerequisite to bringing suit under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *Porter v. Nussle,* 534 U.S. 516, 524–25, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Claims must be exhausted before filing suit; exhaustion after filing suit will not suffice. *McKinney v. Carey,* 311 F.3d 1198, 1198 (9th Cir.2002).

Defendants may raise this defense in a non-enumerated motion under Fed.R.Civ.P. 12(b), and bear the burden of raising and proving non-exhaustion. *Wyatt v. Terhune,* 315 F.3d 1108, 1119 (9th Cir.2003). To prevail, Defendants must show Plaintiff had available administrative remedies he did not utilize. *Id.* They may go beyond the pleadings and provide evidence to support their argument, but Plaintiff must be provided an opportunity to develop the record to refute Defendants' showing. *Id.* at 1120 n. 14. The Court may consider the parties' submissions outside the pleadings and decide disputed issues of fact. *Id.* at 1119–20 (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union,* 837 F.2d 365, 369 (9th Cir.1988) (per curiam)).

**\*3** The exhaustion requirement takes on particular significance in this case because Defendants submitted evidence Plaintiff never properly exhausted *any* claims he now raises. The Court denied without prejudice Defendants' earlier motion to dismiss on the basis of non-exhaustion, finding they had not provided adequate details or evidence to refute Plaintiff's claim they thwarted his efforts to file his administrative complaint, or to explain how they were able to send Lt. Stratton to investigate Plaintiff's complaint against Sgt. Galban. In this renewed motion, Defendants again

contend Plaintiff failed to properly exhaust his administrative remedies by pursuing an administrative complaint against Defendant Galban for allegedly assaulting Plaintiff, and against other Defendants for actions they allegedly took in the aftermath. As the Court explained in its Dismissal Order, Plaintiff could not have exhausted his administrative remedies for later alleged violations of his rights. (Dismissal Order at 7:1–27.)

To properly exhaust, a prisoner must complete the administrative review process according to the applicable rules. *Woodford v. Ngo,* 548 U.S. 81, 90, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). In California, this means

a prisoner must first attempt to informally resolve the problem with the staff member involved in the action or decision being appealed. [15 Cal.Code Regs.] § 3084.5(a). If unsuccessful, the prisoner must then submit a formal appeal on an inmate appeal form (a "602") to the institution's Appeals Coordinator or Appeals Office. *Id.,* § 3084.5(b). If the prisoner is again unsuccessful, he or she must submit a formal appeal for second level review, *id.,* § 3084.5(c), which is conducted by the institution head or designee. *Id.* § 3084.5(e)(1). The third or "Director's Level" of review "shall be final and exhausts all administrative remedies available in the Department [of Corrections]." *See* Cal. Dep't. of Corrections Operations Manual, § 54100.11, "Levels of Review[.]"

*Nichols v. Logan,* 355 F.Supp.2d 1155, 1161 (S.D.Cal.2004).

Because a plaintiff must follow applicable regulations, using some alternative means or procedure to lodge or pursue a complaint does not satisfy exhaustion requirements. Under 15 Cal.Code Regs. § 3084.2 prisoners must use Form 602 to advance their grievances. The Cal. Dep't of Corrections Operations

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

Manual, § 54100.25.1, requires use of the form even when allegations of staff misconduct are being separately investigated. (Grannis Suppl. Decl., ¶ 6.)

The Supreme Court has recognized this requirement may create harsh results, but has also emphasized the relative informality and simplicity of California's system, *Woodford,* 548 U.S. at 103, as well as the important concerns underlying the exhaustion requirement. *Porter,* 534 U.S. at 524–25.

Plaintiff need only exhaust *available* remedies, however. Any theoretically available remedies Defendants prevented him from pursuing, such as by withholding required forms or refusing to process forms, need not be exhausted. *Mitchell v. Horn,* 318 F.3d 523, 529 (3d Cir.2003) (citing *Miller v. Norris,* 247 F.3d 736,740 (8th Cir.2001) (holding that remedies prisoner officials prevent a prisoner from utilizing are not "available" for § 1997e(a) purposes)).

**B. The R & R's Findings**
**\*4** The R & R focuses on Plaintiff's claim that Sgt. Galban sexually assaulted him and prison officials retaliated against him. Plaintiff claims he either exhausted these and other claims or filed them but was prevented from fully exhausting them, and that Lt. Stratton investigated them. As the R & R correctly points out, the questions now before the Court concerning exhaustion are 1) whether whatever complaint Lt. Stratton investigated satisfied the exhaustion requirement, and 2) whether Defendants prevented Plaintiff from utilizing administrative remedies.

Previously, Defendants submitted evidence Plaintiff never submitted a Form 602 complaining of sexual assault and retaliation. In the Motion to Dismiss, they again submit evidence, but also provide detailed explanation of what happened. The R & R reviews this evidence in great detail. (R & R, 10:6–12:15.) In essence, Defendants have presented evidence to show Plaintiff never submitted a Form 602

complaint, and Lt. Stratton was investigating a spoken, not written, complaint. (Stratton Decl. ¶¶ 3, 6.) They also present evidence to show charges of serious staff misconduct may be investigated even when not submitted on the required Form 602, but a separate investigation does not substitute for the normal appeal process. (Grannis Suppl. Decl. ¶ 6.) Plaintiff himself, when communicating with officials, described his complaint as a "citizen's complaint," [FN1] not a 602 appeal or any equivalent term, and specifically cites 15 Cal.Code Regs. § 3391(d). (Stratton Decl. ¶ 5, Ex. C.)

> FN1. Regulations provide for the submission of citizens' complaints, 15 Cal.Code Regs. § 3391, but only by non-inmates.

Defendants have submitted evidence showing a search was made for all 602 appeals Plaintiff submitted from November 1, 2002 to November 3, 2006, the date the original complaint was filed in this matter. (Edwards Suppl. Decl., ¶ 4.) Most of the appeals were screened because Plaintiff had attempted to bypass steps in the appeals process or because of other procedural defects he could have remedied but never did. (*Id.*)

Two 602 appeals are of particular interest. First, on November 6, 2005 Plaintiff appealed procedural irregularities in the October 7, 2005 disciplinary hearing, of which he said he was notified November 3, 2005. (Edwards Suppl. Decl., ¶ 4(c) and Ex. B.) Plaintiff's description of the problem, set forth on the form, describes only failure to hold an adequate hearing, appeals the finding of "guilty," and requests only the opportunity to appear and present evidence at a new hearing. (*Id.,* Ex. B.) The evidence shows this appeal was *granted* on April 10, 2006 and Plaintiff was provided with a new hearing as he requested. (*Id.*) The evidence indicates he lodged no appeal concerning the new hearing. This particular 602 appeal would have put prison officials on notice of a possible procedural due process violation, but as the R & R cor-

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

rectly noted, the FAC does not raise such a claim. (R & R at 19:16–23; *see also* FAC at 25–26 (discussing events of early October, 2005), 29 (briefly discussing events of November, 2005).) The appeal did not identify the basis for any claim raised in the FAC. *See Griffin v. Arpaio,* 557 F.3d 1117, 2009 WL 539982, slip op. at *2–*3 (9th Cir. Mar. 5, 2009) (explaining that, to exhaust administrative remedies, a grievance must contain sufficient details to put prison officials on notice of the nature of the wrong for which redress is sought).

**\*5** Second, Plaintiff maintained to the Director's Level a 602 appeal complaining against unspecified officials concerning a different disciplinary proceeding. The disciplinary proceeding concerned charges of refusing a cellmate, and began May 10, 2006. The appeal, which was denied at the Director's Level, was not exhausted until November 30, 2006, nearly a month *after* Plaintiff filed this action. (Edwards Suppl. Decl. ¶ 4(g); Grannis Decl. ¶ 7(a).) Also, the R & R correctly notes this appeal would not have put Defendants on notice regarding allegations that Sgt. Galban sexually assaulted Plaintiff and staff prevented him from filing a complaint about it. (R & R, 13:5–22.)

The evidence therefore shows no appeals that would have put prison officials on notice of the grievances underlying claims raised in the FAC, either those involving Sgt. Galban, or official retaliation, or any other claim. (Edwards Suppl. Decl. ¶ 4.) Furthermore, the evidence shows Plaintiff was able to submit multiple 602 appeals, which were considered and, in one case, granted. (*Id.*)

The R & R also credited declarations showing Plaintiff never submitted a Third Level appeal against any Defendant. (R & R, 12:1–3.) Thus, even if Plaintiff had submitted an appeal on a Form 602 concerning his claims raised in the FAC, the R & R found he had not pursued it through all required levels.

The R & R found administrative remedies were available. On its face, the evidence indicates the screening out of certain appeals was not arbitrary, contrary to applicable rules, or designed to thwart Plaintiff's ability to bring or maintain appeals. (Edwards Suppl. Decl. ¶ 4.) Plaintiff says officials initially refused to provide him with a blank Form 602 so he could file a grievance and initially refused to allow him to file a grievance other than on a Form 602. (FAC at 17, 20, 24–25.) The FAC makes clear, however, that Plaintiff obtained this form from the prison library. (*Id.* at 26.)

Thus, assuming the R & R's findings of facts are correct, Plaintiff had administrative remedies available for claims he raises in the FAC but failed to exhaust them as to any claim raised in the FAC.

**C. Plaintiff's Objections to the R & R**

As discussed above, Plaintiff filed extensive and detailed objections to the R & R, most of which are irrelevant to the issue of exhaustion, and many of which are irrelevant to any material issue. The objections go line by line through the R & R, critiquing each sentence or paragraph. In large part, the objections find fault with the level of factual and legal detail provided in the R & R, or quibble baselessly with its wording. The Court will not address these objections, which have no bearing on the outcome of this case and which are thus moot. In only a few instances, which are addressed below, are Plaintiff's objections relevant to the issue of exhaustion of administrative remedies.

**1. Objection: The R & R Applied the Wrong Legal Standards**

**\*6** Plaintiff lodges two general objections regarding the standards the R & R applied. First, he argues the R & R was bound to apply the Rule 12(b)(6) standard to Defendants' defense of non-exhaustion by accepting his pleadings as true and drawing inferences in his favor rather than considering

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

evidence. (*See, e.g.,* Obj. to R & R at 13, 29 ("The R & R assumes a matter in dispute.").)

As discussed above, this objection relies on the wrong standard. In deciding a non-enumerated Rule 12 motion to dismiss for failure to exhaust available administrative remedies, the Court may consider the parties' submissions outside the pleadings and decide disputed issues of fact. *Wyatt,* 315 F.3d at 1119–20. Defendant has been afforded an opportunity to develop the record, and has done so by pointing to and discussing extensive documentation to support his arguments. *Id.* at 1120 n. 14.

Second, Plaintiff argues Defendants were required to prove non-exhaustion by clear and convincing evidence (Obj. to R & R at 35–36 ("They are required to establish by clear and convincing proof ...."); 44 ("The Defendants have not submitted clear and convincing proof of unexhausted available remedies and this is what is required in order to satisfy the allocated burden of proof.")

It would be extraordinary if defendants in civil actions were required to prove the nonoccurrence of an event by clear and convincing evidence, especially because weightier matters such as liability and jurisdiction need only be proved by a preponderance of the evidence. Thus, not surprisingly, the R & R did not state what standard it was applying. The correct standard is, however, that Defendants must prove non-exhaustion of administrative remedies by a preponderance of the evidence. *See Kelley v. DeMasi,* 2008 WL 4298475, slip op. at *4 (E.D.Mich, Sept. 18, 2008) (citing *Lewis v. District of Columbia,* 535 F.Supp.2d 1, 5 (D.D.C.2008)). *See also Dale v. Poston,* 548 F.3d 563, 564 (7th Cir.2008) (noting with approval that jury was asked to determine whether defendants in PLRA case had proven non-exhaustion by a preponderance of the evidence). The R & R did not err.

These objections are therefore **OVERRULED.**

**2. Objection: The R & R Relied on Inadmissible Evidence**

Plaintiff argues in various places that the R & R relied on incompetent evidence submitted by Defendants. He contends Lt. Stratton would have had no personal knowledge of the matters attested to in his declaration, such as who submitted which reports or who received various letters attached as exhibits to his declaration. (Obj. to R & R at 30–31.) He also claims, without much explanation, that Lt. Stratton would not have had time to conduct an actual investigation. (*Id.* at 35.)

These objections are largely frivolous and those that are not are trivial. Lt. Stratton would have had personal knowledge of what kind of investigation he was asked to conduct, what paper documentation he was provided, what he and Plaintiff talked about, and what reports he submitted after interviewing Plaintiff. (Stratton Decl. ¶¶ 3, 4.) The letters he was provided (*id.,* Ex. C) are attached as exhibits, with addressed and postmarked envelopes, and their contents speak for themselves. Plaintiff does not question the authenticity of any letter he himself wrote or sent. The letter from Warden L.E. Scribner, which is also attached, is substantially similar to the letter Plaintiff himself attached as FAC Ex. 31,[FN2] and in any event is offered merely to show what Plaintiff was told and not for the truth of the matters asserted therein.

> FN2. The wording in the body of each letter is identical. The letter submitted as an exhibit to the Stratton declaration appears to be an administrative file copy; it uses different type for the date, a designation indicating Warden Scribner's signature on the original was administratively affixed, and identifying numerical information near the top.

**\*7** Lt. Stratton also provided a factual basis,

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

grounded primarily in his own experience, for his conclusions that Plaintiff filed no Form 602 appeals relating to accusations against Sgt. Galban, or against other staff for failing to process complaints of staff misconduct. (Stratton Decl. ¶ 6.) The only possibly incompetent testimony consists of characterizations of the attached letters and a report of a brief conversation with an administrator, but these are merely cumulative of other evidence and do not affect the outcome.

These objections are therefore **OVERRULED.**

### 3. Objection: Defendants Are Estopped from Arguing Non–Exhaustion

Plaintiff has filed a separate motion to strike ("Motion to Strike") which, as noted above, the Court construes as part of Plaintiff's objections. The objections themselves repeatedly make reference to the estoppel argument. (*See, e.g.,* Obj. to R & R at 57.) The motion itself, however, provides the most detailed argument.

Plaintiff claims Defendants misled him into believing his claims were exhausted, and no more remedies were available. (Motion to Strike at 3; Obj. to R & R at 53.) In support of his position, he cites Cal. Evid.Code § 623 (concerning estoppel) and *Brown v. Valoff,* 422 F.3d 926, 935 (9th Cir.2005). (Motion to Strike at 2.)

Plaintiff cites a particular letter in support of this argument, a letter from Warden Scribner, dated January 27, 2006, stating that Plaintiff's allegations were not sustained and further questions should be referred to administrative assistant R. Madden. (Obj. to R & R at 38, 53 (citing FAC, Ex. 31).) Plaintiff contends this letter reliably informed him that no remedies were available. *See Brown,* 422 F.3d at 935 and n. 10.

Plaintiff misreads the letter, however. It informs him Warden Scribner was responding to a "recent letter" from Plaintiff in which Plaintiff says that on October 18, 2005 he submitted a "written Citizen's Complaint in regards to Correctional Sergeant S. Rutledge." (FAC Ex. 31.) The letter further informs Plaintiff:

> A "fact-finding" was conducted into these and related allegations that you had previously made. The result of the "fact-finding" was that the allegations are NOT SUSTAINED, and that staff have acted and treated you in a professional manner.

> *Id.*

This letter does not, as Plaintiff argues, inform him no remedies are available for him to exhaust. Rather, it tells him Warden Scribner was responding to a letter concerning a citizen's complaint sent to the Director of Corrections—not a 602 appeal pursued through established channels. Plaintiff's letter of complaint is apparently the letter attached as Exhibit C to the Stratton Declaration, which is discussed above.

Plaintiff's letter charges that the complaint was never processed, that Plaintiff spoke to officials, and that no appropriate response was forthcoming. (Stratton Decl. ¶ 5, Ex. C.) It therefore requests a Director's Review and an investigation. (*Id.*) Whatever Plaintiff may have intended to say or do, the letter he addressed to the Director of Corrections is not a 602 appeal, and Warden Scribner's reply can only reasonably be construed as discussing an investigation made pursuant to other kinds of complaints, outside the established grievance process. It does not, as Plaintiff believes, inform him that remedies for the type of injury he alleges are unavailable through the established grievance process. It neither forbids nor discourages filing a 602 appeal.

**\*8** In a sense Plaintiff seems to be arguing that after receiving this letter there was no point in filing a 602 appeal. The Supreme Court's holding in *Woodford,* 548 U.S. at 94–95, however, explains why this

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

argument must fail. The Supreme Court's holding makes absolutely clear a prisoner must follow the established prison grievance system, not some other system of his own devising. Nor may a prisoner satisfy the exhaustion requirement by bypassing the administrative process or violating its requirements until his complaint at last flatly stalls. *Id.* at 95, 97.

This objection is therefore **OVERRULED.**

### 4. Objection: The R & R Should Have Considered FAC Exhibit 45

This is the most substantial of Plaintiff's objections. Plaintiff points to a 602 form attached as Exhibit 45 to the R & R (the "Retaliation 602"). In the area of the form where Plaintiff was asked to describe the problem, he wrote:

Emergency Appeal Pursuant to CCR Title 15, 3084.7. Circumstances are such that regular appeal time presents a threat to my safety. Classification committee CHo'd me to general population double cell. The action places me at risk. I have attempted to make a complaint against corrections officers and have been issued CDC 115's and 128's in retaliation.

(FAC Ex. 45.) In the area where he was to indicate the actions he was requesting, he wrote: "Stay of release to GP double cell and new Committee hearing and audit of my file." (*Id.*) The form is dated December 15, 2005 and date-stamped as having been received by the appeals office on December 21, 2005.

Plaintiff repeatedly cites to the Retaliation 602 as evidence Defendants made administrative remedies unavailable to him. (Obj. to R & R at 18, 36–37 (accusing Appeals Coordinator D. Edwards of omitting pertinent details in his declaration and arguing this appeal was "undu[ ]lly rejected under the direction of the Defendants"), 40.)

This 602 form, if it had been properly filed and

the appeal pursued, would have exhausted Plaintiff's retaliation claim and possibly notified Defendants of other claims in the FAC. Edwards' supplemental declaration (Dkt. no. 78–6) submitted in support of Defendants' Motion to Dismiss explains why it was not: "On December 21, 2005, my office received an appeal from Inmate Andrews which was screened out on December 22, 2005, because he could only submit one non-emergency appeal per week." (Edwards Suppl. Decl., ¶ 4(d).)

The declaration's previous paragraph, 4(c), identifies the other non-emergency appeal Plaintiff submitted, a 602 appeal concerning a disciplinary matter which had previously been submitted on November 6, 2005 and was resubmitted on December 15, 2005. This is attached as Exhibit B to the supplemental declaration. This other appeal is dated as having been resubmitted on December 15, 2005 and is date-stamped as having been received in the appeals office on December 21, 2005.[FN3] It was this appeal that was eventually granted at the second level.

FN3. The declaration erroneously indicates this appeal was received on December 22, 2005, but the date stamp indicates the correct date was December 21. (Edwards Suppl. Decl., ¶ 4(c).) This appears to be a typographical error because other than this, all nine appeals are listed in chronological order.

**\*9** These two 602 forms, then, were signed by Plaintiff and received by the appeals office on the exact same days. The Retaliation 602, which was screened out the day after it was received, is accompanied by a letter explaining:

The enclosed documents are being returned to you for the following reasons:

***You may only submit one (1) non-emergency appeal within a seven-calendar day period.***

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

*Furthermore, you failed to attach a copy of your most recent CDC 128G Classification chrono to the appeal. This appeal does not meet the Emergency Appeal requirement set forth in [15 Cal Code Regs. § 3084.7]. Resubmit this appeal after 12/29/05.*

(FAC, Ex. 44 (emphasis in original).)

The Supreme Court's holding in *Woodford* explains:

Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

548 U.S. at 90–91. If, as the letter indicates, the Retaliation 602 was properly screened out for either of the reasons set forth in the rejection letter, Plaintiff failed to comply with procedural rules and Defendants cannot rightly be blamed for screening it out rather than processing and acting on it.

Although the Retaliation 602 asserts it is an emergency, the record as a whole makes clear it is not. Since at least September, 2005, Plaintiff had been telling prison officials he thought he would not be safe if he were moved to a double cell in the general population, and had been disciplined for refusing to leave administrative segregation. (*See, e.g.,* FAC, Ex. 32–33.) This particular request has every appearance of a repetition of older claims. The additional claim that officers were retaliating against him by issuing CDC 115's and 128's, though new, is likewise not an emergency. There is no suggestion that having the allegedly false reports dismissed or stopping the filing of new reports was a matter of any urgency, and Plaintiff did not ask for any relief concerning this charge.

Applicable regulations deal with the obvious potential for the submission of excessive appeals by prisoners by requiring the suspension of second and subsequent non-emergency appeals filed within the same seven-day calendar period. 15 Cal.Code Regs. § 3084.4(a)(1). Because neither 602 appeal received on December 21, 2005 was an emergency appeal, one of the two was therefore improperly filed and required to be screened out. By submitting two non-emergency appeals on the same day, Plaintiff was failing to comply with applicable rules.

Accepting the resubmitted 602, which had obviously been pending longer than the Retaliation 602 and which was not primarily a rehash of earlier complaints, was proper. On top of this, Plaintiff failed to attach his Classification chrono to the Retaliation 602 so the reviewing officer would have relevant information concerning his placement. Plaintiff was also specifically told he could cure his errors by resubmitting his Retaliation 602 after December 29, 2005, but he did not do so. And finally, a notice at the bottom of the rejection letter explains the procedure for correcting a screening error; thus, if he thought the wrong appeal was screened out he could have attempted to correct his error, though the pleadings make clear he did not do so.

**\*10** The Court therefore holds Plaintiff did not properly submit his Retaliation 602, which was correctly screened out. Although he had the opportunity to do so, he never resubmitted it. Plaintiff thus failed to exhaust claims raised in this Form 602, and he—not prison officials—was responsible for this.

This objection is therefore **OVERRULED.**

**5. Objection: The FAC Did Allege a Due Process Claim**
The R & R found Plaintiff had not alleged a due process claim in the FAC. (R & R at 19:16–23.)

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

Plaintiff objects that he did in fact bring equal protection and due process claims. (Obj. to R & R at 48) and in his Motion to Amend suggests he stands ready to plead due process violations. (Motion to Amend, ¶ 20.) As discussed above, the only potential claim Plaintiff exhausted before filing suit was a possible procedural due process claim arising from a disciplinary hearing, log number 09–05–B08, which he complained he was not permitted to attend or present evidence at, although he had not waived these rights. (*See* Edwards Suppl. Decl., ¶ 4(c) and Ex. B (Form 602, submitted December 15, 2005, and related documents).) He also alleges other possible due process or equal protection claims, but clearly he has not exhausted any of these.

Even if Plaintiff could show his procedural due process rights were violated and even if he could show he was injured by the violation, neither the FAC nor the objections nor his Motion to Amend give any suggestion he is attempting to bring a claim based on this disciplinary hearing. Rather, he complains of "false writings." (Obj. to R & R at 48.) The "false writing" is identified as Grannis' declaration, which Plaintiff believes wrongly includes a reference to an ultimate finding of a disciplinary violation. (*Id* ., Motion to Amend ¶ 19.) The Grannis declaration Plaintiff is referring to, however, mentions a later conviction, log number 05–A5–06–005, dated May 10, 2006, and not the earlier disciplinary hearing. (Grannis Suppl. Decl. ¶ 4(a).) Plaintiff also refers generally to Defendants' refusal to report complaints of staff misconduct to the office of internal affairs, a duty he argues is statutorily mandated for prisoners' protection. (Obj. to R & R at 48.)

Plaintiff also vaguely refers to "other procedural and substantive due process violations," and says he has "irrefutable evidence of exhaustion and prevented availability," but says he is "unsure how to plead" them. (Motion to Amend, ¶ 20.) Whatever due process violations the objections may be referring to, it is clear they do not refer to the one possible claim the Court

has identified as exhausted, because Plaintiff was able to summarize that claim easily in a Form 602.

Whether the Court construes this as an objection or a request for leave to amend, it must fail. Objections must be specific, not vague and general, and Plaintiff has not shown he can successfully amend to add the claims he wishes to bring. If anything, his Motion to Amend suggests the amendment would be insufficient because, even now, Plaintiff does not know what shape his amendments would take.

**\*11** These objections are therefore **OVERRULED.**

**6. Objection: Lt. Stratton's Report Was Improperly Withheld**

Plaintiff objects to Lt. Stratton's assertion of privilege in his declaration. (Obj. to R & R at 32, 56.) Apparently he means two things by this: first, that the omission of some information renders Lt. Stratton's declaration suspect, and second, that the investigative reports Lt. Stratton refers to should have been disclosed.

Lt. Stratton's declaration refers to reports from "a full fact-finding review into Inmate Andrews' allegations" of an assault by Sgt. Galban and subsequent retaliation and cover-up. "Privilege" is a misnomer here; Lt. Stratton actually said the reports were confidential, though he cited evidence he found (or looked for and did not find), on which he based his report. Lt. Stratton is correct in stating that reports concerning an investigation of a law enforcement officer's alleged misconduct are treated as confidential. *See, e.g., Williams v. Malfi,* 2008 WL 618895, slip op. at *8 n. 11 (C.D.Cal. Jan. 25, 2008) (discussing procedures used to safeguard confidential law enforcement personnel files before disclosing them to litigants). In any event, it is the evidence underlying the report, and not the report itself that Lt. Stratton mentions.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

To the extent Plaintiff is objecting to Defendants' failure to produce these files during discovery, he does not show he ever sought these reports, and in any case his objection comes much too late.

This objection is therefore **OVERRULED.**

## 7. Objection: Plaintiff Should Be Permitted to Amend to Add Claims and Defendants

The R & R recommended denying Plaintiff leave to amend his complaint a second time to add multiple Defendants. Plaintiff then filed a motion for leave to amend (Dkt. no. 96) ("Motion to Amend"), which the Court construes as part of his objections. He also included this in his objections to the R & R. (Obj. to R & R at 24, 49.)

Plaintiff's Motion to Amend is based on claims that he could not properly file the FAC because he was "under distress and fear" and he would now like to add claims he omitted in the FAC. He describes in great detail the emotional turmoil he suffered when, in connection with a transfer, his legal materials were lost. (*See* Decl. in Supp. of Motion to Amend, ¶ 5.) He mentions loss of his legal materials as a factor in his failing to file as good an amended complaint as he had hoped to. Then, unexpectedly, his materials turned up before the Court adopted the first report and recommendation in its Dismissal Order. (*Id.*, ¶ 7.) For some reason, however, Plaintiff claims this was no real help to him, and merely caused him additional stress and delay. (*Id.*, ¶ 9.)

Plaintiff also discusses the Dismissal Order, which the Court initially issued, then withdrew and modified. He says the issuance of the modified order caused him additional turmoil and distress because, he claims, the modified order "completely changed its previous determinations [and] I was required to start completely over." (*Id.*, ¶ 8.)

**\*12** With regard to the Court's order, this is completely untrue. Plaintiff's claimed turmoil, fear, and distress is either exaggerated or else a gross overreaction. The second, corrected Dismissal Order was issued a mere ten days after the first. It dismissed more claims than the first did, and left unaltered the Court's dismissal of Plaintiff's due process and equal protection claims. Therefore, it is difficult to see how Plaintiff lost very much of his work, if he lost any at all. A reasonable response would have been to leave the initially undismissed claims alone and work on the dismissed ones. When the second order replaced the first, Plaintiff would have realized he had more work than he originally thought, but he would not have had to throw his work out entirely. Even assuming Plaintiff worked assiduously in those ten days, the emotional stress of losing the benefit of some of that work would not reasonably cause emotional disability as Plaintiff now claims it did.

If Plaintiff needed more time to amend, he could have sought it, as evidenced by the fact that his unopposed motion for an extension of time in which to file his FAC was granted. If he filed the FAC too hastily and made errors, he could have sought leave to correct them in light of the Court's order granting him more time in which to amend. Plaintiff identifies no adequate reason to treat the original complaint and FAC as trial runs and allow him to amend again.

In the FAC, Plaintiff attempts to add Defendants, accusing them of being complicit in some kind of conspiracy against him to manipulate cell assignments to cause him harm. (FAC at 55.) He also seeks to add officials whom he accuses of retaliating against him by transferring him to Pelican Bay State Prison. (FAC at 56.) He mentions these claims in his objections to the R & Rs as well. (Obj. to R & R at 24, 49.) All these proposed claims are unexhausted, so granting leave to add them would be futile.

These objections are therefore **OVERRULED.**

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

**V. Defendants' Objections**

Defendants object to the R & R's recommendation that the FAC be dismissed because Plaintiff has not exhausted administrative remedies, rather than for failure to state a claim, and that Plaintiff not be charged with a strike.

As provided in 28 U.S.C. § 1915(g),

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Here, the FAC is being dismissed without leave to amend for failure to exhaust administrative remedies, not on the grounds that it is frivolous, or malicious, or fails to state a claim.

**\*13** Defendants have not cited any authority, however, nor is the Court aware of any, requiring the Court to first reach the issue of whether a complaint states a claim before reaching the exhaustion question, when the same motion urges dismissal on both grounds. *See, e.g., O'Neal v. Price,* 531 F.3d 1146, 1154 n. 9 (9th Cir.2008) (citing with approval the observation of *Tafari v. Hues,* 473 F.3d 440, 444 (2d Cir.2007) that an appeal may be dismissed as premature even though it later proves to be frivolous).

The Ninth Circuit has apparently not addressed the issue of whether dismissal for failure to exhaust administrative remedies counts as a strike under § 1915(g), although a number of other circuits have. *See Daniels v. Woodford,* 2008 WL 2079010, slip op. at \*5 (C.D.Cal., May 13, 2008) (citing cases). *Compare*

*also Kalinowski v. Bond,* 358 F.3d 978, 979 (7th Cir.2004) (holding dismissal for failure to exhaust constitutes strike under § 1915(g)); *Steele v. Federal Bureau of Prisons,* 355 F.3d 1204, 1213 (10th Cir.2003) (same); *Rivera v. Allin,* 144 F.3d 719, 731 (11th Cir.1998) (same); and *Patton v. Jefferson Correctional Ctr.,* 136 F.3d 458, 460 (5th Cir.1998) (same) *with Owens v. Isaac,* 487 F.3d 561, 563 (8th Cir.2007) (holding dismissal for failure to exhaust does not count as a strike); *Green v. Young,* 454 F.3d 405, 406 (4th Cir.2006) (same); *Snider v. Melindez,* 199 F.3d 108, 115 (2nd Cir.1999) (same).

The Ninth Circuit's favorable citation of *Snider* and its progeny *Tafari* in *O'Neal* at 1154 n. 9 for a related point, together with the court's reasoning in *Daniels* persuade the Court dismissal for failure to exhaust should not be counted as a strike under § 1915(g).

Defendants' objections are therefore **OVERRULED.** Bearing in mind future rulings may clarify the law on this point, however, neither Defendants nor any other parties are barred from seeking to have this dismissal counted as a strike for § 1915(g) purposes as appropriate at a later time.

**VI. Conclusion and Order**

For the reasons set forth above, the Court **ADOPTS** the R & R, with the additional explanations set forth above. Plaintiff's request for judicial notice of 15 Cal Code Regs. § 3401.5 is **GRANTED.** All claims against Defendants for money damages are **DISMISSED WITH PREJUDICE.** The Court also **REAFFIRMS** its previous dismissal of all claims against the CDCR. In all other respects the FAC is hereby **DISMISSED WITHOUT PREJUDICE** but **WITHOUT LEAVE TO AMEND,** for failure to exhaust administrative remedies. Plaintiff's request for leave to add claims and Defendants is **DENIED.** Defendants' request that Plaintiff be charged with a strike under § 1915(g) is **DENIED WITHOUT PREJUDICE.**

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

**IT IS SO ORDERED.**

DAVID RAYMOND ANDREWS, Plaintiff,

v.

M.C. WHITMAN, Corrections Counselor; G.J. JANDA, Chief Deputy Warden; M.E. BOURLAND, Chief Deputy Warden; T. OCHOA, Chief Deputy Warden; C. BUTLER, Captain; W.C. ROBERTS, Captain; F. RUTLEDGE, Sergeant; CALIFORNIA DEPARTMENT OF CORRECTIONS, a public entity; ET ALIA UNIDENTIFIED DEFENDANTS, Defendants.

**REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

NITA L. STORMES, United States Magistrate Judge.

**\*14** David Raymond Andrews (Plaintiff), a California prisoner proceeding pro se, filed an initial complaint under 42 U.S.C. sections 1983 and 1985 on November 3, 2006. The Court dismissed the complaint without prejudice and granted Plaintiff leave to amend. Plaintiff filed a first amended complaint (FAC) against officials at Calipatria State Prison. He alleges that defendants California Department of Corrections and Rehabilitation (CDCR), T. Ochoa, M. Whitman, C. Butler, S. Rutledge III, G. Janda and W.C. Roberts (Defendants) violated his rights to due process, equal protection, petition the court, and to be free from cruel and unusual punishment. FAC at 5.

Defendants filed a motion to dismiss the FAC on these bases: (1) Plaintiff failed to exhaust the required administrative remedies under the Prison Litigation Reform Act (PLRA); (2) the FAC fails to state a claim against any Defendant; and (3) Defendants are entitled to qualified immunity. Defendants also renewed their request that Plaintiff be charged a "strike" for filing a frivolous and malicious lawsuit, pursuant to 28 U.S.C.

§ 1915(g). Plaintiff opposes.

This Court has reviewed all the pleadings and filings in this case, and **RECOMMENDS** that Defendants' motion be **GRANTED.**

*BACKGROUND*
*The Original Complaint.*

Plaintiff's original complaint centered on his allegations that on September 15, 2005, Sergeant Galban sexually abused and threatened Plaintiff in housing unit B–5. Compl. at 7. Over the next several days Plaintiff was shuttled between administrative segregation and the general population due to his threat to the safety and security of the institution. Compl. at 7–8, 15. Plaintiff detailed his thwarted attempts to file an administrative complaint regarding Sergeant Galban's conduct. He alleged due process, equal protection, eighth amendment and first amendment retaliation claims against Defendants.

*Order Dismissing the Original Complaint.*

The Court issued an order on March 28, 2008 that dismissed all the original claims in the complaint, including some with prejudice. [Doc. No. 70.] It dismissed Plaintiff's due process, equal protection and first amendment retaliation claims and one eighth amendment claim without prejudice. The Court dismissed with prejudice the remaining eighth amendment claims involving Defendants' transfer of Plaintiff back into the general population in 2006.

Regarding exhaustion, the Court found that Plaintiff could not have exhausted claims relating to Defendants' transfer of Plaintiff back to the general prison population in 2006. The Court found that exhaustion would have been impossible because Plaintiff alleged he filed an administrative complaint on October 18, 2005, before the claims based on acts in 2006 could have arisen. Mar. 28 Order, p. 7. The Court determined that because Plaintiff could not now exhaust those 2006 claims, he could not have leave to

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

amend them for this suit. *Id.*

*15 The Court also noted that Plaintiff did not state any claims against defendant Bourland because Bourland was never served in the action. Mar. 28 Order, p. 8. It also dismissed the CDCR as a Defendant on sovereign immunity grounds. *Id.*

Finally, the Court denied without prejudice Defendants' motion to dismiss for failure to exhaust because Defendants had not met their burden of proving non-exhaustion. Mar. 28 Order, p. 9.

*Plaintiff's First Amended Complaint.*

In general, Plaintiff realleges in the FAC his over-arching claim that Calipatria prison staff prevented him from filing a complaint against Sergeant Galban in 2005 for sexual misconduct, and for a conspiracy to organize stabbings and assaults of selected prisoners by inmates. FAC at 7. He claims Defendants engaged in cruel and unusual punishment by first placing him in Calipatria's administrative segregation and then eventually placing him in the Security Housing Unit (SHU) at Pelican Bay State Prison. Plaintiff alleges that every administrative act—including issuing and hearing various rules violation reports regarding Plaintiff's failure to abide by prison policies and procedures—was done in retaliation for his pursuing a complaint against Sergeant Galban. His allegations span events occurring from 2005 to 2008.

Plaintiff attaches several exhibits to the FAC. Those exhibits show, among other things, results of investigations into Plaintiff's complaints, rules violation reports, reasons for disciplinary decisions and placement notices.

Here, the Court assumes the following alleged facts in the FAC as true. [FN1]

FN1. In a Rule 12(b)(6) motion to dismiss, the court must accept as true all material allegations in the complaint, and the reasonable inferences drawn from them, in the light most favorable to the plaintiff. *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir.2002).

**1. Events Before October 18, 2005.**

Plaintiff was assaulted, stabbed and hospitalized in August 2003. FAC at 13. But Plaintiff does not identify who stabbed or assaulted him, nor implicates any Defendants in the matter. *Id.* As with the original complaint, Plaintiff does not appear to sue over this incident.

In the days following the incident with Sergeant Galban on September 15, 2005, various prison officials—including some not named as defendants—refused to process Plaintiff's complaint against Sergeant Galban. FAC at 16–20. Plaintiff requested a full Institution Classification Committee (ICC) hearing to discuss the incident. FAC at 16. He complains of correctional officers crafting false rules violation reports during this period. *See, e.g.,* FAC at 21. Also during this time Plaintiff was placed in the "hole" (administrative segregation). FAC at 17.

Plaintiff was transferred back to the general population on September 29, 2005, where he was ridiculed and threatened. FAC at 22–25. The threats and retaliation caused him permanent psychological trauma and suffering, mental stress disorder and a nervous breakdown. FAC at 23.

On September 30, 2005, defendant Roberts refused to take Plaintiff's statement regarding his complaint against Sergeant Galban. FAC at 24. Plaintiff appeared before the ICC again on October 6, 2005. FAC at 25. The ICC was hostile toward Plaintiff and refused to document or acknowledge the circumstances of his complaint. FAC at 25. That day, defendant Whitman directed the drafting of a false rules violation report that falsely accused Plaintiff of re-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

fusing to leave administrative segregation on September 29, 2005. FAC at 26. The rules violation report was executed and delivered to Plaintiff on October 7, 2005. FAC at 26.

**\*16** On October 11, 2005, Plaintiff obtained a 602 administrative grievance form from the prison library. FAC at 26.

Plaintiff received his fourth placement notice for administrative segregation on October 11, 2005. FAC at 26. He said defendant Whitman wrote the notice in retaliation for Plaintiff obtaining forms 1858 and 602 from the law library earlier that day. FAC at 26.

At another ICC hearing on October 14, 2005, Plaintiff was unduly accused of several rule violations and threatened with being deemed a program failure. FAC at 27.

**2. Submission of Complaint.**
On October 18, 2005, defendant Rutledge came to investigate Plaintiff's complaint against Sergeant Galban. FAC at 26–27. Plaintiff says he gave Rutledge a handwritten complaint that day. FAC at 27. Plaintiff never specifies whether the complaint was on the 602 form he had acquired. The complaint was never processed. FAC at 28–29.

Many of Plaintiff's allegations throughout the FAC allege that Defendants thwarted his attempts to follow up with or prosecute his written complaint.

**3. Events After October 18, 2005.**
Certain prison officials, including some not named as defendants, altered some of Plaintiff's rules violation reports. FAC at 21–22. Plaintiff did not learn of these acts until November 3, 2005. FAC at 21.

Plaintiff appeared before the ICC on December 8, 2005. He told them that any reports of rule violations were written in retaliation for inquiring about the

status of the complaint he gave to defendant Rutledge on October 18, 2005. FAC at 29–30. Plaintiff's complaint regarding Sergeant Galban was ignored and he was placed one step closer to being "deemed a program failure." FAC at 30.

On December 14, 2005, Lieutenant Stratton told Plaintiff he was investigating the complaint against Sergeant Galban, and that he would send Plaintiff a copy of the results of his investigation. FAC at 30–31. Plaintiff appeared before the ICC on December 15, 2005. FAC at 31. Defendant Bourland "pretended" to read from a piece of paper that allegedly reported the results of Stratton's investigation and the finding of no misconduct. FAC at 31. Plaintiff saw the paper Bourland was referring to and thought it was actually a blank sheet. FAC at 31. Plaintiff eventually saw the results of Stratton's investigation and believes the papers are false and purposefully misrepresented the actual circumstances. FAC at 38.

Plaintiff alleges that after the ICC hearing Defendants transferred him "to Facility C in order to provide Sergeant Galban with easier access to Plaintiff." FAC at 32, 34. The transfer, however, apparently did not occur. On December 28, 2005 Plaintiff "was issued an administrative segregation unit placement notice despite never having left." FAC at 32, 34.

Within four days of the December 15 hearing, Plaintiff submitted additional grievances—including one mailed to the Director of Corrections in Sacramento—complaining about (1) the conspiracy to set Plaintiff up; (2) Sergeant Galban's sexual misconduct; (3) Defendants' refusal to receive, file or record Plaintiff's complaints; and (4) Defendants' issuance of false rules violations reports. FAC at 33–34.

**\*17** At another ICC hearing on December 29, 2005, Plaintiff was threatened with being placed for two years minimum in the Security Housing Unit (SHU) unless he stopped submitting complaints about

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

Sergeant Galban. FAC at 34. After the hearing, Plaintiff was given a contrived, backdated rules violation report by a non-defendant written in retaliation for his complaints. FAC at 35. Plaintiff was unjustly found guilty of this rules violation report on January 23, 2006. FAC at 37.

In February 2006, in retaliation for his complaint against Galban, Defendants caused guards to send dangerous and aggressive inmates to Plaintiff's cell door so they could terrorize him. FAC at 39. These events emotionally traumatized Plaintiff to the point of insanity. FAC at 40.

On June 12, 2007, a non-defendant correctional officer twisted Plaintiff's arm and threatened him to not file an opposition to Defendants' first motion to dismiss filed in this case or to file complaints against any other correctional officer. FAC at 41. The officer threatened Plaintiff 12 other times over the next month. FAC at 41. Then, in retaliation for filing his opposition to the first motion to dismiss, Plaintiff was transferred to the SHU in Pelican Bay State Prison. FAC at 42.

**4. Conspiracy Allegations.**

Plaintiff alleges each Defendant is a member of the Green Wall prison guard gang and has entered a secret agreement to conspire with the other Defendants to terrorize Plaintiff. FAC at 45–56. He alleges Defendants acted "in a deliberate and calculated campaign of intimidation, threat, collusion, complicity, deceit, false record production." FAC at 46. Specifically, he alleges they organized the production of false records, used inmates to inflict cruel and unusual punishment of terror, intimidation and assault, and—with deliberate indifference to Plaintiff's safety—conspired to injure and/or murder him by using "pencil whipping" techniques and assenting to cell assignments that exposed Plaintiff to substantial risk of injury. FAC at 45–46, 47–51.

**5. Claims Against the CDCR.**

Plaintiff renews his claims against the CDCR. FAC at 9. He alleges the CDCR engages in coverups of interdepartmental practices and retaliated against Plaintiff. FAC at 53–54.

**6. Plaintiff's Injuries.**

Plaintiff alleges—though not in relation to any specific claim—that he suffered physical injury in the form of "permanent impairment of ability, bone fracture permanent disfigurement and continuing physical and emotional pain and suffering." FAC at 57. He claims Defendants' evil motives exacerbated his emotional pain and suffering, which includes "permanent stress disorder, extreme anxiety, panic attacks, uncontrollable physical tremors, intermittent convulsive muscle contractions, hyperventilation and social phobia." FAC at 57–58.

**7. Plaintiff's Attempt to Substitute In Defendants.**

Plaintiff alleges the unidentified Defendants are members of the Green Wall prison gang. FAC at 52. He then tries to amend his complaint to also include these correctional officers as Defendants: Galban, Keener, Reynolds, German, Sanchez, Catlett, Heuy, Imada, Sanders, Malcomb, Colio, Trujillo and Pagaza for being complicit in the conspiracy to manipulate Plaintiff's cell assignments to cause him harm. FAC at 55. Plaintiff does not allege specific actions by these Defendants nor relates them to any specific claim.

**\*18** Plaintiff also attempts to add Deputy Director T. Schwartz and Classification Services Chief E. Arnold for transferring him to the SHU in Pelican Bay State Prison in retaliation for exercising his first amendment rights. FAC at 56.

**8. Prayer for Relief.**

Plaintiff requests this relief: a declaration that Defendants' acts and omissions violated Plaintiff's rights; nominal damages in the amount of $1.00; compensatory damages in the amount of $10,000.00

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

against each Defendant; punitive damages in the amount of $10,000.00 against each Defendant; and costs. FAC at 61. He also seeks a preliminary and permanent injunction ordering Defendants to, essentially, stop fabricating papers and allegations against Plaintiff, stop exposing Plaintiff to dangerous or violent inmates in a non-general population housing unit, refrain from retaliatory actions, expunge any negative entries in Plaintiff's record, and instill a plan where the CDCR itself no longer directly receives complaints against any CDCR employees. FAC at 61–63.

### DISCUSSION

**I. *Eleventh Amendment.***

The Eleventh Amendment prohibits damages actions against state officials acting in their official capacities. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). It does not, however, "bar actions against state officers in their official capacities if the plaintiffs seek only a declaratory judgment or injunctive relief." *Chaloux v. Killeen,* 886 F.2d 247, 252 (9th Cir.1989) (internal quotations omitted). Nor does it bar damages actions against state officials in their personal capacities. *See Hafer v. Melo,* 502 U.S. 21, 31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). The Eleventh Amendment prohibits only damages actions against the "official's office"—actions that are in reality suits against the state itself—rather than against its individuals. *See id.* at 26; *Will,* 491 U.S. at 71; *Stivers v. Pierce,* 71 F.3d 732, 749 (9th Cir.1995).

Here, Plaintiff sued Defendants in their individual and official capacities for both money damages and injunctive and declaratory relief. FAC at 4, 61. Because of the bar on damages actions against individuals acting in their official capacities, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's claims for money damages against Defendants in their official capacities be **GRANTED**.

**II. *Exhaustion of Administrative Remedies.***

**A. The PLRA.**

Exhaustion is a prerequisite to bringing suit under the PLRA. 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Lira v. Herrera,* 427 F.3d 1164, 1169 (9th Cir.2005). In a non-enumerated Rule 12(b) [FN2] motion to dismiss for failure to exhaust administrative remedies, defendants "have the burden of raising and proving exhaustion." *Wyatt v. Terhune,* 315 F.3d 1108, 1119 (9th Cir.2003). Defendant, and not plaintiff, bears the burden of proving the plaintiff had available administrative remedies that he or she did not utilize. *Id.*

> FN2. Unless otherwise noted, all future references to "Rule(s)" reference the Federal Rules of Civil Procedure.

**\*19** To show failure to exhaust, defendants may go outside the pleadings and submit supporting affidavits or declarations. *Id.* The plaintiff, however, must be provided an opportunity to develop a record to refute defendants' prima facie showing of non-exhaustion. *Id.* at 1120 n. 14. In a non-enumerated Rule 12(b) motion to dismiss, the court may look at both parties' submissions outside the pleadings to resolve factual issues regarding exhaustion. *Id.*

The PLRA requires that a plaintiff exhaust only "available" administrative remedies. 42 U.S.C. § 1997(e)(a). For example, if an inmate's appeal is granted at a lower level, the inmate need not appeal because there is nothing left to exhaust. *See Brady v. Attygala,* 196 F.Supp.2d 1016, 1022–23 (C.D.Cal.2002) (finding further exhaustion not required where appeal was granted at the second level); *Gomez v. Winslow,* 177 F.Supp.2d 977, 985 (N.D.Cal.2001) (allowing an inmate to file suit where he had "won" his inmate appeal by receiving a "partial grant" at the second level). Also, refusing to give an inmate grievance forms could raise the inference the

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

prisoner "exhausted" his administrative remedies. *See Mitchell v. Horn,* 318 F.3d 523, 529 (3rd Cir.2003) (reversing a district court's dismissal of a section 1983 case because it did not consider Plaintiff's allegation that prison officials refused to provide him with the grievance forms); *Miller v. Norris,* 247 F.3d 736, 740 (8th Cir.2001) (concluding that any remedy prison officials prevent a prisoner from utilizing is not an "available" remedy as section 1997(e)(a) defines that term).

### B. The Exhaustion Process.

"Any inmate ... may appeal any departmental decision, action, condition, or policy perceived by those individuals as adversely affecting their welfare." Cal.Code Regs. tit. 15 § 3084 .1(a). An inmate must complete these steps to exhaust at the administrative level: (1) attempt to informally resolve the problem with the staff member involved, *Id.* at § 3084.5(a); (2) submit a grievance on the CDCR inmate 602 form, *Id.* at § 3084.5(b); (3) appeal to the institution head or his/her designee for a second level of review, *Id.* at § 3084.5(c); and (4) appeal to the Director of CDCR or his/her designee for a third and final level of review, Cal. Dept. of Corr. Operations Manual § 54100.11; *Nichols v. Logan,* 355 F.Supp.2d 1155, 1161 (S.D.Cal.2004). Prisoners must submit their appeal within 15 working days of the event or lower decision being appealed. Cal.Code Regs. tit. 15 § 3084.6(c).

To properly exhaust, a prisoner must complete the administrative review process according to the applicable rules, including meeting deadlines and complying with other critical procedural rules. *Woodford v. Ngo,* 548 U.S. 81, 90, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). If a prisoner concedes that he or she did not exhaust, that concession is a valid ground for dismissal so long as no exception to exhaustion applies. *Wyatt,* 315 F.3d at 1120.

### C. Plaintiff's Attempt to Exhaust.

**\*20** In the original complaint, Plaintiff alleged he submitted a complaint regarding Sergeant Galban's

conduct but that the complaint was never processed. In their first motion to dismiss, Defendants presented evidence that Plaintiff did not submit a 602 form regarding Sergeant Galban's alleged misconduct or Defendants' subsequent alleged misconduct. *See* Edwards Supp'l Decl. ¶ 7, Grannis Supp'l Decl. ¶¶ 4–5. But Defendants left unexplained other issues regarding exhaustion. First, Defendants did not refute the allegation they thwarted Plaintiff's efforts to file his administrative complaint. Second, they did not explain how—if no complaints were received—they learned of Plaintiff's complaint against Sergeant Galban and sent Lieutenant Stratton to investigate it. Mar. 28 Order, p. 8, ll.24–26. The Court denied without prejudice Defendants' motion to dismiss for failure to exhaust because Defendants did not meet their burden of showing non-exhaustion. Mar. 28 Order, pp. 8–10.

Now, the remaining questions regarding exhaustion are: (1) whether the complaint Lieutenant Stratton investigated satisfied the administrative requirements against the Defendants; and (2) whether Defendants made the required administrative remedies unavailable to Plaintiff.

### 1. *Lieutenant Stratton's Investigation of Plaintiff's Complaint.*

Defendants submit new evidence in this motion to dismiss the FAC to rebut Plaintiff's assertion that he submitted a written complaint regarding Sergeant Galban's conduct. Most relevant, they bring forth the Declaration of Lieutenant Stratton, who explains he was investigating a verbal—and not a written—complaint regarding the alleged incident with Sergeant Galban. On December 14, 2005, Lieutenant Stratton, at the direction of Captain Roberts, interviewed Plaintiff regarding his verbal allegations about the incident with Sergeant Galban. Stratton Decl. ¶ 3. At the time, no paper documentation supported Plaintiff's claims. *Id.* During the interview Stratton advised Plaintiff of the CDCR appeals process and how to properly use the 602 form. *Id.* After the interview, Stratton recommended a single-cell placement and a

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

mental health review for Plaintiff. Stratton Decl. ¶ 4; *see* FAC attachment pp. 25–26.

Next, Plaintiff sent letters to the CDCR Director on December 15 and December 18, 2005 claiming he submitted a citizen's complaint to Sergeant Rutledge in October 2005. Stratton Decl. ¶ 5, Ex. C. The CDCR Director re-directed the letters to Calipatria's warden, who then tasked Stratton with conducting a fact-finding review into Plaintiff's complaints. Stratton Decl. ¶¶ 5–6, Ex. C. While Stratton did not disclose the full report of that investigation to this Court because of its confidential nature, he shares these specific results from his fact-finding review:

> Andrews did not file a CDCR Form 602 related to his allegations against Sergeant Galvan, or against other staff for their alleged refusal to process his complaints of staff misconduct. I know this for three reasons. First, my confidential reports do not contain any notation indicating an Administrative Appeal Log Number associated with the underlying allegations. It is my practice and custom to record the corresponding Administrative Appeal Log Number for each administrative appeal I am assigned to investigate. The lack of an Administrative Appeal Log Number in my confidential reports indicates that Inmate Andrews did not file a CDCR Form 602 to advance these allegations. Second, Inmate Andrews' own hand-written documentation, in his letter to the Director of CDCR, dated September 15, 2005, shows that he alleges he submitted a citizen's complaint, reference in the California Code of Regulations, Title 15, section 3391(d), to Sergeant Rutledge, rather than a CDCR Form 602. Third, as part of my fact-finding review, I contacted H. Fasolo, then the Appeals Coordinator at Calipatria, who informed me that although Inmate Andrews had previously made use of the administrative appeals process, he had not filed any administrative appeal regarding his allegations against Sergeant Galvan or other prison officials related to the alleged misconduct.

**\*21** Stratton Decl. ¶ 6.

Plaintiff rebuts Stratton's assertions. While he acknowledges that Stratton interviewed him on December 14, Plaintiff says the interview occurred based on previously-submitted written, and not verbal, complaints. Andrews Decl., p. 2. The next day, Plaintiff appeared before the ICC and learned the investigation of his complaints was completed on December 14. *Id.*

Defendants submit two other declarations in further support of their argument that Stratton investigated a verbal, non–602 form complaint. First, Sergeant Rutledge does not ever remember Plaintiff or any inmate presenting him with a 602 form, or any other written complaint, alleging that another sergeant committed sexual assault. Rutledge Decl. ¶ 2. If Rutledge had received a written complaint, he would have forwarded it to his lieutenant or captain for investigation. Rutledge Decl. ¶ 3. Further, it is not unusual for prison officials to investigate allegations of staff misconduct even when those complaints are not submitted on the required 602 form. Supp. Grannis Decl. ¶ 6. A complaint not presented on the required form may be investigated where they allege serious violations of prison procedures and regulations and contain sufficient detail to be investigated. *Id.*

Investigating a non–602 form complaint does not supplant the required administrative exhaustion process. *Id.* First, the CDCR Department Operations Manual § 54100.25.1 requires inmates to use the 602 form even when allegations of staff misconduct are being separately investigated. *Id.* Second, inmates are routinely advised during the investigation that they have the right to, and should, pursue the administrative grievance process so that they can properly advance their claims. *Id.* Finally, staff complaints investigated outside the administrative appeals process rarely go beyond the institution where they arise. *Id.*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

The Court finds that Defendants have presented sufficient evidence to explain how Lieutenant Stratton came to investigate Plaintiff's complaint without Plaintiff's submission of a 602 form. The newly-submitted Stratton Declaration complements the initial Declarations of Grannis, the Chief of the Inmate Appeals Branch, and Edwards, the Appeals Coordinator at Calipatria. These declarations revealed (1) Plaintiff did not submit a Third Level inmate appeal to the CDCR office against any of the defendants in this lawsuit, or against any prison officer or official concerning any staff conspiracy to cover up staff misconduct (Grannis Decl. ¶¶ 7, 8, 10); and (2) after a search in the Inmate/Parolee Appeals Tracking System for all appeals Plaintiff filed from November 1, 2002 to the date of the initial complaint, no appeal was submitted against defendants Whitman, Janda, Ochoa, Butler or Rutledge, or against any prison officer or official concerning any staff conspiracy to cover up staff misconduct (Edwards Decl. ¶¶ 4, 5). Further, in a supplemental declaration, Edwards explains the subjects of the nine appeals that Plaintiff filed at the second level of formal appeal, describes Plaintiff's letter to the Office of the Director of the CDCR relating to a citizen's complaint Plaintiff allegedly filed against Calipatria prison staff,[FN3] and affirms Defendants did not locate any appeals alleging that Sergeant Galban sexually assaulted Plaintiff or otherwise acted inappropriately toward him. Edwards Supp. Decl. ¶¶ 4–7.

> FN3. Only non-inmates may file a citizen's complaint. *See* 15 Cal.Code Regs. § 3391(b), (c). Therefore, Plaintiff's allegation that he filed a citizen's complaint could not in any way be construed to supplant the required administrative grievance process that employs the 602 form.

**\*22** The totality of the new plus the previously-submitted evidence provided together in this renewed motion to dismiss leads this Court to conclude that Plaintiff did not submit the required 602 form as the administrative grievance process requires. Therefore, Plaintiff could not have exhausted any of the claims in this lawsuit, unless exhaustion was made unavailable to Plaintiff.

**2. *Whether Defendants Made Administrative Remedies Unavailable.***

Plaintiff alleges that on October 18, 2005, he gave Sergeant Rutledge a written complaint that Defendants never processed. At issue is whether Defendants thwarted Plaintiff's efforts to file that complaint.

Even if the Court assumes that Plaintiff alleges the complaint he submitted was on a 602 form, Defendants presented evidence that they never received it. Sergeant Rutledge explained that he never received a complaint from Plaintiff regarding a prison official's sexual misconduct. Rutledge Decl. ¶¶ 2–3. Even if Plaintiff had submitted a 602 form complaint to Rutledge, by at least December 14, 2005 Plaintiff was on notice the complaint was never received or processed. First, he never received a 602 form in return informing him about proceeding to the next level. Second, Lieutenant Stratton told Plaintiff on December 14 there was no written record of his complaint and advised him to comply with the administrative grievance process and how to properly use the 602 form. Stratton ¶ 3. Third, Plaintiff was aware of the administrative grievance process during this relevant time, as he submitted three other administrative appeals from November to December 2005. Edwards Supp. Decl. ¶¶ 4(b),(c),(d).

Finally, Plaintiff appears to claim that one of the administrative appeals he advanced through all three formal levels of review satisfies the exhaustion requirement here. *See* Director's Level Decision, FAC attachment p. 2. Plaintiff's administrative complaint for Log No. CAL 06–01961 related to Plaintiff being written-up for a rules violation for his refusal to accept a cellmate. *Id.* While in that appeal Plaintiff complained about staff manipulating Plaintiff's cell

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

placements so that he would be with inmates who would attack him at a staff member's direction, that allegation alone is not sufficiently tied to Plaintiff's over-arching claim at the root of the FAC—that Sergeant Galban sexually assaulted Plaintiff in 2005 and the Calipatria prison staff prevented him from filing a complaint regarding that sexual misconduct.

Though the complaint about staff manipulation may relate to some of Plaintiff's conspiracy claims in the FAC, those FAC claims appear to tie together to a conspiracy against Plaintiff *in retaliation* for his filing, or attempting to file, a complaint against Sergeant Galban. But in the exhausted appeal, Plaintiff did not allege any sexual assault or attempts to thwart Plaintiff's efforts to file a complaint regarding Sergeant Galban. Neither did Plaintiff mention a conspiracy. Finally, Plaintiff did not receive a final decision regarding this appeal until November 30, 2006. Grannis Supp. Decl. ¶ 4(a). Plaintiff had already filed this lawsuit on November 3, 2006. Therefore, even if the administrative appeal could be construed as exhausting Plaintiff's claims—which is not the case—Plaintiff brought the lawsuit prior to exhausting that claim.

**\*23** For the foregoing reasons, this Court **RECOMMENDS** that Defendants' motion to dismiss based on exhausted be **GRANTED.**

### III. *Rule 12(b)(6)* Motion.
Defendants seek to dismiss Plaintiff's FAC for failure to state a claim on these grounds: (1) the first amendment retaliation claims are barred by the favorable termination doctrine; (2) Plaintiff fails to allege a lack of probable cause in his retaliation claim; (3) Plaintiff does not allege any eighth amendment cruel and unusual punishment claims; and (4) Plaintiff does not state a fourteenth amendment equal protection claim.

### A. Legal Standard.
A *Rule 12(b)(6)* motion to dismiss tests the legal

sufficiency of the plaintiff's claims. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001). The Court must assume all material factual allegations of the complaint as true and all reasonable inferences to be drawn from them. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 338 (9th Cir.1996). Dismissal is proper only where there are insufficient facts to support a cognizable legal theory. *Navarro,* 250 F.3d at 732 (citation omitted).

### B. First Amendment Retaliation Claim.
Plaintiff alleges Defendants retaliated against him for attempting to prosecute his complaint regarding the alleged incident with Sergeant Galban. He alleges Defendants manufactured false disciplinary charges and rules violation reports against him, which led to Plaintiff's confinement in administrative segregation. In the initial Report and Recommendation, this Court recommended finding that Plaintiff adequately stated a first amendment retaliation claim. Defendants objected to this finding, arguing that Plaintiff failed to show his disciplinary convictions were invalid, thereby not fulfilling the requirements of the favorable determination doctrine under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). They also objected that Plaintiff failed to allege the absence of probable cause under *Hartman v. Moore,* 547 U.S. 250, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006). The district judge sustained these objections and dismissed Plaintiff's first amendment claims with leave to amend. Mar. 28 Order, p. 6. The Court specifically directed Plaintiff to respond to these two objections. *Id.*

### 1. *Favorable Termination Doctrine.*
The "favorable termination" requirement applies to civil rights actions filed against state actors under 42 U.S.C. § 1983. *Heck,* 512 U.S. at 483–484. The doctrine bars a plaintiff from suing, under any constitutional theory, "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless the plaintiff first

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

"proves that the conviction or sentence has been re-versed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 487. The favorable determination doctrine may also apply to an inmate's claims that challenge a disciplinary proceeding that has affected the fact or duration of the inmate's confinement. *Edwards v. Balisok,* 520 U.S. 641, 646–647, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). But insofar as the disciplinary action affects only a condition of confinement—which includes any deprivation that does not affect the fact or duration of a sentence—the favorable termination doctrine does apply. *Ramirez v. Galaza,* 334 F.3d 850, 856 (9th Cir.2003) (finding the favorable termination doctrine did not apply to a challenge to a prison disciplinary sanction of administrative segregation).

**\*24** Here, Plaintiff alleges he suffered prison disciplinary convictions in retaliation for attempting to exercise a constitutional right. As a result of these convictions, Defendants imposed the punishment of sending Plaintiff to administrative segregation. In the FAC Plaintiff never alleges that the fact or duration of his sentence was affected. Defendants generally argue that the rules violation convictions "resulted in forfeiture of behavioral credits and thus impacted his term of incarceration." Reply, p. 4, ll.26–28. Defendants, however, do not cite to any specific reports that show Plaintiff lost good-time credits. And upon reviewing the attachments to Plaintiff's complaint, this Court has not found an express forfeiture of behavioral credits. *See, e.g.,* FAC Attachment p. 4 (based on Plaintiff's continued refusal to share a cell with another inmate the ICC recommended Plaintiff be sent to the SHU); FAC Attachment p. 12 (stating that as a result of being placed in administrative segregation Plaintiff's credit earning was "subject to change").

Plaintiff has not plead, Defendants have not pointed out, and the Court has not found, an express revocation or impact on the length of Plaintiff's sentence due to his placement in administrative segregation. Because Plaintiff alleges only a deprivation of the conditions of his confinement, as opposed to the duration of his sentence, the favorable termination doctrine does not apply.

**2. Absence of Probable Cause.**

In *Hartman,* the Supreme Court held that, under either a *Bivens* or a section 1983 action based on a malicious or wrongful criminal prosecution, the plaintiff must plead and show the absence of probable cause for prosecuting the underlying criminal charges. *Hartman,* 547 U.S. at 252, 263–266. Specifically, the plaintiff must show the absence of probable cause against criminal investigators for inducing a prosecution in retaliation for protected speech. *Id.* This pleading element applies only to "a particular subcategory of retaliation claims: retaliatory prosecution claims." *Skoog v. County of Clackamas,* 469 F.3d 1221, 1233 (9th Cir.2006).

Defendants did not present, and this Court has not found, a Ninth Circuit case that applies the lack of probable cause element to a retaliation claim in the prison disciplinary context. Further, this Court finds that imposing such a requirement in the prison context would probably be futile. First, Plaintiff already must prove that he suffered an "adverse action"—here, the rules violation reports—that did not have a "legitimate correctional purpose" or advance any "legitimate correctional purpose." *Rhodes v. Robinson,* 408 F.3d 559, 567–568 (9th Cir.2005). In other words, Plaintiff must prove that Defendants launched their disciplinary proceedings to punish him for exercising his first amendment right to file a complaint, that the proceedings had a "chilling effect" on him, and that Defendants had no other legitimate purpose or goal in conducting those proceedings, so that their only purpose was to squelch his free speech. In practical terms, satisfying these elements under *Rhodes* essentially shows there was no probable cause to launch the disciplinary proceedings.[FN4]

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

FN4. This Court has already addressed Plaintiff's satisfying the pleading requirements for a first amendment retaliation claim under *Rhodes. See* Aug. 16, 2007 Rep. & Rec.

**\*25** Based on the lack of authority before it, this Court declines to impose the additional element of pleading lack of probable cause. The requirement under *Hartman* applies to a particular subcategory of criminal prosecutorial retaliation claims based on malicious or wrongful criminal prosecutions. This Court will not recommend applying that requirement to a general retaliation claim in the prison context.

In sum, the FAC adequately addresses Defendants' two objections. First, Plaintiff never pleads that the discipline imposed affected the length of his sentence, so the favorable termination doctrine does not apply. Second, Plaintiff does not allege that the prison disciplinary proceedings were, by nature, malicious or wrongful criminal prosecutions, and this Court has not aware of any relevant authority so stating. Therefore, if the district court rejects this Court's recommendation to grant Defendants' motion to dismiss based on exhaustion, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's first amendment retaliation claims be **DENIED.**

**C. Eighth Amendment Claims.**

Judge Burns' Order addressing the eighth amendment claims in the initial complaint broke down the claims between (1) those based on Defendants' transfer of Plaintiff back to the general population in 2006; (2) conspiracy claims against the named and Doe Defendants; and (3) Defendants' failure to protect Plaintiff from further attacks.

**1. *Claim Previously Dismissed with Prejudice.***

This Court has already dismissed, with prejudice, Plaintiff's eighth amendment claims based on Defendants transferring Plaintiff back to the general population in 2006. Mar. 28 Order at 10. Plaintiff could not have exhausted these claims because he alleges the acts took place long after he submitted a complaint. Thus, these claims could not have been exhausted. This Court **RECOMMENDS** that the district court **AFFIRM** its prior order that Plaintiff's eighth amendment claims based on Defendants transferring Plaintiff back to the general population in 2006 are **DISMISSED with prejudice.**

**2. *Conspiracy Claim.***

A plaintiff must plead conspiracy claims with enough specificity to put defendants on notice of the claims against them. *Burns v. County of King,* 883 F.2d 819, 821 (9th Cir.1989). Regarding the conspiracy claims in the initial complaint, Judge Burns found that Plaintiff did not allege any specific facts other than the existence of the Green Wall gang and Officer Galban's assault on him. Mar. 28 Order, p. 4. He did not allege who conspired to attack him, how the conspiracy resulted in Officer Galban's attack, or that Officer Galban was a member of the gang. *Id.* Judge Burns found that no Defendant or potential Defendant had been given adequate notice of the conspiracy claims against them and dismissed those claims without prejudice. *Id.* at 4–5.

In the FAC, Plaintiff alleges that each Defendant is a member of the Green Wall prison guard gang and has entered a secret agreement to conspire with the other Defendants to terrorize Plaintiff. FAC at 45–56. More specifically, he alleges they organized the production of false records, used inmates to inflict cruel and unusual punishment of terror, intimidation and assault, and—with deliberate indifference to Plaintiff's safety—conspired to injure and/or murder him by using "pencil whipping" techniques and assenting to cell assignments that exposed Plaintiff to substantial risk of injury. FAC at 45–46, 47–51. Plaintiff attaches to the FAC the rules violation and investigatory reports that he alleges are false. Plaintiff does not, however, provide any new details of any alleged conspiracy that resulted in Officer Galban's attack.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
(Cite as: 2009 WL 857604 (S.D.Cal.))

**\*26** This Court finds that Plaintiff has not provided enough new details to sufficiently plead a conspiracy by Defendants to violate Plaintiff's eighth amendment rights. He does not allege who specifically conspired to attack him or how the conspiracy resulted in Sergeant Galban's alleged assault. He does not tie Sergeant Galban to the conspiracy. He does not allege how the production of false records and inmate intimidation resulted in him suffering from cruel and unusual punishment. While he says he suffered physical injury, he does not tie that injury to any specific claim or incident. FAC at 57. And through the FAC, the only injury he says he suffered was in 2003, related to an alleged stabbing by inmate Smith. Plaintiff, however, does not implicate any Defendants in the matter and does not appear to sue over this incident.

Defendants, therefore, are not on notice of any events they participated in that caused any physical injuries to Plaintiff. Therefore, if the district court declines to dismiss this action based on exhaustion, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's eighth amendment claims based on a conspiracy be **GRANTED** and the claims be **DISMISSED with prejudice.**

**3.** *Failure to Protect Claim.*

The district judge found that Plaintiff did not adequately allege an eighth amendment claim for Defendants' failure to protect Plaintiff from further attacks because Plaintiff did not allege any facts showing there was any substantial risk after the attack by Galban, that Plaintiff was attacked again or otherwise suffered other harm, or that Defendants actually inferred Plaintiff was at further risk. Mar. 28 Order, p. 5. The Court gave Plaintiff leave to amend this claim. *Id.*

A plaintiff may plead an eighth amendment claim for cruel and unusual punishment by alleging failure to take reasonable measures to protect an inmate from serious risk to health and safety. *See, e.g., Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A prisoner claiming such an eighth amendment violation must show: (1) the deprivation he suffered was "objectively, sufficiently serious" (objective element); and (2) the defendant possessed a sufficiently culpable state of mind (subjective element). *Id.* at 834. Where the claim is predicated upon the failure to protect, the deprivation is deemed to be sufficiently serious if there was a substantial risk that the prisoner would suffer serious harm. *Id.* Regarding the subjective element, a prison official can only be held liable if he (1) is aware of the facts from which he could infer a substantial risk of serious harm, and (2) actually drew that inference. *Id.* at 837.

Plaintiff first alleges he was transferred back to the general population on September 29, 2005, where he was ridiculed and threatened. FAC at 22–25. The attachments to the FAC, however, contradict this allegation.[FN5] Further, Plaintiff alleges the threats and retaliation due to this move caused him permanent psychological trauma and suffering, mental stress disorder and a nervous breakdown. FAC at 23. Even if the Court assumes the move back to the general population to be true, this general allegation of harm does not amount to the required showing that Plaintiff suffered a deprivation that was objectively, sufficiently serious or that Defendants possessed a culpable state of mind when they transferred Plaintiff back to the general population.

FN5. A report from the Departmental Review Board notes that it was not until September 19, 2006 that Plaintiff was released from administrative segregation, and that he refused to leave it. FAC Attachment, pp. 4, 5.

**\*27** On his second attempt at this eighth amendment claim, Plaintiff does not adequately allege he suffered any harm that would rise to a deprivation of a constitutional right or that Defendants inferred he

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

was at risk of suffering such a deprivation. If the district court declines to dismiss this action based on exhaustion, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's eighth amendment claim for failure to protect be **GRANTED** and the claim be **DISMISSED with prejudice.**

**D. Fourteenth Amendment Claims.**

Judge Burns dismissed Plaintiff's due process and equal protection claims with leave to amend. Mar. 28 Order, p. 10. Plaintiff, however, did not reallege those claims. He only generally alleges on one page of the FAC that Defendants acted "for the purpose of denying Plaintiff the equal protection and due process of law as contemplated in the fourteenth amendment." FAC, p. 3. Plaintiff does not allege any of the other elements required to plead such claims. Therefore, if the district court declines to dismiss this action based on exhaustion, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's fourteenth amendment claims for equal protection and due process be **GRANTED** and the claims be **DISMISSED with prejudice.**

**IV. *Remaining Issues.***

**A. Qualified Immunity.**

State officials are protected from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To analyze a qualified immunity claim, a court must first determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the defendants violated the claimant's constitutional rights. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If the answer is no, the analysis ends. If, on the other hand, the answer is yes, the court must then consider whether the defendants are entitled to

qualified immunity. *See id.; Robinson v. Solano County,* 278 F.3d 1007, 1013 (9th Cir.2002) (en banc); *Valdez v. Rosenbaum,* 302 F.3d 1039, 1044 (9th Cir.2002). The second step requires determining "whether the right was clearly established." *Saucier,* 533 U.S. at 201. The relevant inquiry focuses on "what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." *Id.* at 208. The plaintiff bears the burden of proving that the right allegedly violated was clearly established at the time of the violation. *See Sorrels v. McKee,* 290 F.3d 965, 969 (9th Cir.2002).

Here, Plaintiff has adequately alleged a first amendment claim. During the time period of the alleged acts, an inmate's right to be free of retaliation for filling out an administrative grievance was clearly established by existing case law. The question, however, of whether any or all of the Defendants could reasonably have believed that their conduct was lawful is more properly resolved on a motion for summary judgment or at trial, when Defendants are entitled to present evidence on their behalf and the Court may properly consider such evidence. Thus, for the purposes of the instant motion, the Court cannot resolve the issue of whether any or all of the Defendants is entitled to qualified immunity as to the first amendment claim. Further, if the district court adopts this Court's recommendation as to the exhaustion issue, then the question of qualified immunity becomes moot. Therefore, the Court **RECOMMENDS** that Defendants' claim that they are entitled to qualified immunity be **DENIED without prejudice.**

**B. Claims Against the CDCR.**

**\*28 AFFIRM** that Plaintiff's claims against the CDCR are **DISMISSED** with prejudice, per Judge Burns' Order of March 28, 2008 Order at 10.

**C. Attempt to Amend the Complaint to Add Additional Defendants.**

To the extent on page 55 of the FAC Plaintiff intends to identify defendants previously sued as

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

Does, or to add 20 new defendants, he was not granted permission to add those defendants. *See* Mar. 28 Order, p. 11 (granting leave only to amend claims and not to add new defendants). Further, a review of the docket shows that Plaintiff has not served, and cannot serve, those proposed defendants within 120 days of filing the complaint, as required by Rule 4(m). Finally, even if Plaintiff could add those new defendants, such an act would be futile because this Court recommends dismissing Plaintiff's FAC for failure to exhaust. This Court **RECOMMENDS** that Plaintiff's attempt to add 20 new defendants to this action be **DENIED.**

**D. Request to Charge Plaintiff with a Strike.**

Defendants again urge the Court to charge Plaintiff with a strike under 28 U.S.C. § 1915(g). They argue Plaintiff filed the lawsuit to punish prison officials for their efforts to hold Plaintiff accountable for his refusal to accept a cellmate, and that it has created a tremendous amount of work for the Court and the Defendants. They also argue that Plaintiff's false accusation that Defendants prevented him from exhausting his administrative remedies goes to the malicious nature of the lawsuit.

An inmate may be charged with a strike if a complaint is dismissed for being frivolous, malicious, or for failing to state a claim. An inmate charged with three strikes cannot bring further civil rights actions. 28 U.S.C. § 1915(g).

This action appears to be Plaintiff's first section 1983 action to proceed in this Court.[FN6] Upon reviewing the file in this case, Plaintiff's claim that he attempted to exhaust his administrative grievance, but was prevented from doing so, does not appear to rise to the level of maliciousness that Defendants claim. And, there is no sufficient showing that Plaintiff intended to punish prison officials by bringing this suit. Further, Defendants had the burden to prove the defense of non-exhaustion. They did not do so in their first motion to dismiss, which is what brought this case to another round of briefing for a second motion

to dismiss. Considering all these facts, the Court **RECOMMENDS** that Defendants' request to charge Plaintiff with a strike be **DENIED.**

> FN6. In 2006 Plaintiff filed a different section 1983 action that the Court dismissed sua sponte for lack of proper venue. *See Andrews v. Coyle,* 06cv2278 BEN (JMA).

**E. Plaintiff's Request for Judicial Notice.**

Plaintiff asks that this Court take judicial notice of 15 Cal.Code Reg. § 3401.5. Federal Rule of Evidence 201 allows a court to take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." "A court shall take judicial notice if requested by a party and supplied with the necessary information. Fed.R.Evid. 201(c). The Court **RECOMMENDS** that Plaintiff's request for judicial notice of 15 Cal.Code Reg. § 3401.5 be **GRANTED,** as its content is capable of accurate determination.

## CONCLUSION

**\*29** For all of the above reasons, the Court **RECOMMENDS** the following:

1. Defendants' motion to dismiss Plaintiff's claims for money damages against Defendants in their official capacities be **GRANTED.**

2. Defendants' motion to dismiss based on exhausted be **GRANTED.**

3. If the district court rejects this Court's recommendation to grant Defendants' motion to dismiss based on exhaustion, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's first amendment retaliation claim be **DENIED.**

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

4. **AFFIRM** that Plaintiff's eighth amendment claims based on Defendants transferring him back to the general population in 2006 are **DISMISSED** with prejudice, per Judge Burns' Order of March 28, 2008 Order at 10.

5. If the district court declines to dismiss this action based on exhaustion, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's eighth amendment claim based on a conspiracy be **GRANTED** and the claim be **DISMISSED with prejudice.**

6. If the district court declines to dismiss this action based on exhaustion, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's eighth amendment claim for failure to protect be **GRANTED** and the claim be **DISMISSED with prejudice.**

7. If the district court declines to dismiss this action based on exhaustion, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's fourteenth amendment claims for equal protection and due process be **GRANTED** and the claims be **DISMISSED** with prejudice.

8. If the district court declines to dismiss this action based on exhaustion, this Court **RECOMMENDS** that Defendants' claim that they are entitled to qualified immunity be **DENIED without prejudice.**

9. **AFFIRM** that Plaintiff's claims against the CDCR are **DISMISSED with prejudice,** per Judge Burns' Order of March 28, 2008 Order at 10.

10. Plaintiff's attempt to amend the complaint to add 20 new defendants to this action be **DENIED.**

11. Defendants' request to charge Plaintiff with a strike be **DENIED.**

12. Plaintiff's request for judicial notice of 15 Cal.Code Reg. § 3401.5 be **GRANTED.**

This report and recommendation of the undersigned Magistrate Judge is submitted pursuant to 28 U.S.C. § 636(b)(1) to the United States District Judge assigned to this case.

**IT IS ORDERED** that no later than *October 31, 2008* any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than *November 10, 2008.* The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

**\*30 IT IS SO ORDERED.**

S.D.Cal.,2009.
Andrews v. Whitman
Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)

END OF DOCUMENT


Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)
**(Cite as: 2012 WL 6935254 (N.D.N.Y.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Everton BAILEY, Plaintiff,
v.
M. FORTIER, Defendant.

Civ. Action No. 9:09–CV–0742 (GLS/DEP).
Oct. 4, 2012.

Hancock Estabrook LLP, Michael J. Sciotti, Esq., Robert Thorpe, Esq., of Counsel, Syracuse, NY, for Plaintiff.

Hon. Richard S. Hartunian, United States Attorney, Charles E. Roberts, Esq., Assistant U.S. Attorney, of counsel, Syracuse, NY, for Defendant.

*REPORT AND RECOMMENDATION*
DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** Plaintiff Everton Bailey, a federal prison inmate, has commenced this *Bivens*[FN1] action against defendant Michelle Fortier, a corrections officer stationed at the prison facility in which Bailey was confined at the relevant times, alleging deprivation of his civil rights. Bailey's claims are based upon Fortier's alleged failure to protect him from an assault by a cellmate, despite having registered prior complaints expressing fear for his safety.

> FN1. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Currently at the forefront of the action is the threshold question of whether Bailey, who admits that he did not file a grievance following the procedures in place at Bureau of Prisons ("BOP") facilities, should be excused from the requirement of exhausting administrative remedies before commencing suit due to the alleged refusal of prison officials to provide him with the forms necessary to file a grievance. Because I find, based upon an evidentiary hearing conducted, that Bailey was not prevented by the actions of prison officials from filing a grievance regarding his claim against Fortier, and that he has offered no special circumstances providing a basis to excuse his failure to exhaust administrative remedies, I recommend that his complaint be dismissed on this procedural basis, without addressing its merits.

I. *BACKGROUND*

Bailey is a federal prison inmate currently being held in the custody of the BOP as a result of a 2007 criminal conviction entered in the United States District Court for the Eastern District of Pennsylvania. *See generally* Complaint (Dkt. No. 1); *see also* VanWeelden Decl. (Dkt. No. 10–4) ¶ 5; June 20, 2012 Hearing Transcript (Dkt. No. 44) at p. 84.[FN2] While he is presently housed in another BOP facility, at times relevant to this litigation Bailey was designated by the BOP to the Ray Brook Federal Correctional Institution ("FCI Ray Brook"), located in Ray Brook, New York. *Id.*

> FN2. The June 20, 2012 Hearing Transcript (Dkt. No. 44) will hereinafter be cited as "Tr. ____".

On the morning of February 23, 2009, while housed in a six-person cell in the Mohawk Housing Unit at FCI Ray Brook, Bailey was confronted and physically assaulted by one of his cellmates after being accused of stealing that inmate's prayer oil. Complaint (Dkt. No. 1) ¶¶ 8–9; *see also* VanWeelden

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)
**(Cite as: 2012 WL 6935254 (N.D.N.Y.))**

Decl. (Dkt. No. 10–4) Exh. D. Bailey reported the incident to Fortier, and requested that he be moved to another cell. Complaint (Dkt. No. 1) ¶ 10. That request was denied, and Bailey was directed by Fortier to return to his cell in light of an impending inmate count. *Id.* at ¶ 11.

Following the inmate count, Bailey again was accosted by the same inmate, who on this occasion threw hot oil from a ceramic mug onto his face.[FN3] Complaint (Dkt. No. 1) ¶ 13; VanWeelden Decl. (Dkt. No. 10–4) Exh. D; Tr. 100, 145. Bailey suffered second degree burns to his face resulting in his being hospitalized at an outside medical facility for a period of fourteen days. Complaint (Dkt. No. 1) ¶¶ 13–14; Tr. 32, 84–85. Upon his return to FCI Ray Brook, Bailey was placed in a special housing unit ("SHU") cell, where he remained until he was transferred to another BOP facility. Tr. 59–60, 85.

> FN3. According to Bailey, there were no corrections officers present in his cell unit at the time of the assault. Complaint (Dkt. No. 1) ¶ 13.

*2 The BOP has established an Administrative Remedy Program ("ARP"), comprised of a four-step administrative process through which inmates can seek formal internal review of any complaint regarding any aspect of their imprisonment. Tr. 10; 28 C.F.R. § 542.10 *et seq.; see also Macias v. Zenk,* 495 F.3d 37, 42 (2d Cir.2007). In accordance with the established ARP protocol, an inmate must first attempt informal resolution of his or her complaint by presenting the issue informally to staff, and staff must attempt to resolve the issue. 28 C.F.R. § 542.13(a); *see also Johnson v. Testman,* 380 F.3d 691, 693 (2d Cir.2004). This informal, initial procedure typically begins with the filing of a "cop-out," which can be submitted either on a BP–8 form available to inmates through several sources, including their assigned counselors, or on paper of any other description. Tr. 10, 22, 27, 66–67, 129, 142.

If the complaint cannot be resolved informally, the inmate may next submit a formal written Administrative Remedy Request ("ARR") to the warden of the facility, utilizing a BP–9 form, within twenty calendar days of the event that generated the inmate's complaint.[FN4] Tr. 22, 32, 44; 28 C.F.R. § 542.14(a); *see also Johnson,* 380 F.3d at 693. That twenty-day period, however, can be extended in appropriate circumstances.[FN5] Tr. 33, 54, 144. If that formal request is denied, the inmate may next appeal the matter to the appropriate BOP Regional Director, utilizing a BP–10 form, within twenty calendar days of the date the grievance is denied by the facility warden. Tr. 22; 28 C.F.R. § 542.15(a); *see also Johnson,* 380 F.3d at 693. An unfavorable decision from the Regional Director can then be appealed to the General Counsel's office, utilizing a BP–11 form, within twenty calendar days of the date of the Regional Director's response. Tr. 22; 28 C.F.R. § 542.15(a).

> FN4. Plaintiff was aware of the twenty-day limitation for filing a BP–9 form to initiate the formal grievance process. Tr. 103.

> FN5. Here, the record demonstrates that in light of his circumstances, including the fourteen-day period of hospitalization following the incident, Bailey almost certainly would have been granted relief from that requirement had such a request been made. *See* Tr. 43, 144. I note, parenthetically, that the handbook provided to inmates at FCI Ray Brook does not address the possibility of requesting an extension of the twenty-day time limit for filing a BP–9. *See* Tr. 34, 43.

Despite the existence of the ARP, Bailey did not avail himself of that process by filing a grievance regarding the assault or the defendant's alleged failure to protect him from it. Tr. 101–02, 106. Bailey claims that he requested the appropriate forms for com-

Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)
**(Cite as: 2012 WL 6935254 (N.D.N.Y.))**

mencing the grievance process from several prison workers, including Hawley Snyder, Barbara Darrah, and the warden at FCI Ray Brook. Tr. 86–88, 91, 93–95, 107–09. Employees at FCI Ray Brook, however, uniformly testified that Bailey never requested the appropriate grievance forms from them. *See* Tr. 72, 131, 146–47, 153, 155, 168; *see also* Tr. 49 (Robin Van Weelden); 161 (Jean Marie Diehl); 166 (Michelle Gonyea). I credit the testimony of defendant's witnesses and find that Bailey failed to ask his corrections counselor, or any other BOP employee at FCI Ray Brook, for the necessary forms to commence the grievance process.

The record also reflects that Bailey had abundant opportunity to secure the necessary grievance forms. In February and March of 2009, he was assigned a unit team that included Barbara Darrah, his unit manager; Michelle Gonyea, a case worker; Hawley Snyder, his assigned corrections counselor; and one other corrections counselor.[FN6] Tr. 46, 86, 140–41. Members of Bailey's unit team, particularly his corrections counselor, were in frequent contact with him. *See, e.g.,* Tr. 126, 129–30, 140–41, 165.

> [FN6]. Jean Marie Diehl took over as plaintiff's correction counselor in or about September 2009, shortly before Snyder's retirement from the BOP. Tr. 140, 163.

*3 Various other BOP officials were also in regular contact with Bailey, making periodic rounds of the FCI Ray Brook SHU. Tr. 35. For example, at the times relevant to this litigation, the facility's warden typically visited the SHU every Wednesday morning, normally accompanied by Robin Van Weelden, who in February 2009 served as a legal assistant, as well as one or two associate wardens, a corrections captain, and unit team members. Tr. 35, 55. When making those rounds the group would proceed from cell to cell, knocking on doors and asking whether an inmate in a particular cell wished to voice any needs. Tr. 57. In addition, Barbara Darrah, as a unit manager, was required to visit inmates in the SHU twice weekly, although she testified that she was in that portion of the facility "pretty much daily." Tr. 126. When visiting the SHU, Darrah generally carried with her a folder of various forms, including BP–8, BP–9, BP–10, BP–11 and cop-out forms, earning her the nickname "the form lady." Tr. 70–71, 120, 124–27, 131. Like the warden and the warden's group, when visiting the SHU facility Darrah normally would proceed from cell-to-cell. Tr. 128. Similarly Michelle Gonyea, as plaintiff's case manager during February and March of 2009, was required to visit the SHU at least once weekly. Tr. 165.

Despite all of those visits and requests as to whether he needed anything, Bailey did not ask any of those individuals for the forms necessary to grieve Fortier's alleged failure to protect him from harm. Tr. 161–62, 166, 49–50, 72, 132, 144, 154–55, 161, 166.

As previously indicated, plaintiff was absent from FCI Ray Brook receiving outside treatment for his injuries during the fourteen-day period immediately following the inmate assault. In accordance with FCI Ray Brook policy requiring visits by prison officials to any inmate hospitalized for more than five days, Darrah, as plaintiff's unit manager, visited him in or about March of 2009, while he was a patient at the Adirondack Medical Center in Saranac Lake, in order to insure that his needs were being met. Tr. 133. When asked on that occasion whether he needed anything, Bailey replied, "No." [FN7] *Id.*

> [FN7]. During the hearing Bailey testified that he did not recall Darrah visiting him. *See* Tr. 114. Once again, I credit the testimony of Darrah over that of the Bailey with respect to this issue.

## II. *PROCEDURAL HISTORY*

Bailey commenced this action on June 29, 2009. Dkt. No. 1. His complaint identifies Corrections Of-

Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)
**(Cite as: 2012 WL 6935254 (N.D.N.Y.))**

ficer M. Fortier as the sole named defendant, and alleges that she violated his constitutional rights by failing to protect him from foreseeable harm. *Id.*

On January 8, 2010, prior to answering, Fortier moved to dismiss Bailey's complaint for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, for summary judgment pursuant to Rule 56. Dkt. No. 10. The sole basis for Fortier's motion was her contention that Bailey's complaint is subject to dismissal based upon his failure to exhaust available administrative remedies before commencing suit, as required under 42 U.S.C. § 1997e(a). That motion resulted in my issuance of a report on August 30, 2010, recommending that the motion be denied, based upon the existence of genuine disputes of material fact to be resolved before addressing whether a proper basis for excusing the governing exhaustion requirement had been demonstrated. Dkt. No. 19. That recommendation was adopted by Chief District Judge Gary L. Sharpe on October 12, 2010. Dkt. No. 21.

**\*4** Following the issuance and acceptance of my report and recommendation, the parties were afforded the opportunity to engage in discovery, and a scheduling order was entered requiring, *inter alia,* that any additional dispositive motions be filed on or before October 3, 2011. *See* Dkt. No. 23. All deadlines under that scheduling order have passed, without the filing of any additional motions, and the case is now trial-ready. In light of the existence of a threshold procedural issue regarding exhaustion, the matter was referred to me for the purpose of conducting an evidentiary hearing, pursuant to *Messa v. Goord,* 652 F.3d 305 (2d Cir.2011), in order to develop the record concerning Bailey's efforts to satisfy his exhaustion requirement. *See* Text Entry 11/02/11. That hearing was conducted on June 20, 2012, *see* Text Entry 6/20/12, and, following the close of the hearing, decision was reserved pending briefing by the parties.[FN8] [FN9]

FN8. The hearing was conducted by video conference, with Bailey participating and testifying from the Kentucky federal correctional facility in which he is currently being held, pursuant to Rule 43(a) of the Federal Rules of Civil Procedure. *See Rivera v. Santirocco,* 814 F.2d 859, 862 (2d Cir.1987). At the outset of the hearing I placed upon the record the factors which I considered in declining to exercise my discretion to require that Bailey be produced in person for the evidentiary hearing. *See* Tr. 3.

FN9. Attorney Michael J. Sciotti, Esq., of the firm of Hancock & Estabrook, LLP, was appointed in January 2012 to represent the plaintiff in this action, *pro bono,* at the hearing. The court wishes to express its thanks to Attorney Sciotti and his co-counsel, Robert Thorpe, Esq., for their energetic and diligent efforts on behalf of the plaintiff.

III. *DISCUSSION*

A. *Governing Legal Principles*

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006); *Hargrove v. Riley,* No. CV–04–4587, 2007 WL 389003, at \*5–6 (E.D.N.Y. Jan.31, 2007). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)
**(Cite as: 2012 WL 6935254 (N.D.N.Y.))**

they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002). An inmate plaintiff's complaint is subject to dismissal if the evidence establishes that he or she failed to properly exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal. *See Pettus v. McCoy,* No. 04–CV–0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 548 U.S. at 94–95, 126 S.Ct. at 2387–88 (holding that the PLRA requires "proper exhaustion" of available remedies). "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules." *Woodford,* 548 U.S. at 95, 126 S.Ct. at 2388; *see also Macias,* 495 F.3d at 43 (citing *Woodford* ). Complete exhaustion has not occurred, for purposes of the PLRA, until all of the steps of that available process have been taken. *Macias,* 495 F.3d at 44; *see also Johnson v. Rowley,* 569 F.3d 40, 45 (2d Cir.2009); *Strong v. Lapin,* No. 90–CV–3522, 2010 WL 276206, at *4 (E.D.N.Y. Jan.15, 2010) ("Until the BOP'S Central Office considers the appeal, no administrative remedy is considered to be fully exhausted.").

**\*5** In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted in the event of a failure to satisfy the PLRA's exhaustion requirement. *Macias,* 495 F.3d at 41; *see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). Under the prescribed rubric, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. If such a remedy existed and was available, the court must next examine whether the defendant should be deemed to have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it, or whether, through the defendant's own actions preventing the

plaintiff from exhausting otherwise available remedies, he or she should be estopped from asserting failure to exhaust as a defense. *Id.* In the event the proffered defense survives these first two levels of scrutiny, the court must determine whether the plaintiff has established the existence of special circumstances sufficient "to justify the failure to comply with applicable administrative procedural requirements.FN10,FN11 *Id.*

> FN10. In *Macias,* which, like this action, involved an Eighth Amendment claim under *Bivens,* as well as claims under the Federal Court Claims Act, 28 U.S.C. § 2671 *et seq.,* defendants asserted that plaintiff's complaint was subject to dismissal under the PLRA based upon his failure to exhaust available administrative remedies. *Macias,* 495 F.3d at 40. Reiterating the importance of exhaustion in both a substantive and a procedural sense, the Second Circuit concluded that, while a prisoner may have substantively exhausted remedies by making informal complaints regarding the conditions at issue, the PLRA, as illuminated by *Woodford,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368, requires proper procedural exhaustion through the available grievance channels. *Id.* at 41. The court left open, however, the possibility that, notwithstanding the Supreme Court's decision in *Woodford,* a defendant could be precluded from asserting failure to exhaust available administrative remedies in the event of a finding that threats by prison officials may have deterred compliance with the PLRA exhaustion requirements, including under *Hemphill. Id.* at 44–45. The court in *Macias* also noted that the plaintiff in that case did not assert that the available internal remedial scheme was so confusing as to excuse his failure to avail himself of that process, thereby obviating the need for the court to determine what effect, if any, *Woodford*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)
**(Cite as: 2012 WL 6935254 (N.D.N.Y.))**

would have upon the *Hemphill* holding to the effect that a reasonable misinterpretation of the available scheme could justify an inmate's failure to follow the procedural rules. *See Amador v. Superintendents of Dep't of Correctional Serv.,* No. 03 CIV. 0650 (KTD/CWG), 2007 WL 4326747, at *6 (S.D.N.Y. Dec.4, 2007). It therefore appears that the teachings of *Hemphill* remain intact, at least with regard to the first two points of inquiry. *Id.* at *7.

FN11. In practicality, these three prongs of the prescribed test, though perhaps intellectually distinct, plainly admit of significant overlap. *See Hargrove,* 2007 WL 389003, at *8 n. 14; *see also Giano v. Goord,* 380 F.3d 670, 677 n. 6 (2d Cir.2004).

B. *Burden of Proof*

Before applying the foregoing legal principles, I must first consider who bears the burden of proof, and whether that burden shifts throughout the analysis prescribed under *Hemphill.*

As an affirmative defense, *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), exhaustion is a claim upon which the party asserting it typically bears the ultimate burden of proving its essential elements by a preponderance of the evidence. *Soria v. Girdich,* No. 9:04–CV–727, 2007 WL 4790807, at *2 (N.D.N.Y. Dec. 2007) (DiBianco, M.J.) (citing *McCoy v. Goord,* 255 F.Supp.2d 233, 247 (S.D.N.Y.2003); *McEachin v. Selsky,* No. 9:04–CV–83(FJS/RFT), 2005 WL 2128851, at *4 (N.D.N.Y. Aug.30, 2005) (Scullin, C.J.) (citing *Howard v. Goord,* No. 98–CV–7471, 1999 WL 1288679, *3 (E.D.N.Y. Dec. 28, 1999)), *aff'd in part, vacated in part,* 225 F. App'x 36 (2d Cir.2007). The issue is somewhat complicated, however, by consideration of the three-part analysis mandated by *Hemphill* and related cases because that line of cases incorporates concepts—such as estoppel, for exam-

ple—that typically require the party asserting them to bear the ultimate burden of proof. *See e.g., Abbas v. Dixon,* 480 F.3d 636, 642 (2d Cir.2007) ("The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel ...."); *In re Heflin,* 464 B.R. 545, 554 (D.Conn.2011) ("The burden of providing every element of an estoppel is upon the party seeking to set up the estoppel.") (citing *Comm'r v. Union Pac. R.R. Co.,* 86 F.2d 637, 640 (2d Cir.1936)).

**\*6** Also complicating matters is the fact that several courts have held that once a defendant satisfies the burden of demonstrating that an inmate has failed to exhaust administrative remedies, it then becomes incumbent upon the plaintiff to counter with a showing of unavailability, estoppel, or special circumstances. *See, e.g., Murray v. Palmer,* No. 9:03–CV–1010 (GTS/GHL), 2010 WL 1235591, at *4 and n. 17 (N.D.N.Y. Mar.31, 2010) (Suddaby, J.); *see also Calloway v. Grimshaw,* No. 9:09–CV–1354, 2011 WL 4345299, at *5 and n. 5 (N.D.N.Y. Aug.10, 2011) (Lowe, M.J.) (citing cases); *report and recommendation adopted,* 2011 WL 4345296 (N.D.N.Y. Sep.15, 2011) (McAvoy, S.J.); *Cohn v. KeySpan Corp.,* 713 F.Supp.2d 143, 155 (E.D.N.Y.2010) (finding that, in the employment discrimination context, defendants bear the burden of establishing the affirmative defense of failure to timely exhaust his administrative remedies, but once defendants have done so, the plaintiff must plead and prove facts supporting equitable avoidance of the defense.). Those decisions, while referencing the burden of proof on an affirmative defense, seem to primarily address an inmate's burden of *production,* or of going forward, to show facts that would form the basis for finding of unavailability, estoppel, or a finding of special circumstances, rather than speaking to the ultimate burden of *persuasion.*

I have been unable to uncover any cases squarely holding that the defendant bears the ultimate burden of

Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)
(Cite as: 2012 WL 6935254 (N.D.N.Y.))

proof with regard to all elements of a *Hemphill* analysis. In the final analysis, however, *Hemphill* addresses all of the elements a court is required to consider when analyzing an exhaustion defense. *See Macias,* 495 F.3d at 41 ("In *Hemphill* we "read together" [a series of cases] and formulated a three-part *test* ....") (emphasis added). Therefore, I recommend a finding that, while the burden of production may shift to the plaintiff when a court undertakes a *Hemphill* analysis, the ultimate burden of proof with respect to the exhaustion defense remains, at all times, with the defendant. *See Soria,* 2007 WL 4790807, at *2 ("[A]s with other affirmative defenses, the defendant has the burden of proof to show that plaintiff failed to exhaust his administrative remedies.").

### C. *Application of Governing Legal Principles*

#### 1. *Availability of Administrative Remedy*

In this instance, the question of whether the ARP was available to Bailey is at the heart of the exhaustion analysis. The hearing testimony confirmed, and Bailey admitted, that at all times relevant to this litigation, there was an inmate grievance procedure in place at FCI Ray Brook. This, however, does not necessarily mean that it was "available" to the plaintiff.

Bailey contends that the grievance process was not available to him in light of the alleged refusal of prison officials to provide him with the forms necessary to file an ARR and pursue the grievance to culmination. Having considered the competing testimony, however, I conclude that Fortier has established, by a preponderance of the evidence, that the forms necessary to pursue a grievance in accordance with the ARP in place at FCI Ray Brook were available to Bailey through several sources, but were not requested. As such, Fortier has satisfied the first *Hemphill* factor.

#### 2. *Presentation of Defense/Estoppel*

*7 The focus of the second prong of the *Hemphill* analysis is upon "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill,* 380 F.3d at 686 (citations omitted). In her answer, Fortier raised exhaustion as a defense in a timely fashion. *See* Answer (Dkt. No. 22) Second Defense ("Plaintiff clearly failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)."). Bailey argues, however, that his failure to follow the prescribed grievance process was a direct result of the refusal of prison officials to cooperate in his efforts to grieve the matter.

" 'Generally, a defendant in an action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies based on the actions (or inactions) of other individuals.' " *Atkins v. Menard,* No. 9:11–CV–9366, 2012 WL 4026840, at *3 (N.D.N.Y. Sept.12, 2012) (Suddaby, J.) (citing *Murray,* 2010 WL 1235591, at *5 and n. 26 (collecting cases)). Put differently, a plaintiff must allege that a defendant named in the lawsuit acted to interfere with his ability to exhaust in order to establish a basis to estop that defendant from invoking the exhaustion defense. *Calloway,* 2011 WL 4345299, at *4 (citing *Bennett v. James,* 737 F.Supp.2d 219, 226 (S.D.N.Y.2010), *aff'd,* 441 F. App'x 816 (2d Cir.2011)) (other citations omitted).

The question of whether, in this instance, prison officials should be estopped from asserting failure to exhaust as an affirmative defense as a result of their conduct is inextricably intertwined with the question of availability of the remedy. Assuming, however, that this presents a distinct inquiry, the court must examine whether, through her conduct, Fortier has provided a basis to estop her from asserting an exhaustion defense.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)
**(Cite as: 2012 WL 6935254 (N.D.N.Y.))**

In this instance, Bailey does not allege that Fortier engaged in a campaign to preclude him from filing a grievance regarding her actions. Instead, his focus is upon the alleged refusal of other officials at FCI Ray Brook to provide him with necessary forms and co-operate in his efforts to present his grievance against Fortier. Accordingly, Bailey has failed to present any evidence that would support an estoppel against the defendant from raising the issue of exhaustion. *Atkins,* 2012 WL 4026840, at * 3. Therefore, I conclude that Fortier has proven, by a preponderance of the evidence, that she did not, through her own actions, preclude Bailey from taking advantage of the ARP and therefore should not be estopped from asserting the defense.

3. *Special Circumstances*

The third, catchall factor that must be considered under the Second Circuit's prescribed exhaustion rubric centers upon whether special circumstances sufficient to justify excusing the plaintiff's failure to exhaust administrative remedies have been demonstrated. *Hemphill,* 380 F.3d at 689; *see also Giano,* 380 F.3d at 676–77; *Hargrove,* 2007 WL 389003, at *10. Among the circumstances potentially qualifying as "special" under this prong of the test is where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute is not grievable. *Giano,* 380 F.3d at 676–77; *see also Hargrove,* 2007 WL 389003, at *10 (quoting and citing *Giano* ). Special circumstances may also exist when a facility's "[f]ailure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals-which effectively rendered the grievance process unavailable to him." *Murray,* 2010 WL 1235591, at *6 (quoting *Sandlin v. Poole,* 488 (W.D.N.Y.2008) (noting that "[s]uch facts support a finding that defendant's are estopped from relying on exhaustion defense as 'special circumstances' excusing plaintiff's failure to exhaust")).

**\*8** During the evidentiary hearing, Bailey testified to his awareness of the existence of the ARP at FCI Ray Brook. *See, e.g.,* Tr. 102. Bailey's testimony regarding his alleged efforts to secure the forms necessary to pursue the grievance plainly evidences his knowledge of the requirement that he exhaust available administrative remedies, and negates a finding of any reasonable belief on his part that the dispute in issue was not grievable and could not have been presented through the BOP's internal grievance process. Accordingly, again allocating the ultimate burden of proof on the issue of special circumstances to the defendant, I nonetheless conclude that she has demonstrated, by a preponderance of the evidence, the absence of any special circumstances that would serve to excuse plaintiff's failure to exhaust administrative remedies.

IV. *SUMMARY AND RECOMMENDATION*

The credible testimony and evidence adduced at the recent hearing, held to address the merits of defendant's exhaustion defense, establishes that (1) Bailey failed to avail himself of the BOP grievance process, which was available to him, before commencing this action; (2) Fortier did not, through her actions, preclude Bailey from filing a grievance regarding the claims set forth in his complaint, or otherwise engage in conduct for which she should be estopped from asserting failure to exhaust as an affirmative defense; and (3) Bailey has offered no special circumstances warranting that he be excused from the PLRA's exhaustion requirement. Accordingly, it is therefore hereby respectfully

RECOMMENDED, that plaintiff's complaint in this action be DISMISSED, based upon his failure to comply with the exhaustion requirements of 42 U.S.C. § 1997e(a).

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)
**(Cite as: 2012 WL 6935254 (N.D.N.Y.))**

report. Such objections must be filed with the Clerk of the Court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS RE-PORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

N.D.N.Y.,2012.
Bailey v. Fortier
Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

C

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Christopher McCLOUD, Plaintiff,
v.
C. TUREGLIO, Correctional Officer, Greene Correctional Facility, Defendant.

No. 9:07-CV-0650.
April 15, 2008.

Christopher McCloud, Wallkill, NY, Pro Se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Charles J. Quackenbush, Esq. Assistant Attorney General, of Counsel, New York, NY, for Defendant.

*ORDER*
NORMAN A. MORDUE, Chief Judge.

*1 The above matter comes to me following a Report-Recommendation by Magistrate Judge George H. Lowe, duly filed on the 17th day of March 2008. Following ten days from the service thereof, the Clerk has sent me the file, including any and all objections filed by the parties herein.

After careful review of all of the papers herein, including the Magistrate Judge's Report-Recommendation, and no objections submitted thereto, it is

ORDERED, that:

1. The Report-Recommendation is hereby adopted in its entirety.

2. The Defendant's motion to dismiss for failure to state a claim (Dkt. No. 11) [FN1] is granted.

> FN1. The Magistrate Judge's Report-Recommendation inadvertently refers to Defendant's motion to dismiss as Dkt. No. 42 on page 35. The correct Dkt. No. is 11 as referred to throughout the Report-Recommendation.

3. The Court certifies that any appeal of this order would not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

4. The Clerk of the Court shall serve a copy of this Order upon all parties and the Magistrate Judge assigned to this case.

IT IS SO ORDERED.

*REPORT-RECOMMENDATION*
GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court. In his Complaint, Christopher McCloud ("Plaintiff") alleges that, on May 31, 2007, at Green Correctional Facility ("Green C.F."), Correctional Officer C. Turriglio ("Defendant") physically assaulted and threatened Plaintiff in violation of his constitutional rights. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].) Currently before the Court is Defendant's motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief might be granted, pursuant to

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

Fed.R.Civ.P. 12(b)(6). (Dkt. No. 11.) For the reasons set forth below, I recommend that the Court grant Defendants' motion to dismiss.

## I. BACKGROUND

### A. Summary of Plaintiff's Complaint

On June 20, 2007, Plaintiff filed his Complaint in this action. (Dkt. No. 1 [Plf.'s Compl.].) The factual allegations giving rise to Plaintiff's (unspecified) constitutional claim against Defendant Turriglio are as follows:

> On May 31, [20]07 I came to my program late[.] [My program] ... is Mess [H]all [during the] P.M. and late eve[ning shift]. [F]or coming in late I was placed in the pot room[.] [M]y regular job title is 2 ser[v]er on the C-side line[.][W]hile I was in the pot room I was making noise and Officer Tureglio [sic] came into the pot room and started banging pots and curs[ ]ing at me [,] telling me to shut up[.] [A]fter that he told me to stop eye balling him or he'll pull my eyes from my skull[.][A]t 2:30 P.M. [it] is count time and all inmates must report to the din[ ]ing are[a] for count[.] [A]fter count he called me to his office and took me to the back of the Mess [H]all out of plain view and placed me o[n] the wall and started to slap me [o]n the back of the head[.] [A]fter his as[sa]ult he placed his pocket knife to his face and told me he'll cut hi[m]self and say I did it [in order to] let the other inmates know he's not play[ing around].

**\*2** (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].) As a result of this alleged misconduct, Plaintiff is requesting three forms of relief: (1) a court order "secur[ing] [Plaintiff's] safety and mak[ing] sure there will be [ ]no [ ] retaliation from coworkers or staff"; (2) a court order directing that a search be performed of Defendant's "file to see if [a]ny complaints or grievances [have] been filed against him in the past concerning brutali-

ty"; and (3) "$1,000,000 for mental anguish and distress." (Id. at ¶¶ 7, 9.)

It is important to note that, in his form Complaint, Plaintiff provided some information regarding his efforts to exhaust his available administrative remedies before filing this action. Specifically, in response to a question reading "Is there a prisoner grievance procedure at this facility?" Plaintiff checked the box reading "Yes." (Id. at ¶ 4[a].) In response to a question reading "If your answer to 4(a) is YES, did you present the facts relating to your complaint in this grievance program?" Plaintiff checked the box reading "No." (Id. at ¶ 4[b].) In response to a question reading "If your answer to 4(b) is NO: Why did you choose to not present the facts relating to your complaint in the prison's grievance program?" Plaintiff stated, "Because I fear retaliation from officers and the officer [I]'m fil[ ]ing against brag[s] about the grievance system not working and he claims his uncle is a superintendent." (Id.) Finally, in elaboration on this last assertion, Plaintiff stated later on in the Complaint that "[t]he officer [I]'m fil[ ]ing [this action] againsts uncle [sic] is a Superintendent here at Green Corr." (Id. at ¶ 4[c].)

### B. Plaintiff's Abandoned Efforts to File an Amended Complaint and a Supplemental Complaint

On June 22, 2007, Plaintiff filed a letter to the Clerk of the Court. (Dkt. No. 6.) The stated purpose of the letter was to serve "as evidence in [Plaintiff's] case." (Id.) The letter requested that his Complaint be amended to reflect that the correct spelling of Defendant's name was "C. Turriglio," not "Tureglio." (Id.) (The Court subsequently directed that the docket be so amended.) In addition, the letter requested that a claim be "add [ed] to [Plaintiff's] complaint...." (Id.) The factual allegation giving rise to this claim was as follows:

> On June 18, 2007 Officer Turriglio made intimidating comments [to] me [and] taunt[ed] me[,]

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

saying [']McCloud knows I doesn't [sic] play[.] Let them know [.'] [By 'them' he was] talking about new Mess [H]all workers. I assumed he was back from vacation time or answering a grievance because he [was] brag[g]in' about laying on the beach when some inmates here at the facility filed a grievance against him.

(*Id.*)

On July 5, 2007, I directed the Clerk to strike Plaintiff's submission from the docket for two reasons: (1) to the extent that Plaintiff was requesting court permission for leave to amend his Complaint, such permission was unnecessary under Fed.R.Civ.P. 15(a) since Defendant had not yet filed a responsive pleading; and (2) to the extent that Plaintiff was requesting that his (one-page, single-spaced) letter serve as his amended pleading, such an amendment was prohibited by Local Rule 7.1(a), which required that amended pleadings be complete pleadings that superseded the original pleadings in all respects. (Dkt. No. 7.)

**\*3** However, Plaintiff did not subsequently file an Amended Complaint. Rather, on August 8, 2007, Plaintiff filed another letter with the Court. (Dkt. No. 12.) The stated purpose of the letter was to again request "the court[']s permission to amend [Plaintiff's] complaint." (*Id.*) Although Plaintiff used the word "amend," it was clear that what he was intending was a "supplemental" complaint. *See* Fed.R.Civ.P. 15(d). This is because the factual allegations he asserted in the letter arose from incidents occurring *after* the filing of his Complaint on June 20, 2007. (Dkt. No. 12.) In pertinent part, Plaintiff alleged as follows:

On July 14, [20]07 the very next day [after speaking to a prison psychologist and Iman about the anxiety I was suffering due to my experience with Officer Turriglio] I was approached by [O]fficer Turriglio once I arrived ... [at my] program. Officer Turriglio

told me [']I want to talk to you.['] After program assi[ ]g[n]ments ... [were] completed [O]fficer Turriglio pulled me to the side away from other inmate[ ]mess hall workers on the B side in the din[ ]ing area; [O]fficer Turriglio['s] exact words ... [were] 'I spok[e] to the Imam [about] what[']s going on[.] [Y]ou can talk to me man to man. I must admit I was nervous when [O]fficer Turriglio approached me. I started studdering [sic] when I spoke and made up a lie.... After that [O]fficer Turriglio walked away.

(*Id.* at 1.) In addition, Plaintiff attempted to assert a claim against various (unidentified) nonparties. In pertinent part, Plaintiff alleged as follows:

On July 24, [20]07 I was called to the sergeant[']s office[ ] and forced to write a statement [about what had taken place between Plaintiff and Officer Turriglio] that is false.... When I arrived at the sergeant[']s office[,] three sergeants or lieutenants ... [were] there[.] [O]ne left and the other two stayed[.] [O]ne of them asked what happen[ed] between me and Turriglio. [The] [I]nspector [G]eneral's [O]ffice [had] informed them of what [had] happen[ed]. One of the sergeant[']s or lieutenants told me what to write. I tried to write what really took place between me and [O]fficer Turriglio. I was told [']That [']s not good enough.['] I informed the sergeant or lieutenants that I[had] filed a federal complaint against [O]fficer Turriglio. I was still told what to write[.][W]hen I refused that[']s when threats ... [were] made and I was called a nigger. I was told [I']m not leaving the sergeant[']s office intell [sic] I give them what th[e]y want [sic].... I repeat [that] my statement was false and forced and I took no oath[;] it was given out of fear for my safety.... I can [']t identify [the two sergeants or lieutenants] by name because th[e]y were not wearing badges or name tags.... I [would] like to add [as defendants in my action] Green Cor. Fac.[,] D.O.C. as a while[,] [and the] New Yo[r]k State employees here at Greene [Correctional Facility] ....

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

**\*4** (*Id.* at 2.)

On August 13, 2007, I directed the Clerk to strike Plaintiff's submission from the docket for two reasons: (1) to the extent that Plaintiff was requesting court permission for leave to supplement his Complaint, such permission was unnecessary under Fed.R.Civ.P. 15(a) since Defendant had not yet filed a responsive pleading; and (2) to the extent that Plaintiff was requesting that his (two-page, single-spaced) letter serve as his supplemental pleading, such a supplemental pleading was not in conformity with Fed.R.Civ.P. 10(b), Local Rule 10. 1, and Local Rule 7.1(a)(4) in that the document was not double spaced, the text was not broken down into paragraphs, and the paragraphs were not numbered consecutively to the paragraphs contained in the original pleading. (Dkt. No. 14.)

However, Plaintiff did not subsequently file a Supplemental Complaint. Rather, on August 29, 2007, Plaintiff filed another letter with the Court. (Dkt. No. 15.) In the letter, Plaintiff requested "the court['s] permission to make a formal complaint, 'not to amend my complaint.' " (*Id.* at 1.) The claim that Plaintiff wished to assert arose from events occurring on August 21, 2007, at Greene C.F., involving the delayed arrival of a piece of his legal mail. (*Id.* at 1-2.) More specifically, Plaintiff alleged that (1) at approximately 3:30 p.m. in Plaintiff's housing unit, Correctional Officer Forbes handed Plaintiff a piece of legal mail (a time-sensitive court order issued by the U.S. District Court for the Southern District of New York on May 31, 2007) unaccompanied by the addressed envelope in which it had arrived at the prison, and (2) that same day, while signing for legal mail (from the New York State Court of Claims) in front of Officer Turriglio at the law library, Plaintiff was led to "fear [that] Officer Turriglio has tampered with my mail ... [because he was] the officer who had access to all inmate['s] legal mail." (*Id.*) As a form of relief, Plaintiff requested that the Court "issue a[n] order to have the Defendant Officer Turriglio removed from the law library intell [sic] this matter is resolved." (*Id.* at 2.)

On September 6, 2007, I directed the Clerk to strike Plaintiff's submission from the docket for the exact two reasons given in my Order of August 13, 2007 (i.e., that Plaintiff need not request permission to file a Supplemental Complaint since he had the right to do so without permission under the circumstances, and that his two-page, single-spaced letter could not serve as his supplemental pleading since the document was not double spaced, the text was not broken down into paragraphs, and the paragraphs were not numbered consecutively to the paragraphs contained in the original pleading), as well as for the additional reason that Plaintiff had failed to indicate that he had served his submission on opposing counsel, as required by Local Rule 5.1(a). (Dkt. No. 16.)

However, again, Plaintiff did not subsequently file a Supplemental Complaint.

**C. Defendant's Motion to Dismiss and Plaintiff's Response**

**\*5** On August 2, 2007, Defendant filed a motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief might be granted, pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 11.) Defendant's motion is premised on two independent grounds: (1) that Plaintiff's action is barred by the Prison Litigation Reform Act ("PLRA") due to his failure to exhaust his available administrative remedies before filing this action; and (2) that Plaintiff's action is barred by the PLRA since that statute requires that any inmate claiming damages related to mental and emotional distress, as is Plaintiff, must make a prior showing of physical injury, which Plaintiff has not made. (Dkt. No. 11, Part 2, at 4-6 [Def.'s Memo. of Law].)

In response to Defendant's first argument (i.e., regarding Plaintiff's failure to exhaust his available administrative remedies), Plaintiff argues that (1) Defendant's own actions inhibited Plaintiff's exhaustion of administrative remedies so as to estop De-

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

fendant from asserting Plaintiff's failure to exhaust as a defense, and/or (2) under the circumstances, special circumstances existed justifying his failure to exhaust his administrative remedies. (Dkt. No. 18, Plf.'s Memo. of Law, "Point I.") In response to Defendant's second argument (i.e., regarding Plaintiff's failure to make a prior showing of physical injury), Plaintiff essentially argues that the "continuous injuries" inflicted on Plaintiff by Defendant constitute the showing of physical injury required by the PLRA. (Dkt. No. 18, Plf.'s Memo. of Law, "Point II.")

## II. RECENTLY CLARIFIED LEGAL STANDARD FOR MOTIONS TO DISMISS

Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2);[FN1] or (2) a challenge to the legal cognizability of the claim.[FN2]

FN1. See 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

FN2. See *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002) ( "These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12 [b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-02 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b] [6] motion-one aimed at the sufficiency of

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

the pleadings under Rule 8 [a], and the other aimed at the legal sufficiency of the claims).

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." FN3 The purpose of this rule is to "facilitate a proper decision on the merits." FN4 A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." FN5

> FN3. *Dura Pharm., Inc. v. Broudo,* 125 S.Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 [1957] ); *see also Swierkiewicz,* 534 U.S. at 512 (quoting *Conley,* 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168 (1993) (quoting *Conley,* 355 U.S. at 47).

> FN4. *See Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48).

> FN5. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Tech., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d

355 [2d Cir.1996] ).

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.FN6 However, it is well established that even this liberal notice pleading standard "has its limits." FN7 As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard.FN8

> FN6. *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (characterizing Fed.R.Civ.P. 8[a][2]'s pleading standard as "simplified").

> FN7. *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

> FN8. *See, e.g., Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1964-74 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharm.,* 125 S.Ct. at 1634-35, *Christopher v. Harbury,* 536 U.S. 403, 416-22 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-35 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-09 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential ef-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

fect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

**\*6** Most notably, in the recent decision of *Bell Atl. Corp. v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 127 S.Ct. 1955, 1968-69 (2007).[FN9] Rather than turning on the conceivability of an actionable claim, the Court clarified, the Rule 8 standard turns on the "plausibility" of an actionable claim. *Id.* at 1965-74. More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.; see also Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) ("[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* ) [emphasis in original].

FN9. The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly,* 127 S.Ct. at 1969.

Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [FN10] Moreover, it should be noted that "[t]his standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.* "[FN11] In other words, while all pleadings are to be construed liberally, *pro se* civil rights pleadings are generally to be construed with an *extra* degree of liberality. Indeed, generally "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [FN12] In addition, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [FN13]

FN10. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

FN11. *Hernandez,* 18 F.3d at 136 [citation omitted]; *see also Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN12. *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

FN13. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted); *see also* Fed.R.Civ.P. 15(a) (leave to amend “shall be freely given when justice so requires”).

However, when a plaintiff is proceeding *pro se,* “all normal rules of pleading are not absolutely suspended.” [FN14] Moreover, an opportunity to amend should be denied where “the problem with [plaintiff's] causes of action is substantive” such that “[b]etter pleading will not cure it.” [FN15]

FN14. *Stinson v. Sheriff's Dep't of Sullivan County,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M. J.); *Muniz,* 2007 WL 2027912, at *2 (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains,* 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright,* 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins,* 2007 WL 37404, at *4 (Kahn, J., adopting report-recommendation of Lowe, M.J.).

FN15. *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) (“Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.”) (affirming, in part, dismissal of claim with prejudice) [citation omitted].

***7** Finally, it should be remembered that Fed.R.Civ.P. 12(b)(6) motions to dismiss are limited to the facts alleged in the complaint and must be converted into a Fed.R.Civ.P. 56 motion for summary judgment if the court considers materials outside the pleadings.[FN16] However, of course, the court may, without converting the motion to dismiss into a motion for summary judgment, consider any documents provided by the plaintiff in opposition to defendants' motion to dismiss, *to the extent those documents are consistent with the allegations in the complaint.*[FN17]

FN16. *See* Fed.R.Civ.P. 12(b) (“If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.”).

FN17. “Generally, a court may not look outside the pleadings when reviewing a Rule

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96 Civ. 7544, 1997 WL 714878, *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated an-other way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is ap-propriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the com-plaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (con-sidering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004).

### III. ANALYSIS

As stated above in Part I.C. of this Re-port-Recommendation, Defendant's motion is prem-ised on two independent grounds: (1) that Plaintiff's action is barred by the Prison Litigation Reform Act ("PLRA") due to his failure to exhaust his available administrative remedies before filing this action; and (2) that Plaintiff's action is barred by the PLRA since that statute requires that any inmate claiming damages related to mental and emotional distress, as is Plaintiff, must make a prior showing of physical injury, which Plaintiff has not made. (Dkt. No. 11, Part 2, at 4-6 [Def.'s Memo. of Law].) Because I conclude that Defendant's lack-of-physical-injury argument for dismissal is somewhat stronger than is his fail-ure-to-exhaust argument, I address the lack-ofphysical-injury argument first.

### A. Requirement of Physical Injury

The Prison Litigation Reform Act of 1995 ("PLRA") provides, in pertinent part, as follows: "No

Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in cus-tody without a prior showing of physical injury." 42 U.S.C.1997e(e).

Here, Plaintiff alleges that, on May 31, 2007, Defendant (1) "bang[ed] pots" in the prison's "pot room," (2) "curs[ed]" at Plaintiff, (3) told Plaintiff "to shut up," (4) told Plaintiff to stop "eye balling him" or he would "pull [Plaintiff's] eyes from [his] skull, (5) "placed [Plaintiff] o[n] the wall and started to slap me [o]n the back of the head," and (6) "placed his pocket knife to his [own] face and told [Plaintiff] he'll cut hi[m]self and say I did it [in order to] let the other inmates know he's not play[ing around]." (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].) As a result of this misconduct, Plaintiff alleges that he suffered "mental anguish and distress." (*Id.* at ¶¶ 7, 9.)

These factual allegations do not plausibly suggest that Plaintiff suffered any *physical injury* as a result of Defendant's alleged misconduct. Generally, some slaps on the back of the head do not constitute a cog-nizable *physical injury* under the PLRA. *See Jackson v. Johnson,* 04-CV-0110, 2005 U.S. Dist. LEXIS 21720, at *18-19, 32 (M.D. Ga. June 17, 2005) (no physical injury under PLRA occurred where correc-tions officer, *inter alia,* "slapp[ed] [prisoner] in the face immediately [after shouting derogatory remark to him]"). This is especially true where, as here, there is no allegation that the slaps resulted in any observable or diagnosable medical condition requiring treatment by a medical care professional. *See Jarriett v. Wilson,* 162 Fed. App'x 394, 400-01 (6th Cir.2005) (mild swelling of left toe with some pain but no need for medical treatment was not cognizable physical injury under PLRA); *Dixon v. Toole,* 225 Fed. App'x 797, 799 (11th Cir.2007) ("mere bruising from the appli-cation of restraints [resulting in welts]" was not cog-nizable physical injury under PLRA); *Silgar v. High-tower,* 112 F.3d 191, 193-94 (5th Cir.1997) (prisoner's "sore, bruised ear lasting for three days" was not

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

cognizable physical injury under PLRA); *cf. Liner v. Goord,* 196 F.3d 132, 135 (2d Cir.1998) (citing *Silgar v. Hightower* for the point of law that the physical injury under the PLRA must be more than "de minimis"), *accord, Voorhees v. Goord,* 05-CV-1407, 2006 WL 1888638, at *10, n. 2 (S.D.N.Y. Feb. 24, 2006) (same), *Leon v. Johnson,* 96 F.Supp.2d 244, 248 (W.D.N.Y.2000) (same).[FN18]

> FN18. *See also Harris v. Garner,* 190 F.3d 1279, 1287 (11th Cir.1999) (prisoner's claim that corrections officers forced him to "dry shave" during prison "shakedown," causing him to experience bleeding, irritation, and pain, alleged only *de minimis* injury and not the kind of physical injury cognizable under the PLRA) [citation omitted], *opinion reinstated in part on rehearing,* 216 F.3d 970 (11th Cir .2000); *Russell v. Johnson,* 07-CV-0008, 2008 WL 480020, at *2 (M.D.Ga. Feb. 19, 2008) (detainee's claim that, during a traffic stop, his foot was caught in police officer's automotive transmission, which resulted only in pain, was not cognizable physical injury under PLRA).

**\*8** I note that *repeated punches* by correctional officials (while, of course, deplorable if unprovoked) have been specifically held by district courts in this Circuit to not constitute *physical injury* under the PLRA, where they resulted in only superficial and temporary irritations or abrasions. *See Espinal v. Goord,* 00-CV-2242, 2001 WL 476070, at *3-4, 12-13 (S.D.N.Y. May 7, 2001) ("red face" suffered by inmate after correctional officer "struck [him] a couple times," "punch[ing][him] in the head and face," did not constitute physical injury cognizable under PLRA); *Warren v. Westchester County Jail,* 106 F.Supp.2d 559, 563, 569 (S.D.N.Y.2000) (minor scratches suffered by jail inmate as a result of two to three punches by guard, including two scratches to inmate's face, and very small cut inside mouth, did not constitute physical injury cognizable under PLRA); *cf.*

*Abreu v. Nicholls,* 04-CV-7778, 2007 WL 2111086, at *5 (S.D.N.Y. July 24, 2007) [collecting cases in which minor blows to inmates' faces and heads were not actionable under the Eighth Amendment].[FN19]

> FN19. *See also Borroto v. McDonald,* 04-CV-0165, 2006 WL 2789152, at *1 (N.D.Fla. Sept. 26, 2006) (prisoner's claim that he was "repeatedly punched" by correctional officers, alone, did not allege the kind of *physical injury* that is cognizable under PLRA); *cf. Barker v. Lehrer,* 02-CV-0085, 2004 WL 292142, at *4-5 (N.D.Tex. Jan. 30, 2004) (fact that prisoner was "hit ... with a closed fist on the left side of his forehead," resulting in "a lump on his forehead after the assault," did not constitute *physical injury* under PLRA).

Furthermore, even if (out of special solicitude to Plaintiff) I were to consider the factual allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion. None of those documents assert any allegations plausibly suggesting that Plaintiff suffered any physical injury as a result of Defendant's alleged misconduct on May 31, 2007. (*See* Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf.'s Letter filed 8/8/07]; Dkt. No. 15 [Plf.'s Letter filed 8/29/07]; Dkt. No. 18 [Plf .'s Opposition Papers].)

Plaintiff alleges, in his letter to the Court of June 22, 2007, that, on June 18, 2007, Officer Turriglio made "intimidating comments" to Plaintiff, and "taunt[ed]" him, by saying to other Mess Hall workers, "McCloud knows I doesn't [sic] play." (Dkt. No. 6.) He alleges, in his letter to the Court of August 8, 2007, that, on July 14, 2007, during a conversation with Defendant, Plaintiff became "nervous" and "started studdering [sic] when [he] spoke" to Defendant. (Dkt. No. 12, at 1.) He alleges, in his letter to

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

the Court of August 29, 2007, that, on August 21, 2007, he "fear[ed] [that] Officer Turriglio ha[d] tampered with [his] mail ... [because Officer Turriglio was] the officer who had access to all inmate[']s legal mail." (Dkt. No. 15, at 1-2.) None of these three documents contains any allegation that Plaintiff suffered any physical injury at all. Furthermore, none of the three documents sufficiently connects any of the emotional distress described therein to the incident on May 31, 2007; rather, the documents all allege facts plausibly suggesting that the cause of the emotional distress described in the documents was contact between Plaintiff and Defendant occurring more than two weeks after May 31, 2007.

**\*9** The closest Plaintiff comes to alleging facts plausibly suggesting that he suffered a "physical injury" as a result of the incident on May 31, 2007, is when he alleges, in his letter to the Court of August 8, 2007, that, on July 14, 2007, a prison psychologist diagnosed Plaintiff with "anxiety." (Dkt. No. 12, at 1.) However, this allegation of "anxiety" is insufficient for two reasons. First, Plaintiff does not allege that the diagnosis of "anxiety" on July 14, 2007, was caused by the incident on May 31, 2007-as opposed to being caused by the incident on June 18, 2007 (which is not at issue in this action), or some sort of pre-existing emotional disorder. Second, and much more importantly, numerous courts have held-correctly, I believe-that physical manifestations of emotional injuries (e.g., anxiety, depression, stress, nausea, hyperventilation, headaches, insomnia, dizziness, appetite loss, weight loss, etc.) are not "physical injuries" for purposes of the PLRA.[FN20] This is especially true where, as here, the plaintiff does not allege an extensive list of physical manifestations but only one, i.e., "anxiety."

FN20. *See, e.g., Davis v. District of Columbia,* 158 F.3d 1342, 1349 (D.C.Cir.1998) (weight loss, appetite loss, and insomnia caused by emotional distress not "physical injury" for purposes of PLRA); *Cooksey v.*

*Hennessey,* 07-CV-3829, 2007 WL 2790365, at \*1 (N.D.Cal. Sept. 20, 2007) ("Physical symptoms that are not sufficiently distinct from a plaintiff's allegations of emotional distress do not qualify as a prior showing of physical injury [for purposes of the PLRA].") [internal quotation marks]; *Johnson v. Georgia,* 06-CV-0049, 2007 WL 2684985, at \*3 (M.D.Ga. Sept. 7, 2007) (stress and "a mental disorder" not "physical injury" for purposes of PLRA); *Brown v. Porter,* 01-CV-20957, 2006 WL 2092032, at \*2 (N.D.Cal. July 26, 2006) (migraines, dry mouth, and loss of appetite caused by mental health problems not "physical injury" for purposes of PLRA); *Watkins v. Trinity Serv. Group, Inc.,* 05-CV-1142, 2006 WL 3408176, at \*4 (M.D.Fla. Nov. 27, 2007) (diarrhea, vomiting, cramps, nausea, and headaches from eating spoiled food on one day not "physical injury" for purposes of PLRA); *Hill v. Williams,* 03-CV-0192, 2005 WL 5993338, at \*4 (N.D.Fla. Oct. 14, 2005) (thirty-minute episode of hyperventilation, accompanied by shortness of breath, swollen tongue, pounding heart, and headache, not "physical injury" for purposes of PLRA); *Mitchell v. Newryder,* 245 F.Supp.2d 200, 203, 205 (D.Me.2003) ("permanent traumatization" not "physical injury" for purposes of PLRA); *Todd v. Graves,* 217 F.Supp.2d 958, 960 (S.D.Iowa 2002) (stress, hypertension, insomnia, dizziness, and loss of appetite not "physical injury" for purposes of PLRA); *Ashann-Ra v. Virginia,* 112 F.Supp.2d 559, 566 (W.D.Va.2000) (psychosomatic conditions, including sexual dysfunction, caused by emotional distress not "physical injury" for purposes of PLRA); *McGrath v. Johnson,* 67 F.Supp.2d 499, 508 (E.D.Pa.1999) (inflamation of pre-existing skin condition caused by emotional trauma not "physical injury" for purposes of PLRA); *Cain v. Vir-*

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
(Cite as: 2008 WL 1772305 (N.D.N.Y.))

gina, 982 F.Supp. 1132, 1135 & n. 3 (E.D.Va.1997) (depression and painful headaches caused by emotional distress not "physical injury" for purposes of PLRA); *Pinkston-Bey v. DeTella,* 96-CV-4823, 1997 WL 158343, at *3 (N.D.Ill. March 31, 1997) (severe headaches caused by emotional distress not "physical injury" for purposes of PLRA).

Finally, for reasons similar to those articulated above, I find that the affidavit submitted by Plaintiff in opposition to Defendant's motion alleges no facts plausibly suggesting that he suffered a *physical injury* as a result of the incident on May 31, 2007 (or even any physical injury as a result of subsequent incidents). (Dkt. No. 18, Plf.'s Affid., ¶¶ 4, 5[A]-[H].)

For all of these reasons, I recommend that the Court dismiss Plaintiff's Complaint for failing to allege facts plausibly suggesting that he experienced any *physical injury* as a result of Defendant's alleged misconduct.

**B. Exhaustion of Available Administrative Remedies**

In addition, the PLRA requires, in pertinent part, that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." FN21 "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." FN22 The Department of Correctional Services ("DOCS") has available a well-established three-step inmate grievance program.FN23

FN21. 42 U.S.C. § 1997e.

FN22. *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

FN23. 7 N.Y.C.R.R. § 701.7.

Generally, the DOCS Inmate Grievance Program ("IGP") involves the following procedure.FN24 *First,* an inmate must file a complaint with the facility's IGP clerk within fourteen (14) calendar days of the alleged occurrence. A representative of the facility's inmate grievance resolution committee ("IGRC") has seven working days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within seven (7) working days of receipt of the grievance, and issues a written decision within two (2) working days of the conclusion of the hearing. *Second,* a grievant may appeal the IGRC decision to the facility's superintendent within four (4) working days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within ten (10) working days of receipt of the grievant's appeal. *Third,* a grievant may appeal to the central office review committee ("CORC") within four (4) working days of receipt of the superintendent's written decision. CORC is to render a written decision within twenty (20) working days of receipt of the appeal.

FN24. 7 N.Y.C.R.R. § 701.7; *see also White v. The State of New York,* 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002).

**\*10** It is important to emphasize that any failure by the IGRC or the superintendent to adequately respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process.FN25 It is also important to emphasize that DOCS provides for an expedited procedure for the review of grievances alleging employee harassment.FN26 While this procedure

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

provides for review of the grievance directly by the facility superintendent, it still requires the filing of a grievance by the inmate.[FN27] Furthermore, the superintendent's decision must be appealed to CORC in order for the inmate to complete the grievance process.[FN28]

> FN25. 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *Hemphill v. New York,* 198 F.Supp.2d 546, 549 (S.D.N.Y.2002), *vacated and remanded on other grounds,* 380 F.3d 680 (2d Cir.2004); *see, e.g .,* *Croswell v. McCoy,* 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003)* (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA."); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him."); *Nimmons v. Silver,* 03-CV-0671, Report-Recommendation, at 15-16 (N.D.N.Y. filed Aug. 29, 2006) (Lowe, M.J.) (recommending that the Court grant Defendants' motion for summary judgment, in part because plaintiff adduced no evidence that he appealed the lack of a timely decision by the facility's IGRC to the next level, namely to either the facility's superintendent or CORC), *adopted by* Decision and Order (N.D.N.Y. filed Oct. 17, 2006) (Hurd, J.).

> FN26. 7 N.Y.C.R.R. § 701.2.

> FN27. *Id.*

> FN28. *Id.*

Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies.[FN29] However, the Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA.[FN30] *First,* "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." [FN31] *Second,* if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." [FN32] *Third,* if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." [FN33]

> FN29. *Rodriguez v. Hahn,* 209 F.Supp.2d 344, 347-48 (S.D.N.Y.2002); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002).

> FN30. *See* *Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004).

> FN31. *Hemphill,* 380 F.3d at 686 (citation omitted).

> FN32. *Id.* [citations omitted].

> FN33. *Id.* [citations and internal quotations omitted].

Before I proceed to an analysis of the

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

above-referenced three-part inquiry established by the Second Circuit, I should briefly discuss the appropriateness (or inappropriateness) of a failure-to-exhaust argument during a motion to dismiss for failure to state a claim upon which relief might be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

For some years now, it has been the majority rule (followed by the Second Circuit) that a prisoner's fulfillment of his duty to exhaust his available administrative remedies under the Prison Litigation Reform Act ("PLRA") is not a fact that the prisoner had to plead in order to state a claim under 42 U.S.C. § 1983 but a fact that may be challenged by a defendant through an affirmative defense (such as on a motion for summary judgment pursuant to Fed.R.Civ.P. 56, or a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12[b][1] ) established by the PLRA. See, e.g., Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir.1999) ("Because, under the PLRA, a prisoner must exhaust administrative remedies before filing a § 1983 suit ..., a defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements."); Snider v. Melindez, 199 F.3d 108, 114 (2d Cir.1999) ("A court may not dismiss for failure to exhaust administrative remedies unless the court determines that such remedies are available. Snider's answers [on a form complaint] cannot establish that.").

**\*11** Recently, the Supreme Court upheld this interpretation of the exhaustion requirement, prohibiting circuits (such as the Sixth, Tenth and Eleventh Circuits) from using exhaustion as a heightened pleading requirement in prisoner civil rights case. See Jones v. Block, 127 S.Ct. 910, 914-915, 918-923 (2007). A prisoner has no independent duty to plead facts plausibly suggesting that he exhausted his available administrative remedies, in order to state an actionable claim under 42 U.S.C. § 1983. Block, 127 S.Ct. at 919-21. "[T]his is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a

claim." Id. at 921. If a prisoner chooses to plead facts regarding exhaustion, and those facts plausibly suggest that he failed to exhaust his available administrative remedies, then his Complaint may be dismissed for failure to state a claim. Id. at 920-21. Simply stated, if a prisoner says nothing or little about exhaustion in his pro se civil rights complaint, he is likely protected from a Fed.R.Civ.P. 12(b)(6) motion to dismiss premised on failure to exhaust. However, if he says too much about exhaustion in that complaint so that his non-exhaustion is readily apparent, he may "plead himself out of court," as the saying goes. This is what has happened here, according to Defendants.

**1. Availability of Administrative Remedies**

With regard to the first inquiry (i.e., whether the administrative remedies not pursued by Plaintiff were in fact available to Plaintiff), I answer this question in the affirmative, based on even the most liberal of constructions of Plaintiff's Complaint. More specifically, I find that Plaintiff has not alleged any facts plausibly suggesting that administrative remedies were not available to prisoners at Greene C.F. during the time in question (i .e., between the occurrence of the event in question, on May 31, 2007, and the expiration of the deadline by which to file a grievance 14 days later, on or about June 14, 2007). Indeed, Plaintiff quite expressly alleges that there was a prisoner grievance procedure at Greene C.F. (Dkt. No. 1, ¶ 4[a] [Plf.'s Compl.].)

Furthermore, even if (out of special solicitude to Plaintiff I were to consider the factual allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion. None of those documents assert any allegations plausibly suggesting that administrative remedies were not available to prisoners (and Plaintiff in particular) at Greene C.F. during the time in question. (See Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf .'s Letter filed 8/8/07]; Dkt. No. 15 [Plf.'s

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

Letter filed 8/29/07]; Dkt. No. 18 [Plf.'s Opposition Papers].)

## 2. Estoppel

With regard to the second inquiry (i.e., whether Defendant's own actions inhibited Plaintiff's exhaustion of remedies so as to estop Defendant from raising Plaintiff's failure to exhaust as a defense), I answer this question in the negative, based on even the most liberal of constructions of Plaintiff's Complaint. In his Complaint, Plaintiff alleges no facts plausibly suggesting that Defendant took any actions whatsoever that inhibited Plaintiff from exhausting his available administrative remedies at Greene C.F. during the time in question (i.e., between the occurrence of the event in question, on May 31, 2007, and the expiration of the deadline by which to file a grievance 14 days later, on or about June 14, 2007). Rather, Plaintiff alleges that he chose to not present the facts relating to his Complaint in the prison's grievance program "[b]ecause I fear retaliation from officers and the officer [I]'m fil [ ]ing against brag[s] about the grievance system not working and he claims his uncle is a superintendent [at Greene C.F.]." (*Id.*) Plaintiff's feeling of fear of "retaliation from [unidentified] officers" is completely unexplained and wholly conclusory. Furthermore, Defendant's action of "brag[ing] about the grievance system not working" and claiming that his uncle was a superintendent at Greene C.F. in no way constitutes an *action* by Defendant that inhibited Plaintiff from filing a grievance at Greene C.F. about the events giving rise to his claims in this action. At best, these statements by Defendant constituted an indication that Plaintiff might be *unsuccessful* in the grievance process before any appeal reached to the final level of review, by DOCS' Central Office Review Committee ("CORC"). Notifying an inmate of the *prospect* of *initial* failure (due to alleged antipathy for inmates or even sympathy for correctional officers, held by various *other* officials, participating in the grievance process) is hardly the sort of adverse *action* that is required to estop a correctional officer from asserting the legal defense of non-exhaustion.

**\*12** Nor do the other factual allegations of Plaintiff's Complaint plausibly suggest that Defendant took any actions that inhibited Plaintiff from exhausting his available administrative remedies at Greene C.F. so as to estop Defendant from raising Plaintiff's failure to exhaust as a defense. Plaintiff alleges, on May 31, 2007, Defendant (1) told Plaintiff to "stop eye balling him" or he would "pull [Plaintiff's] eyes from [his] skull," (2) "slap[ped] [Plaintiff] on the side of his head," and (3) placed a pocket knife to *his own face* and threatened to cut *his own face* and blame it on Plaintiff in order to let the other inmates know he was not "play[ing]" around. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].) The problem with these allegations (at least from Plaintiff's perspective) is that they have absolutely nothing to do with the filing of any grievance, or even the making of any verbal complaint, by Plaintiff. Simply stated, while the alleged conduct is (of course) deplorable, it did not (as alleged) have either the design or effect of preventing Plaintiff from exhausting his administrative remedies.

Morever, even if (out of special solicitude to Plaintiff) I were to consider the factual allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion. None of those documents allege facts plausibly suggesting that Defendant's own actions inhibited Plaintiff's exhaustion of remedies during the time in question. (*See* Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf.'s Letter filed 8/8/07]; Dkt. No. 15 [Plf.'s Letter filed 8/29/07]; Dkt. No. 18 [Plf.'s Opposition Papers].)

In particular, Plaintiff's letter to the Court of June 22, 2007, alleges that, on June 18, 2007, Defendant "intimidat[ed]" and "taunt[ed]" Plaintiff by saying to other inmates, "McCloud knows I [don't] play" around. (Dkt. No. 6.) This allegation fails for the same

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

reason as the allegation about Defendant's earlier comments to Plaintiff fails: it had absolutely nothing to do with the filing of any grievance, or the making of any complaint, by Plaintiff. Moreover, Defendant's utterance of these words occurred on June 22, 2007, more than a *week* after Plaintiff had decided not to exhaust his available administrative remedies. (The deadline by which Plaintiff had to file a grievance regarding the incident on May 31, 2007, expired on or about June 14, 2007.) [FN34] Thus, it could not have possibly inhibited Plaintiff from exhausting his available administrative remedies.

> [FN34]. As described above, an inmate must file a complaint with the facility's IGP clerk within 14 calendar days of the alleged occurrence.

Plaintiff's letter to the Court of August 8, 2007, alleges that, on July 14, 2007, Defendant said to Plaintiff, "I spok[e] to the Imam [about] what[']s going on[.] [Y]ou can talk to me man to man." (Dkt. No. 12.) An attempt to informally resolve a dispute (which is encouraged in DOCS' grievance process) is not an act inhibiting an inmate from exhausting his available administrative remedies. Plaintiff's letter of August 8, 2007, further alleges that on July 24, 2007, persons *other than Defendant* coerced Plaintiff into making a false statement about what had taken place between Plaintiff and Defendant. (*Id.*) Plaintiff alleges no action by *Defendant* on July 24, 2007. Nor does Plaintiff explain how the false statement on *July* 14, 2007-whatever that false statement may have been-in any way caused his decision by *June* 14, 2007, not to exhaust his available administrative remedies.

**\*13** Plaintiff's letter to the Court of August 29, 2007, alleges that Plaintiff obtained reason to "fear" that Defendant was responsible for the delayed arrival of a piece of his legal mail on August 21, 2007. (Dkt. No. 15.) However, the sole reason for this fear was the (alleged) fact that Defendant "had access to all inmate[']s legal mail." (Dkt. No. 15.) Moreover, this fear

occurred on August 21, 2007, which was more than *two months* after Plaintiff had decided to not exhaust his available administrative remedies by June 14, 2007.

In an affidavit submitted in opposition to Defendant's motion, Plaintiff swears that, before the incident on May 31, 2007, a fellow inmate, Saheithe Pigford, filed both a federal court action and a grievance against Officer Turriglio and was "beaten on several occasions, threaten[ed] and had his personal area searched during late evening or at predawn hours." (Dkt. No. 18, Plf.'s Affid., ¶ 4.) Plaintiff also swears that, on May 31, 2007, "Plaintiff was aware of what had happened to ... [Inmate] Shakeith Pigford as a result of filing his grievance [against Officer Turriglio]" since the "Pigford ... incident[ ] occurred prior to that of the plaintiffs' [sic]." (*Id.* at ¶ 5[A].)

For the sake of argument, I will assume that Plaintiff is swearing that Mr. Pigford was beaten *by Officer Turriglio* (since actions *by third-persons* can hardly estop Officer Turriglio from asserting Plaintiff's failure to exhaust as a legal defense). The problem with Plaintiff's sworn assertion is that it is so patently false as to be implausible (if not sanctionable). I take judicial notice of the fact that Inmate Pigford did not file the action to which Plaintiff is referring (which is the only federal court action that has been filed by Shakeith Pigford, according to the Federal Judiciary's PACER service) until nearly *a month after* the incident giving rise to the current action, on May 31, 2007. *See Pigford v. Turriglio,* 07-CV-0687, Complaint (N.D.N.Y. filed June 29, 2007, and dated June 25, 2007). Furthermore, I take judicial notice of the fact that the event giving rise to Inmate Pigford's action against Officer Turriglio did not occur until *three days after* the event giving rise to the current action, on May 31, 2007. *See Pigford v. Turriglio,* 07-CV-0687, Complaint, ¶ 6 (N.D.N.Y.). No mention is made in Inmate Pigford's Complaint as to when he filed his grievance and was assaulted. *Id.* at ¶¶ 4(b), 6. However, given the clear factual inaccuracies of

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
(Cite as: 2008 WL 1772305 (N.D.N.Y.))

Plaintiff's other sworn statements regarding Inmate Pigford's experience, I find that Plaintiff's allegation that Inmate Pigford's experience dissuaded Plaintiff from filing a grievance in this action (from May 31, 2007, to June 14, 2007) to be wholly *implausible.*

Furthermore, because I find that the absence of this factual allegation (regarding Inmate Pigford's having been assaulted for filing a grievance against Officer Turriglio) from Plaintiff's Complaint (which is otherwise quite specific as to why Plaintiff "fear[ed] retaliation" if he filed a grievance) to be conspicuous, I find that this late-blossoming factual allegation to be *inconsistent* with the factual allegations of Plaintiff's Complaint. Therefore, I find that this portion of Plaintiff's Opposition Affidavit may not serve to effectively amend Plaintiff's Complaint. (*See, supra,* note 17 of this Report-Recommendation [citing cases].)

**\*14** In his affidavit, Plaintiff also swears that, before the incident on May 31, 2007, a fellow inmate, Mohammed Montalvo, filed a grievance against Officer Turriglio for "brandish[ing] a knife" and was "threaten[ed] thereafter with bodily harm until he agreed to sign-off [sic] on the grievance...." (Dkt. No. 18, Plf.'s Affid., ¶ 4.) For the sake of brevity, I will set aside the fact that Plaintiff does not assert precisely *when* Inmate Montalvo was so threatened. I will also set aside incredulity with which I view this late-blossoming, self-serving sworn statement, given Plaintiff's other misrepresentations to the Court-discussed above, and below. (*See, infra,* Part III.C. of this Report-Recommendation.) The more important fact is that Plaintiff does not allege that it was *Officer Turriglio* who threatened Inmate Montalvo with bodily harm. Again, actions *by third-persons* cannot estop Officer Turriglio from asserting Plaintiff's failure to exhaust as a legal defense. Moreover, because of the conspicuous absence of this factual allegation (regarding Inmate Montalvo's having been threatened for filing a grievance against Officer Turriglio) from Plaintiff's Complaint (which is

otherwise quite specific as to why Plaintiff "fear[ed] retaliation" if he filed a grievance), I find that this factual allegation to be *inconsistent* with the factual allegations of Plaintiff's Complaint. Therefore, I find that this portion of Plaintiff's Opposition Affidavit may not serve to effectively amend Plaintiff's Complaint. (*See, supra,* note 17 of this Report-Recommendation [citing cases].)

Finally, in his affidavit, Plaintiff swears that he experienced several other adverse actions following the incident in question on May 31, 2007. As an initial matter, the vast majority of this asserted misconduct was committed by correctional officers at Greene C.F. other than Defendant. More importantly, all of this misconduct occurred between July 24, 2007, and October 9, 2007-*well after* the expiration of the June 14, 2007, deadline by which he had to file a grievance regarding the incident giving rise to this action. (*See* Dkt. No. 18, Plf.'s Affid., ¶¶ 5[D]-[H].) Thus, it is impossible for this misconduct to have been the reason that Plaintiff chose not to file a grievance against Defendant between May 31, 2007, and June 14, 2007.

### 3. "Special Circumstances" Justifying Failure to Exhaust

With regard to the third inquiry (i.e., whether Plaintiff has plausibly alleged *special circumstances* justifying his failure to comply with the administrative procedural requirements), I answer this question in the negative, also based on even the most liberal of constructions of Plaintiff's Complaint. Plaintiff has not alleged that, during the time in question, he was laboring under any sort of physical infirmity, or reasonable misunderstanding of the law, which impeded his attempts to complain. Indeed, he has not even alleged, in his Complaint, that he *attempted* to complain, for example, by sending a letter of complaint directly to CORC, the DOCS' Commissioner, or a Deputy Commissioner (which prisoners occasionally do in analogous circumstances).

**\*15** Morever, even if (out of special solicitude to

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

Plaintiff) I were to consider the factual allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion. None of those documents allege facts plausibly suggesting the existence of any special circumstances justifying Plaintiff's failure to pursue (and exhaust) his administrative remedies during the time in question (i.e., between the occurrence of the event in question, on May 31, 2007, and the expiration of the deadline by which to file a grievance 14 days later, on or about June 14, 2007). (*See* Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf .'s Letter filed 8/8/07]; Dkt. No. 15 [Plf.'s Letter filed 8/29/07]; Dkt. No. 18 [Plf.'s Opposition Papers].) I note that Plaintiff swears that, between June 3, 2007, and June 5, 2007, he wrote letters of complaint to both the New York State Inspector General's Office, and the Superintendent of Greene C.F., regarding the incident on May 31, 2007. (*See* Dkt. No. 18, Plf.'s Affid., ¶¶ 5[B]-[C].) However, Plaintiff does not explain why the "letter of complaint" that he sent to the superintendent was not in the form of a grievance filed with the Greene C.F. IGRC, as required by 7 N.Y.C.R.R. § 701.1. Nor does Plaintiff explain why he failed to write to CORC, following whatever action the superintendent did or did not take with respect to the "letter of complaint." Nor does Plaintiff allege that, during the time in question, he was laboring under any sort of physical infirmity, or reasonable misunderstanding of the law, which impeded his attempts to file a formal grievance with the Greene C.F. IGRC, or at least write a letter of complaint to CORC.

For all of these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's Complaint for alleging facts plausibly suggesting that he failed to exhaust his available administrative remedies following the incident on May 31, 2007.

**C. Second Alternative Ground for Dismissal: Misrepresentations to Court**

As stated above in this Report-Recommendation, Plaintiff has, in a sworn statement, falsely stated to the Court that, when the incident in question occurred on May 31, 2007, Plaintiff was aware that a fellow inmate (Shakeith Pigford) had been retaliated against for having filed a grievance against Officer Turriglio-a temporal impossibility since the event giving rise to Inmate Pigford's grievance had not even yet occurred as of May 31, 2007. (*See, supra,* Part III.B.2. of this Report-Recommendation.) This is not the only misrepresentation that Plaintiff has made to the Court.

As of the date he filed this action on June 16, 2007, Plaintiff had acquired two "strikes" for purposes of 28 U.S.C. § 1915's so-called "three strikes rule." *See McCloud v. D.O. C.,* 06-CV-14278 (S.D.N.Y.) (prisoner civil rights case filed by an inmate bearing New York City Department of Correction Identification Number 141-06-05253, with a date of birth of 9/1/74; dismissed *sua sponte* for failure to state a claim pursuant to 28 U.S.C. § 1915 on 12/8/06); *McCloud v. D.O.C.,* 06-CV-14279 (S.D.N.Y.) (prisoner civil rights case by an inmate bearing New York City Department of Correction Identification Number 141-06-05253, with a date of birth of 9/1/74; dismissed *sua sponte* for failure to state a claim pursuant to 28 U.S.C. § 1915 on 12/8/06).

**\*16** Plaintiff failed to disclose these two cases in Paragraph 5 of his sworn Complaint, where he checked the box labeled "Yes" next to the question "Have you ever filed any other lawsuits in any state or federal court relating to his imprisonment?" but then listed only one such lawsuit (i.e., *McCloud v. Buckhalter,* 07-CV-4576 [S.D.N.Y.] ) in response to the form complaint's directive: "If your answer to 5(a) is YES you must describe any and all lawsuits, currently pending or closed, in the space provided on the next page." (Dkt. No. 1, ¶ 5 [Plf.'s Compl.].)

While a plaintiff is under no duty to provide this information in order to state an actionable civil rights claim, here, Plaintiff *chose* to answer a question on a

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

form complaint calling for such information, and *swore* to the truthfulness of his answer. There is simply no excuse for making such a sworn misrepresentation to the Court. District Judges from this Court have indicated a willingness to sanction *pro se* litigants for making such misrepresentations. *See, e.g., Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at *13-14 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting, on *de novo* review, Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *6 & n. 32 (N.D.N.Y. July 11, 2007) (McAvoy, J., adopting, on plain-error review, Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint) [collecting cases]. I have considered less drastic sanctions and have found them to be inadequate to curb this particular intentional and egregious litigation abuse.

For these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's Complaint *sua sponte,* under Fed.R.Civ.P. 11, as a sanction for making multiple sworn misrepresentations to the Court.

**D. Third Alternative Ground for Dismissal: Unavailability of Relief Requested**

As stated above in Part I.A. of this Report-Recommendation, as a result of the misconduct alleged in this action, Plaintiff is requesting three forms of relief: (1) a court order "secur[ing] [Plaintiff's] safety and mak[ing] sure there will be [ ]no[ ] retaliation from coworkers or staff"; (2) a court order directing that a search be performed of Defendant's "file to see if [a]ny complaints or grievances [have] been filed against him in the past concerning brutality"; and (3) "$1,000,000 for mental anguish and distress." (Dkt. No. 1, ¶¶ 7, 9 [Plf.'s Compl.].)

I find that the first two forms of relief are able to be, and should be, denied on the alternative ground that Plaintiff has alleged no facts plausibly suggesting his entitlement to either form of relief. The first form of relief, which is essentially an injunction or temporary restraining order, must be supported by documents showing cause for the granting of the requested relief-which Plaintiff's Complaint does not do. *See* Fed.R.Civ.P. 65; N.D.N.Y. L.R. 65.1, 65.2, 7.1(f), 7.1(b)(2), 7.1(e). The second form of relief is merely a vehicle by which Plaintiff may embark on a fishing expedition to obtain facts that would enable him to assert an actionable legal claim against Defendant. Rule 8 of the Federal Rules of Civil Procedure-which requires that a plaintiff must assert enough facts in his complaint (and thus be in possession of such basic facts *before* he files the complaint) to give a defendant *fair notice* of the claim against him-does not permit such a "bootstrap" pleading. [FN35] Nor does Plaintiff even provide cause in support of what is essentially a request for discovery.

FN35. *See Balliett v. Heydt,* 95-CV-5184, 1997 U.S. Dist. LEXIS 14913, at *3-9, 29 (E.D.Pa. Sept. 25, 1997) (referring to a similar attempt to state a claim-based on information generated in 1997, several years after the filing of the complaint in 1995-as a "means of circular pleading and bootstrapping"); *Hill v. Austin,* 89-CV-7790, 1997 U.S. Dist. LEXIS 11737, at *10 (N.D.Ill. Sept. 6, 1990) ("Hill cannot bootstrap his [untimely and therefore non-actionable] complaints dealing with the years 1976 through 1982 through his timely filing of the complaint on the 1985 involuntary detail."); *cf. City of New York v. Permanent Mission of India to the U.N.,* 446 F.3d 365, 377 (2d Cir.2006) (referring to an analogous attempt to state a claim as a "use [of] creative pleading to 'bootstrap' claims" that were otherwise unavailable to the plaintiff); *Scott v. Johnson,* 95-CV-0403, 1995 U.S. Dist.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

LEXIS 22445, at *6 (W.D.Mich. July 28, 1995) ("A prison inmate cannot bootstrap his complaints with conclusory allegations of retaliation ....") [citation omitted].

**\*17** For these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's Complaint *sua sponte,* under 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b),[FN36] to the extent that the Complaint requests, as relief for the constitutional violation(s) alleged, (1) a court order "secur[ing] [Plaintiff's] safety and mak[ing] sure there will be [ ]no[ ] retaliation from coworkers or staff," and (2) a court order directing that a search be performed of Defendant's "file to see if [a]ny complaints or grievances [have] been filed against him in the past concerning brutality." (Dkt. No. 1, ¶¶ 7, 9 [Plf.'s Compl.].)

FN36. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis]* at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted [,] ... or ... seeks monetary relief against a defendant who is immune from such relief"); 28 U.S.C. § 1915A(b) ("On review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted....").

**ACCORDINGLY,** for the reasons stated above, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 42) be *GRANTED;* and it is further

**RECOMMENDED** that, when dismissing Plaintiff's Complaint (Dkt. No. 1), the Court state that the dismissal constitutes a "strike" for purposes of 28 U.S.C. § 1915(g); and it is further

**RECOMMENDED** that the Court certify in writing, for purposes of 28 U.S.C. § 1915(a)(3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE RE-VIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec 'y of Health and Human Servs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2008.
McCloud v. Tureglio
Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
N.D. New York.
James MURRAY, Plaintiff,
v.
R. PALMER; S. Griffin; M. Terry; F. Englese; Sergeant Edwards; K. Bump; and K.H. Smith, Defendants.

No. 9:03-CV-1010 (GTS/GHL).
March 31, 2010.

James Murray, Malone, NY, pro se.

Bosman Law Office, AJ Bosman, Esq., of Counsel, Rome, NY, for Plaintiff.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Timothy Mulvey, Esq., James Seaman, Esq., Assistant Attorneys General, of Counsel, Albany, NY, for Defendants.

***DECISION and ORDER***
Hon. GLENN T. SUDDABY, District Judge.

**\*1** The trial in this prisoner civil rights action, filed *pro se* by James Murray ("Plaintiff") pursuant to 42 U.S.C. § 1983, began with an evidentiary hearing before the undersigned on March 1, 2010, regarding the affirmative defense of seven employees of the New York State Department of Correctional Services-R. Palmer, S. Griffin, M. Terry, F. Englese, Sergeant Edwards, K. Bump, and K.H. Smith ("Defendants")-that Plaintiff failed to exhaust his available

administrative remedies, as required by the Prison Litigation Reform Act, before filing this action on August 14, 2003. At the hearing, documentary evidence was admitted, and testimony was taken of Plaintiff as well as Defendants' witnesses (Darin Williams, Sally Reams, and Jeffery Hale), whom Plaintiff was able to cross-examine through *pro bono* trial counsel. At the conclusion of the hearing, the undersigned indicated that a written decision would follow. This is that written decision. For the reasons stated below, Plaintiff's Second Amended Complaint is dismissed because of his failure to exhaust his available administrative remedies.

**I. RELEVANT LEGAL STANDARD**

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U .S.C. § 1997e. The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle,* 534 U.S. 516, 524-25, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). In this regard, exhaustion serves two major purposes. First, it protects "administrative agency authority" by giving the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures." *Woodford v. Ngo,* 548 U.S. 81, 89, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Second, exhaustion promotes efficiency because (a) "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," and (b)

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**

respond to a grievance or first-level appeal, respectively, can-and must-be appealed to the next level, including CORC, to complete the grievance process.[FN4] There appears to be a conflict in case law regarding whether the IGRC's nonresponse must be appealed to the superintendent where the plaintiff's grievance was never assigned a grievance number.[FN5] After carefully reviewing this case law, the Court finds that the weight of authority appears to answer this question in the affirmative.[FN6] The Court notes that, if the plaintiff adequately describes, in his appeal to the superintendent, the substance of his grievance (or if the plaintiff attaches, to his appeal, a copy of his grievance), it would appear that there is something for the superintendent to review.

FN3. *Groves v. Knight,* 05-CV-0183, Decision and Order at 3 (N.D.N.Y. filed Aug. 4, 2009) (Suddaby, J.).

FN4. 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *Hemphill v. New York,* 198 F.Supp.2d 546, 549 (S.D.N.Y.2002), *vacated and remanded on other grounds,* 380 F.3d 680 (2d Cir.2004); *see, e.g .,* DOCS Directive 4040 dated 8/22/03, ¶ VI.G. ("Absent [a time limit extension granted by the grievant], matters not decided within the time limits may be appealed to the next step."); *Pacheco v. Drown,* 06-CV-0020, 2010 WL 144400, at *19 & n. 21 (N.D.N.Y. Jan.11, 2010) (Suddaby, J.) ("It is important to note that any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process."), *accord, Torres v. Caron,* 08-CV-0416, 2009 WL 5216956, at *5 & n. 28 (N.D.N.Y. Dec.30, 2009) (Mordue, C.J.), *Benitez v. Hamm,* 04-CV-1159, 2009 WL 3486379, at *13 & n. 34 (N.D.N.Y.

Oct.21, 2009) (Mordue, C.J.), *Ross v. Wood,* 05-CV-1112, 2009 WL 3199539, at *11 & n. 34 (N.D.N.Y. Sept.30, 2009) (Scullin, J.), *Sheils v. Brannen,* 05-CV-0135, 2008 WL 4371776, at *6 & n. 24 (N.D.N.Y. Sept.18, 2008) (Kahn, J.), *Murray v. Palmer,* 03-CV-1010, 2008 WL 2522324, at *15 & n. 46 (N.D.N.Y. June 20, 2008) (Hurd, J.), *McCloud v. Tureglio,* 07-CV-0650, 2008 WL 17772305, at *10 & n. 25 (N.D.N.Y. Apr. 15, 2008) (Mordue, C.J.), *Shaheen v. McIntyre,* 05-CV-0173, 2007 WL 3274835, at *14 & n. 114 (N.D.N.Y. Nov.5, 2007) (McAvoy, J.); *Nimmons v. Silver,* 03-CV-0671, Report-Recommendation, at 15-16 (N.D.N.Y. filed Aug. 29, 2006) (Lowe, M.J.) (recommending that the Court grant Defendants' motion for summary judgment, in part because plaintiff adduced no evidence that he appealed the lack of a timely decision by the facility's IGRC to the next level, namely to either the facility's superintendent or CORC), *adopted by* Decision and Order (N.D.N.Y. filed Oct. 17, 2006) (Hurd, J.); *Gill v. Frawley,* 02-CV-1380, 2006 WL 1742738, at *11 & n. 66 (N.D.N.Y. June 22, 2006) (McAvoy, J.) ("[A]n inmate's mere attempt to file a grievance (which is subsequently lost or destroyed by a prison official) is not, in and of itself, a reasonable effort to exhaust his administrative remedies since the inmate may still appeal the loss or destruction of that grievance."); *Walters v. Carpenter,* 02-CV-0664, 2004 WL 1403301, at *3 (S.D.N.Y. June 22, 2004) ("[M]atters not decided within the prescribed time limits must be appealed to the next level of review."); *Croswell v. McCoy,* 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003) (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**

as required by the PLRA."); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him.").

FN5. *Compare Johnson v. Tedford,* 04-CV-0632, 616 F.Supp.2d 321, 326 (N.D.N.Y.2007) (Sharpe, J.) ("[W]hen a prisoner asserts a grievance to which there is no response, *and it is not recorded or assigned a grievance number,* administrative remedies may be completely exhausted, as there is nothing on record for the next administrative level to review.") [emphasis in original, and citations omitted] *with Waters v. Schneider,* 01-CV-5217, 2002 WL 727025, at *2 (S.D.N.Y. Apr.23, 2002) (finding that, in order to exhaust his available administrative remedies, plaintiff had to file an appeal with the superintendent from the IGRC's non-response to his grievance, of which no record existed).

FN6. *See, e.g., Murray v. Palmer,* 03-CV-1010, 2008 WL 2522324, at *16, 18 (N.D.N.Y. June 20, 2008) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (finding that, in order to exhaust his available administrative remedies with regard to his grievance of August 30, 2000, plaintiff had to file an appeal with the superintendent from the IGRC's non-response to that grievance, which included a failure to acknowledge the receipt of the grievance and assign it a number); *Midalgo v. Bass,* 03-CV-1128, 2006 WL 2795332, at *7 (N.D.N.Y. Sept.26, 2006) (Mordue, C.J., adopting Report-Recommendation of Treece, M.J.) (observing that plaintiff was "requir[ed]" to seek an appeal to the superintendent, even though he never received a response to his grievance

of April 26, 2003, which was never assigned a grievance number); *Collins v. Cunningham,* 06-CV-0420, 2009 WL 2163214, at *3, 6 (W.D.N.Y. July 20, 2009) (rejecting plaintiff's argument that his administrative remedies were not available to him where his grievance of March 20, 2004, was not assigned a grievance number); *Veloz v. New York,* 339 F.Supp.2d 505, 515-16 (S.D.N.Y.2004) (rejecting inmate's argument that the prison's grievance procedure had been rendered unavailable to him by the practice of prison officials' losing or destroying his grievances, because, *inter alia,* "there was no evidence whatsoever that any of [plaintiff's] grievances were filed with a grievance clerk," and he should have "appeal[ed] these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming"); *cf. Hernandez v. Coffey,* 582 F.3d 303, 305, 309, n. 3 (2d Cir.2009) ("Our ruling in no way suggests that we agree with Hernandez's arguments regarding exhaustion or justification for failure to exhaust [which included an argument that the Inmate Grievance Program was not available to him because, when he filed a grievance at the first stage of the Program, he received no response and his grievance was not assigned a grievance number].").

It is also important to note that DOCS has a *separate and distinct* administrative appeal process for inmate misbehavior hearings:

A. For Tier III superintendent hearings, the appeal is to the Commissioner's designee, Donald Selsky, D.O.C.S. Director of Special Housing/Inmate Disciplinary Program, pursuant to 8 N.Y.C.R.R. § 254.8;

B. For Tier II disciplinary hearings, the appeal is to

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**

the facility superintendent pursuant to 7 N.Y.C.R.R. § 253.8; and

C. For Tier I violation hearings, the appeal is to the facility superintendent or a designee pursuant to 7 N.Y.C.R.R. § 252.6.

**\*3** "An individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered nongrievable." 7 N.Y.C.R.R. § 701.3(e)(1). Similarly, "an individual decision or disposition resulting from a disciplinary proceeding ... is not grievable." 7 N.Y.C.R.R. § 701.3(e)(2). However, "[t]he policies, rules, and procedures of any program or procedure, including those above, are grievable." 7 N.Y.C.R.R. § 701.3(e)(3); *see also* N.Y. Dep't Corr. Serv. Directive No. 4040 at III.E.

Generally, if a prisoner has failed to follow each of the required three steps of the above-described grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies. *Ruggiero v. County of Orange,* 467 F.3d 170, 175 (2d Cir.2006) (citing *Porter,* 534 U.S. at 524). However, the Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004), *accord, Ruggiero,* 467 F.3d at 175. First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill,* 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* [cita-

tions omitted]. Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* [citations and internal quotations omitted].

With regard to this third inquiry, the Court notes that, *under certain circumstances,* an inmate may exhaust his administrative remedies by raising his claim during a related *disciplinary proceeding. Giano v. Goord,* 380 F.3d 670, 678-79 (2d Cir.2004); *Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir.2004).[FN7] However, in essence, the circumstances in question include instances in which (1) the inmate reasonably believed that his "only available remedy" was to raise his claim as part of a tier disciplinary hearing,[FN8] *and* (2) the inmate articulated and pursued his claim in the disciplinary proceeding in a manner that afforded prison officials the time and opportunity to thoroughly investigate that claim.[FN9] Some district courts have found the first requirement not present where (a) there was nothing objectively confusing about the DOCS regulations governing the grievability of his claim,[FN10] (b) the inmate was specifically informed that the claim in question was grievable,[FN11] (c) the inmate separately pursued the proper grievance process by filing a grievance with the IGRC,[FN12] (d) by initially alleging that he did appeal his claim to CORC (albeit without proof), the inmate has indicated that, during the time in question, he understood the correct procedure for exhaustion,[FN13] and/or (e) before and after the incident in question, the inmate pursued similar claims through filing a grievance with the IGRC.[FN14] Other district courts have found the second requirement not present where (a) the inmate's mention of his claim during the disciplinary hearing was so insubstantial that prison officials did not subsequently investigate that claim,[FN15] and/or (b) the inmate did not appeal his disciplinary hearing conviction.[FN16]

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
(Cite as: 2010 WL 1235591 (N.D.N.Y.))

FN7. The Court recognizes that the Supreme Court's decision in *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), may have changed the law regarding possible exceptions to the exhaustion requirement (and thus the possibility that exhaustion might occur through the disciplinary process). Specifically, in *Woodford,* the Supreme Court held that the PLRA required "proper" exhaustion as a prerequisite to filing a section 1983 action in federal court. *Woodford,* 548 U.S. at 93. "Proper" exhaustion means that the inmate must complete the administrative review process *in accordance with the applicable procedural rules,* as a prerequisite to bringing suit in federal court. *Id.* at 88-103 (emphasis added). It is unclear whether *Woodford* has overruled any decisions that recognize "exceptions" to the exhaustion requirement. Out of special solicitude to Plaintiff, the Court will assume that *Woodford* has not overruled the Second Circuit's *Giano-Testman* line of cases.

FN8. *Giano,* 380 F.3d at 678 ("[W]hile Giano was required to exhaust available administrative remedies before filing suit, his failure to do so was justified by his reasonable belief that DOCS regulations foreclosed such recourse."); *Testman,* 380 F.3d at 696-98 (remanding case so that district court could consider, *inter alia,* whether prisoner was justified in believing that his complaints in the disciplinary appeal procedurally exhausted his administrative remedies because the prison's remedial system was confusing).

FN9. *Testman,* 380 F.3d at 696-98 (remanding case so that district court could consider, *inter alia.* whether prisoner's submissions in the disciplinary appeals process exhausted his remedies "in a substantive sense" by "afford[ing] corrections officials time and

opportunity to address complaints internally"); *Chavis v. Goord,* 00-CV-1418, 2007 WL 2903950, at *9 (N.D.N.Y. Oct.1, 2007) (Kahn, J.) ("[T]o be considered proper, exhaustion must occur in both a substantive sense, meaning that prison officials are somehow placed on notice of an inmate's complaint, and procedurally, in that it must be presented within the framework of some established procedure that would permit both investigation and, if appropriate, remediation.") [citation omitted]. The Court joins the above-described two requirements in the conjunctive because the Second Circuit has recognized that mere notice to prison officials through informal channels, without more, does not suffice to satisfy the PLRA procedural exhaustion requirement. *See Macias v. Zenk,* No. 04-6131, 495 F.3d 37, at *43-44 (2d Cir.2007) (recognizing that *Woodford v. Ngo,* 548 U.S. 81 [2006], overruled *Braham v. Casey,* 425 F.3d 177 [2d Cir.2005], to the extent that *Braham* held that "informal complaints" would suffice to exhaust a claim).

FN10. *See, e.g., Reynoso v. Swezey,* 423 F.Supp.2d 73, 75 (W.D.N.Y.2006), *aff'd,* 238 F. App'x 660 (2d Cir.2007) (unpublished order), *cert. denied,* 552 U.S. 1207, 128 S.Ct. 1278, 170 L.Ed.2d 109 (2008); *Holland v. James,* 05-CV-5346, 2009 WL 691946, at *3 (S.D.N.Y. March 6, 2009); *Winston v. Woodward,* 05-CV-3385, 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008); *cf. Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *5 & n. 23 (N.D.N.Y. July 11, 2007) (McAvoy, J.) (reciting this point of law in context of failure to appeal grievance determination to CORC).

FN11. *See, e.g., Johnson v. Barney,* 04-CV-10204, 2007 WL 2597666, at *2

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
(Cite as: 2010 WL 1235591 (N.D.N.Y.))

(S.D.N.Y. Aug.30, 2007); *Reynoso,* 423 F.Supp.2d at 75-76.

FN12. *See, e.g., Reynoso,* 423 F.Supp.2d at 75 ("There is no evidence that plaintiff was confused or misled about the proper method for raising his claims. In fact, the record shows exactly the opposite: plaintiff did file a grievance about the incident. He simply failed to appeal the denial of that grievance to CORC."); *Tapp v. Kitchen,* 02-CV-6658, 2004 WL 2403827, at *9 (W.D.N.Y. Oct.26, 2004) ("In the instant case, however, plaintiff does not and cannot claim to have believed that his only available remedy was to raise his complaint as part of his disciplinary hearing, since he also filed a grievance with the Inspector General, and also claims to have filed both an inmate grievance and a separate complaint with the facility superintendent."); *cf. Muniz,* 2007 WL 2027912, at *5 & n. 23 ("Plaintiff's Complaint alleges facts indicating that he believed it necessary to file a grievance with the Gouverneur C.F. IGRC and to appeal the denial of that grievance to the Gouverneur C.F. Superintendent. Why would he not also believe it necessary to take the next step in the exhaustion process and appeal the Superintendent's decision to CORC?").

FN13. *See, e.g., Petrusch v. Oliloushi,* 03-CV-6369, 2005 WL 2420352, at *5 (W.D.N.Y. Sept.30, 2005) ("[A]s to his grievance, which is the subject of this lawsuit, plaintiff does not appear to be contending that he believed the Superintendent's denial constituted exhaustion, since by initially claiming that he did appeal to CORC, albeit without proof, he has demonstrated his knowledge of the correct procedure for exhaustion.").

FN14. *See, e.g., Benjamin v. Comm'r N.Y. State DOCS,* 02-CV-1703, 2007 WL 2319126, at *14 (S.D.N.Y. Aug.10, 2007) ("Benjamin cannot claim that he believed that appealing his disciplinary proceeding was the only available remedy at his disposal in light of the numerous grievances he has filed during his incarceration at Green Haven [both before and after the incident in question]."), *vacated in part on other grounds,* No. 07-3845, 293 F. App'x 69 (2d Cir.2008).

FN15. *See, e.g., Chavis,* 2007 WL 2903950, at *9 ("The focus of a disciplinary hearing is upon the conduct of the inmate, and not that of prison officials.... While the mention of a constitutional claim during plaintiff's disciplinary hearing could potentially have satisfied his substantive exhaustion requirement by virtue of his having notified prison officials of the nature of his claims, he did not fulfill his procedural exhaustion requirement [under the circumstances due to his] ... mere utterance of his claims during the course of a disciplinary hearing .... [T]here is nothing in the record to suggest that when the issues of interference with plaintiff's religious free exercise rights or alleged retaliation for having voiced his concerns were in any way investigated by prison officials.") [citations omitted].

FN16. *See, e.g., Colon v. Furlani,* 07-CV-6022, 2008 WL 5000521, at *2 (W.D.N.Y. Nov.19, 2008) ("Colon was found guilty of harassment based on a letter that he wrote to defendant Bordinaro, concerning some of the events giving rise to his failure-to-protect claim, but it does not appear that he appealed that disposition.... While under some circumstances an inmate may be able to satisfy the exhaustion requirement by appealing from a disciplinary

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**

hearing decision ..., plaintiff did not do so here, and this claim is therefore barred under the PLRA.") [citations omitted]; *Cassano v. Powers,* 02-CV-6639, 2005 WL 1926013, at *5 (W.D.N.Y. Aug.10, 2005) ("[E]ven assuming plaintiff believed that his proper recourse was to raise [his] complaint at his disciplinary hearing, rather than using the Inmate Grievance Program, he did not exhaust that process. That is, plaintiff has not provided any evidence that he appealed his Tier III hearing conviction. Since plaintiff did not pursue even the disciplinary appeal process, he can not have made submissions in the disciplinary process that were sufficient, in a substantive sense, to exhaust his remedies under § 1997e(a).") [internal quotation marks and citation omitted].

**\*4** Finally, two points bear mentioning regarding exhaustion. First, given that non-exhaustion is an affirmative defense, the defendant bears the burden of showing that a prisoner has failed to exhaust his available administrative remedies. *See, e.g., Sease v. Phillips,* 06-CV-3663, 2008 WL 2901966, *4 (S.D.N.Y. July 25, 2008). However, once a defendant has adduced reliable evidence that administrative remedies were available to Plaintiff and that Plaintiff nevertheless failed to exhaust those administrative remedies, Plaintiff must then "counter" Defendants' assertion by showing exhaustion, unavailability, estoppel, or "special circumstances." [FN17]

> FN17. *See Hemphill,* 380 F.3d at 686 (describing the three-part inquiry appropriate in cases where a prisoner plaintiff plausibly seeks to "counter" defendants' contention that the prisoner failed to exhaust his available administrative remedies under the PLRA); *Verley v. Wright,* 02-CV-1182, 2007 WL 2822199, at *8 (S.D.N.Y. Sept.27, 2007) ("[P]laintiff has failed to demonstrate that the administrative remedies were not, in fact,

'actually available to him.' "); *Winston v. Woodward,* 05-CV-3385, 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008) (finding that the plaintiff "failed to meet his burden under *Hemphill* of demonstrating 'special circumstances' "); *see also Ramirez v. Martinez,* 04-CV-1034, 2009 WL 2496647, at *4 (M.D.Pa. Aug.14, 2009) ("In order to effectively oppose defendants' exhaustion argument, the plaintiff has to make a showing in regard to each of his claims."); *Washington v. Proffit,* 04-CV-0671, 2005 WL 1176587, at *1 (W.D.Va. May 17, 2005) ("[I]t is plaintiff's duty, at an evidentiary hearing, "to establish by a preponderance of the evidence that he had exhausted his administrative remedies or that any defendant had hindered or prevented him from doing so within the period fixed by the Jail's procedures for filing a grievance.").

Second, the Court recognizes that there is case law from within the Second Circuit supporting the view that the exhaustion issue is one of fact, which should be determined by a jury, rather than by the Court.[FN18] However, there is also case law from within the Second Circuit supporting the view that the exhaustion issue is one of law, which should be determined by the Court, rather than by a jury.[FN19] After carefully reviewing the case law, the Court finds that the latter case law-which includes cases from the Second Circuit and this District-outweighs the former case law.[FN20] (The Court notes that the latter case law includes cases from the Second Circuit and this District.) [FN21] More importantly, the Court finds that the latter cases are better reasoned than are the former cases. In particular, the Court relies on the reasons articulated by the Second Circuit in 1999: "Where administrative remedies are created by statute or regulation affecting the governance of prisons, ... the answer depends on the meaning of the relevant statute or regulation." *Snider v. Melindez,* 199 F.3d 108, 113-14 (2d Cir.1999). The Court relies also on the

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**

several reasons articulated by Judge Richard A. Posner in a recent Seventh Circuit decision: most notably, the fact that the exhaustion-of-administrative-remedies inquiry does not address the merits of, or deadlines governing, the plaintiff's claim but an issue of "judicial traffic control" (i.e., what forum a dispute is to be resolved in), which is never an issue for a jury but always an issue for a judge. *See Pavey v. Conley,* 544 F.3d 739, 740-42 (7th Cir.2008) (en banc), *cert. denied, --- U.S. ----,* 129 S.Ct. 1620, 173 L.Ed.2d 995 (2009). The Court notes that the First, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits appear to agree with the ultimate conclusion of the Second and Seventh Circuits that the exhaustion issue is properly decided by a judge, not a jury.[FN22]

> FN18. *See, e.g., Lunney v. Brureton,* 04-CV-2438, 2007 WL 1544629, at *10 n. 4 (S.D.N.Y. May 29, 2007) ("There is certainly case law that supports the view that exhaustion should be determined by the Court rather than by a jury. As the Supreme Court has recently affirmed, however, exhaustion is an 'affirmative defense,' much like a statute of limitations defense. Where there are disputed factual questions regarding an affirmative defense such as a statute of limitations defense, the Second Circuit has stated that 'issues of fact as to the application of that defense must be submitted to a jury.' Thus, it is not clear that factual disputes regarding the exhaustion defense should ultimately be decided by the Court."); *Finch v. Servello,* 06-CV-1448, 2008 WL 4527758, at *8 n. 5 (N.D.N.Y. Sept.29, 2008) (McAvoy, J.) (citing *Lunney* and noting that "it is not clear that factual disputes regarding the exhaustion defense should ultimately be decided by the Court").

> FN19. *See, e.g., Harrison v. Goord,* 07-CV-1806, 2009 WL 1605770, at *7 n. 7 (S.D.N.Y. June 9, 2009) (recognizing that "[t]here is authority ... for the position that where questions of fact exist as to whether a plaintiff has exhausted administrative remedies, such fact questions are for the Court, rather than a jury, to decide ...."); *Amador v. Superintend. of Dept. of Corr. Servs.,* 03-CV-0650, 2007 WL 4326747, at *5 n. 7 (S.D.N.Y. Dec.4, 2007) ("It is unclear whether factual disputes regarding the exhaustion defense should ultimately be decided by the court or by a jury.... [T]here is ... case law ... supporting the view that exhaustion should be determined by the court and not a jury."), *appeal pending,* No. 08-2079-pr (2d Cir. argued July 15, 2009).

> FN20. *See, e.g., Mastroianni v. Reilly,* 602 F.Supp.2d 425, 438 (E.D.N.Y.2009) (noting that the magistrate judge held an evidentiary hearing "on the issue of exhaustion"); *Sease v. Phillips,* 06-CV-3663, 2008 WL 2901966, *3 n. 2 (S.D.N.Y. July 25, 2008) (finding that "the better approach is for the judge, and not the jury, to decide any contested issues of fact relating to the defense of failure to exhaust administrative remedies."); *Amador,* 2007 WL 4326747, at *5 n. 7 ("[T]here is ... case law, which in my view is more persuasive and on point, supporting the view that exhaustion should be determined by the court and not a jury. I find it proper that this issue be decided by the court."); *Enigwe v. Zenk,* 03-CV-0854, 2006 WL 2654985, at *4 (E.D.N.Y. Sept.15, 2006) (finding that, at the summary judgment "stage of the proceedings, a genuine question of fact exists with respect to whether [plaintiff] should be excused from exhausting his administrative remedies with regard to claims relating to his confinement at MDC Brooklyn," and therefore "direct[ing] that a hearing be held" before a judge, to resolve this issue); *Dukes v.*

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**

*S.H.U. C.O. John Doe # 1,* 03-CV-4639, 2006 WL 1628487, at *6 (S.D.N.Y. June 12, 2006) (ordering an "evidentiary hearing [before a judge] on the issue of whether prison officials failed to assign grievance numbers to [plaintiff]'s grievances and, if so, whether that rendered further administrative remedies unavailable, estopped the Defendants from asserting non-exhaustion, or justified [plaintiff]'s failure to appeal to the CORC"); *Mingues v. Nelson,* 96-CV-5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb.20, 2004) ("The Court could have *sua sponte* dismiss[ed] this action as the record is unmistakeably clear that an appropriate administrative procedure was available to him, that he was required to exhaust his administrative remedies, and that he failed to do so as required by the PLRA.... In this case, plaintiff has been afforded notice and given an opportunity to respond to the exhaustion issue and his failure remains clear."); *Roland v. Murphy,* 289 F.Supp.2d 321, 323 (E.D.N.Y.2003) "[W]hether the plaintiff has exhausted his administrative remedies is a question for the Court to decide as a matter of law.") [internal quotation marks and citation omitted]; *Evans v. Jonathan,* 253 F.Supp.2d 505, 509 (W.D.N.Y.2003) ( "[W]hether the plaintiff has exhausted his administrative remedies is a question for the Court to decide as a matter of law.").

FN21. *See, e.g., Snider v. Melindez,* 199 F.3d 108, 113-14 (2d Cir.1999) ("Whether an administrative remedy was available to a prisoner in a particular prison or prison system, and whether such remedy was applicable to the grievance underlying the prisoner's suit, are not questions of fact. They either are, or inevitably contain, questions of law. Where administrative remedies are created by statute or regulation affecting the gov-

ernance of prisons, the existence of the administrative remedy is purely a question of law. The answer depends on the meaning of the relevant statute or regulation."), *accord, Mojias v. Johnson,* 351 F.3d 606, 608-11 (2d Cir.2003) (citing relevant language from *Snider v. Melindez,* and later stating that a district court could *sua sponte* dismiss a prisoner's civil rights complaint for failure to exhaust his available administrative remedies if it gave him notice and an opportunity to be heard); *DeBlasio v. Moriarty,* 05-CV-1143, Minute Entry (N.D.N.Y. filed Dec. 9, 2008) (McCurn, J.) (indicating that judge held pre-trial evidentiary hearing on whether plaintiff had exhausted administrative remedies before filing action); *Pierre v. County of Broome,* 05-CV-0332, 2007 WL 625978, at *1 n. 1 (N.D.N.Y. Feb.23, 2007) (McAvoy, J.) (noting that "[t]he court held an evidentiary hearing on October 25, 2006 concerning the issue of whether Plaintiff had exhausted administrative remedies"); *Hill v. Chanalor,* 419 F.Supp.2d 255, 257-59 (N.D.N.Y. March 8, 2006) (Kahn, J.) (*sua sponte* dismissing a prisoner's civil rights complaint, pretrial, for failure to exhaust his available administrative remedies after it gave him notice and an opportunity to be heard); *Raines v. Pickman,* 103 F.Supp.2d 552, 555 (N.D.N.Y.2000) (Mordue, J.) ("[I]n order for the Court to dismiss for failing to exhaust administrative remedies, the Court must be shown that such a remedy exists for an inmate beating in the grievance context. This is an issue of law for the Court to determine.").

FN22. *See Casanova v. Dubois,* 289 F.3d 142, 147 (1st Cir.2002); *Hill v. Smith,* 186 F. App'x 271, 273-74 (3d Cir.2006); *Mitchell v. Horn,* 318 F.3d 523, 529 (3d Cir.2003); *Anderson v. XYZ Corr. Health Servs., Inc.,* 407 F.3d 674, 682-83 (4th Cir.2005); *Dillon v.*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**

*Rogers,* No. 08-30419, 2010 WL 378306, at *7 (5th Cir. Feb.4, 2010); *Taylor v. U.S.,* 161 F. App'x 483, 486 (6th Cir.2005); *Larkins v. Wilkinson,* 172 F.3d 48, at *1 (6th Cir.1998); *Husley v. Belken,* 57 F. App'x 281, 281 (8th Cir.2003); *Ponder v. Wackenhut Corr. Corp.,* 23 F. App'x 631, 631-32 (8th Cir.2002); *Wyatt v. Terhune,* 315 F.3d 1108, 1119-20 (9th Cir.2003), *cert. denied,* 540 U.S. 810 (2003); *Freeman v. Watkins,* 479 F.3d 1257, 1260 (10th Cir.2007); *Alloway v. Ward,* 188 F. App'x 663, 666 (6th Cir.2006); *Bryant v. Rich,* 530 F.3d 1368, 1373-76 (11th Cir.), *cert. denied,* --- U.S. ----, 129 S.Ct. 733, 172 L.Ed.2d 734 (2008).

## II. ANALYSIS

As an initial matter, Plaintiff argues that he exhausted his administrative remedies regarding the claims at issue in this action, by filing a grievance regarding those claims, and then appealing the non-response to that grievance all the way to CORC. Because the Court rejects this argument based on the evidence adduced at the hearing, the Court proceeds to an analysis of the three-step exhaustion inquiry established by the Second Circuit.

### A. Availability of Administrative Remedies

*5 New York prison inmates are subject to an Inmate Grievance Program established by DOCS and recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson,* 96-CV-5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb.20, 2004) (citing *Mojias v. Johnson,* 351 F.3d 606 (2d Cir.2003), and *Snider v. Melindez,* 199 F.3d 108, 112-13 [2d Cir.1999] ). There are different circumstances under which the grievance procedure is deemed not to have been available to an inmate plaintiff. *Hemphill,* 380 F.3d at 687-88. For example, courts have found unavailability "where plaintiff is unaware of the grievance procedures or did not understand it or where defendants' behavior prevents plaintiff from seeking administrative remedies." *Hargrove v. Riley,* 04-CV-4587,

2007 WL 389003, at *8 (E.D.N.Y. Jan.31, 2007) (internal citations omitted). When testing the availability of administrative remedies in the face of claims that undue influence from prison workers has caused a plaintiff inmate to forego the formal grievance process, courts employ an objective test, examining whether "a similarly situated individual of ordinary firmness [would] have deemed them available." *Hemphill,* 380F.3d at 688 (quotations and citations omitted); *see Hargrove,* 2007 WL 389003, at *8.

Here, after carefully considering the evidence submitted at the hearing in this action on March 1, 2010, the Court finds that administrative remedies were "available" to Plaintiff during the time in question. The Court makes this finding for the following four reasons.

First, in his sworn Complaint (which has the force and effect of an affidavit), Plaintiff stated, "Yes," in response to the question, "Is there a prisoner grievance procedure at this facility ." (Dkt. No. 1, ¶ 4.a.) [FN23] Second, both Darin Williams (the corrections officer in charge of the special housing unit during the relevant time period) and Sally Reams (the Inmate grievance program supervisor during the relevant time period) testified credibly, at the exhaustion hearing, that there was a working grievance program at Great Meadow Correctional Facility during the time in question. (Hearing Tr. at 10, 12, 14-21, 40-54.) Third, Plaintiff testified, at the exhaustion hearing that, during this approximate time period (the August to November of 2000), he filed at least three other grievances Great Meadow Correctional Facility, to which he received responses from the inmate grievance clerk, the Superintendent, and CORC. (*Id.* at 154, 157-58, 169-70; *see also* Hearing Exs. D-4, D-5, P-8, P-13, P-14.) [FN24] Fourth, the Court finds the relevant portions of Plaintiff's hearing testimony regarding the grievance at issue in this action to be incredible due to various omissions and inconsistencies in that testimony, and his demeanor during the hearing. (*Id.* at 127-34.) [FN25]

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**

FN23. The Court notes that, in his Complaint, Plaintiff also swore that his "grievance was denied." (Dkt. No. 1, ¶ 4.b.ii.) However, during the exhaustion hearing, Plaintiff testified that he never received a response to his grievance from any member of DOCS.

FN24. In addition, the documentary evidence adduced at the hearing establishes that, in actuality, Plaintiff filed ten other grievances during this time period (and several appeals from the denials of those grievances). The first of these grievances (Grievance Number GM-30651-00), filed on August 25, 2000, regarded Plaintiff's request for medications. (Hearing Exs. D-4, D-5.) The second of these grievances (Grievance Number GM-30691-00), filed on September 1, 2000, regarded Plaintiff's request for copies. (Hearing Ex. D-4.) The third of these grievances (Grievance Number GM-30729-00), filed on September 11, 2000, regarded the use of full restrains against Plaintiff. (*Id.; see also* Hearing Ex. P-14.) The fourth of these grievances, filed on October 19, 2000 (Grievance Number GM-30901-00), regarded Plaintiff's request for the repair of his cell sink. (Hearing Exs. D-4, D-5.) The fifth of these grievances (Grievance Number GM-30901-00), also filed on October 19, 2000, regarded Plaintiff's request for the clean up of his cell. (Hearing Ex. D-4.) The sixth of these grievances (Grievance Number GM-31040-00), filed on November 17, 2000, regarded the review of records. (*Id.*) The seventh of these grievances (Grievance Number GM-31041-00), also filed on November 17, 2000, regarded Plaintiff's request for medical attention. (*Id.;* see also Hearing Ex. P-13) The eighth of these grievances (Grievance Number GM-31048-00), filed on November 20, 2000, regarded the rotation of books. (Hearing Ex. D-14) The ninth of these grievances (Grievance Number GM-31040-00), filed on November 27, 2000, regarded the review of records (and was consolidated with his earlier grievance on the same subject). (*Id.*) The tenth of these grievances (Grievance Number GM-31070-00), filed on November 27, 2000, regarded Plaintiff's eyeglasses. (*Id.*)

FN25. For example, Plaintiff was unable to identify the corrections officers to whom he handed his grievance and appeals for mailing. (*Id.* at 127-34.) Moreover, Plaintiff did not convincingly explain why the grievance and appeals at issue in this action did not make it through the mailing process, while his numerous other grievances and appeals did make it through the mailing process. (*Id.* at 154-171.) In addition, Plaintiff acknowledged that it was his belief, during this time period, that an inmate was not required to exhaust his administrative remedies in matters involving the use of excessive force; yet, according to Plaintiff, he decided to exhaust his administrative remedies on his excessive force claim anyway. (*Id.* at 148-49.)

**B. Estoppel**

After carefully considering the evidence submitted at the hearing in this action on March 1, 2010, the Court finds that Defendants did not forfeit the affirmative defense of non-exhaustion by failing to raise or preserve it, or by taking actions that inhibited Plaintiff's exhaustion of remedies. For example, Defendants' Answer timely asserted this affirmative defense. (Dkt. No. 35, ¶ 17.) Moreover, Plaintiff failed to offer any credible evidence at the hearing that *Defendant* s in any way interfered with Plaintiff's ability to file grievances during the time in question. (Hearing Tr. at 127-34, 157-58, 169-70.) Generally, a defendant in an action may not be estopped from asserting the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**

affirmative defense of failure to exhaust administrative remedies based on the actions (or inactions) of other individuals.[FN26]

> FN26. *See Ruggiero v. County of Orange,* 467 F.3d 170, 178 (2d Cir.2006) (holding that defendants were not estopped from asserting the affirmative defense of non-exhaustion where the conduct plaintiff alleged kept him from filing a grievance-that he was not given the manual on how to grieve-was not attributable to the defendants and plaintiff "point[ed] to no affirmative act by prison officials that would have prevented him from pursuing administrative remedies"); *Murray v. Palmer,* 03-CV-1010, 2008 WL 2522324, at *19 (N.D.N.Y. June 20, 2008) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) ("I have found no evidence sufficient to create a genuine issue of triable fact on the issue of whether Defendants, *through their own actions,* have inhibited Plaintiff exhaustion of remedies so as to estop one or more Defendants from raising Plaintiff's failure to exhaust as a defense.") [emphasis in original]; *Shaheen v. McIntyre,* 05-CV-0173, 2007 WL 3274835, at *16 (N.D.N.Y. Nov.5, 2007) (McAvoy, J. adopting Report-Recommendation of Lowe, M.J.) (finding defendants not estopped from raising Plaintiff's non-exhaustion as a defense based on plaintiff's allegation "that [he] was inhibited (through non-responsiveness) by [ ] unnamed officials at Coxsackie C.F.'s Inmate Grievance Program (or perhaps the Grievance Review Committee), and Coxsackie C.F. Deputy Superintendent of Security Graham" because plaintiff's complaint and "opposition papers ... fail to contain any evidence placing blame on Defendants for the (alleged) failure to address his grievances and complaint letters"); *Smith v. Woods,* 03-CV-0480, 2006 WL 1133247, at *16 (N.D.N.Y. Apr.24, 2006) (Hurd, J. adopting Report-Recommendation of Lowe, M.J.) (finding that defendants are not estopped from relying on the defense of non-exhaustion because "no evidence (or even an argument) exists that any Defendant ... inhibit[ed] Plaintiff's exhaustion of remedies; Plaintiff merely argues that a non-party to this action (the IGRC Supervisor) advised him that his allegedly defective bunk bed was not a grievable matter."); *cf. Warren v. Purcell,* 03-CV-8736, 2004 WL 1970642, at *6 (S.D.N.Y. Sept.3, 2004) (finding that conflicting statements [offered by a non-party]-that the prisoner needed to refile [his grievance] and that the prisoner should await the results of DOCS's investigation-estopped the defendants from relying on the defense on non-exhaustion, or "[a]lternatively, ... provided ... a 'special circumstance' under which the plaintiff's failure to pursue the appellate procedures specified in the IGP was amply justified."); *Brown v. Koenigsmann,* 01-CV-10013, 2005 WL 1925649, at *1-2 (S.D.N.Y. Aug.10, 2005) ("Plaintiff does not assert that Dr. Koeingsmann personally was responsible for [the failure of anyone from the Inmate Grievance Program to address plaintiff's appeal]. [However,] *Ziemba [v. Wezner,* 366 F.3d 161 (2d Cir.2004) ] does not require a showing that Dr. Koenigsmann is personally responsible for plaintiff's failure to complete exhaustion [in order for Dr. Koenigsmann to be estopped from asserting the affirmative defense of failure to exhaust administrative remedies], as long as someone employed by DOCS is. If that reading of Ziemba is incorrect, however, ... then the circumstances here must be regarded as special, and as justifying the incompleteness of exhaustion, since a decision by CORC is hardly something

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**

plaintiff could have accomplished on his own.").

**C. Special Circumstances**

*6 There are a variety of special circumstances that may excuse a prisoner's failure to exhaust his available administrative remedies, including (but not limited to) the following:

(1) The facility's "failure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals-which effectively rendered the grievance appeal process unavailable to him." *Sandlin v. Poole,* 575 F.Supp.2d 484, 488 (W.D.N.Y.2008) (noting that "[s]uch facts support a finding that defendants are estopped from relying on the exhaustion defense, as well as "special circumstances" excusing plaintiff's failure to exhaust");

(2) Other individuals' "threats [to the plaintiff] of physical retaliation and reasonable misinterpretation of the statutory requirements of the appeals process." *Clarke v. Thornton,* 515 F.Supp.2d 435, 439 (S.D.N.Y.2007) (noting also that "[a] correctional facility's failure to make forms or administrative opinions "available" to the prisoner does not relieve the inmate from this burden."); and

(3) When plaintiff tries "to exhaust prison grievance procedures[, and] although each of his efforts, alone, may not have fully complied, together his efforts sufficiently informed prison officials of his grievance and led to a thorough investigation of the grievance." *Hairston v. LaMarche,* 05-CV-6642, 2006 WL 2309592, at *8 (S.D.N.Y. Aug.10, 2006).

After carefully considering the issue, the Court finds that there exists, in this action, no "special circumstances" justifying Plaintiff's failure to comply with the administrative procedural requirements. Construed with the utmost of special leniency, Plain-tiff's hearing testimony, and his counsel's cross-examination of Defendants' witnesses, raise the specter of two excuses for not having exhausted his available administrative remedies before he (alleged-ly) mailed his Complaint in this action on August 14, 2003:(1) that exhaustion was not possible because of the administrative procedures that DOCS has implemented regarding inmate grievances; and/or (2) that an unspecified number of unidentified corrections officers (who are not Defendants in this action) somehow interfered with the delivery of his grievance and appeals. For example, Plaintiff testified at the exhaustion hearing that he handed his grievance and appeals to various corrections officers making rounds where he was being housed, and that, if his grievance and/or appeals were never received, it must have been because his letters were not properly delivered. (Hearing Tr. at 126-36.)

With regard to these excuses, the Court finds that, while these excuses could constitute special circumstances justifying an inmate's failure to exhaust his available administrative remedies in certain situations,[FN27] these excuses are not available to Plaintiff in the current action because, as stated in Part II.A. of this Decision and Order, the credible testimony before the Court indicates that Plaintiff did not hand his grievance and appeals to various corrections officers with regard to the claims in question. *See, supra,* Part II.A. of this Decision and Order.[FN28]

FN27. *See, e.g., Sandlin v. Poole,* 575 F.Supp.2d 484, 488 (W.D.N.Y.2008) (noting that "refusal to accept or forward plaintiff's appeals ... effectively render[s] the grievance appeal process unavailable to him").

FN28. The Court notes that, even if Plaintiff did (as he testified) hand to a corrections officer for mailing a letter to the Superintendent on September 13, 2000, appealing from the IGRC's failure to decide his grievance of August 22, 2000, within nine working days

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**

(i.e., by September 5, 2000), it appears that such an appeal would have been filed two days too late under DOCS Directive 4040, which requires that appeal to be filed within four working days of the IGRC's failure to decide his grievance (i.e., by September 11, 2000). (*See* Hearing Tr. 127-34; Hearing Ex. P-1, at 5-7 [attaching ¶¶ V.A, V.B. of DOCS Directive 4040, dated 6/8/98].)

**\*7** For all these reasons, the Court finds that Plaintiff's proffered excuse does not constitute a special circumstance justifying his failure to exhaust his available administrative remedies before filing this action.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 10) is ***DISMISSED* in its entirety without prejudice** for failure to exhaust his available administrative remedies before filing this action, pursuant to the PLRA; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment for Defendants and close the file in this action.

N.D.N.Y.,2010.
Murray v. Palmer
Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.